IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

ANGEL SULLIVAN-BLAKE and )
HORACE CLAIBORNE, *on behalf of* )
*themselves and others similarly situated*, )
  )
          Plaintiffs, )
  ) Civil Action No. 18-1698
     v. )
  )
FEDEX GROUND PACKAGE )
SYSTEM, INC., )
  )
          Defendant. )

**MEMORANDUM OPINION**

**I.   INTRODUCTION**

This is a collective action brought under the Fair Labor Standards Act ("FLSA") by Plaintiffs Angel Sullivan-Blake ("Sullivan-Blake") and Horace Claiborne ("Claiborne") (collectively, "Plaintiffs") against Defendant FedEx Ground Package System, Inc. ("FedEx"). Plaintiffs represent that they have brought this action on behalf of themselves and other similarly situated individuals who have been employed by FedEx through intermediary employers to perform delivery services on FedEx's behalf. (ECF No. 1). Plaintiffs allege that FedEx violated the FLSA by failing to pay them overtime compensation. (*Id.*).

Presently before the Court is Plaintiffs' Motion for Issuance of Notice Under § 216(b) of the FLSA ("Motion") seeking conditional certification of a proposed nationwide collective action (excluding Massachusetts) of all FedEx delivery drivers who worked through an independent service provider ("ISP"). (ECF No. 10). For the reasons that follow, Plaintiffs' Motion will be granted in part and denied in part.

II.   **FACTUAL BACKGROUND**

   A.   *FedEx Operations and Business Model*

   FedEx, a Delaware Corporation with its principal place of business in Coraopolis, Pennsylvania, operates a nationwide package pickup and delivery business. (ECF No. 1 ¶¶ 4, 7). FedEx contracts with thousands of small businesses whose employees carry out the physical pickup and delivery of packages. (ECF No. 29 at 1). Since long before 2014, FedEx has contracted only with incorporated businesses for delivery services, and does not employ any drivers for such services. (ECF No. 29-2 ¶ 10). FedEx's Form 10-K for the fiscal year ending May 31, 2016 ("10-K") reflects that FedEx "is involved in numerous lawsuits . . . where the classification of its independent contractors is at issue." (ECF No. 11-3 at 3). These lawsuits involve a contractor model which FedEx has not operated since 2011. (*Id.*).

   B.   *The ISP Model*

   In 2010, FedEx began transitioning into a new negotiated agreement under which FedEx's contractors are known as Independent Service Providers ("ISPs"). (ECF No. 29 at 1). According to its 10-K, FedEx expects transition to the ISP model to be completed nationwide by 2020. (ECF No. 11-3 at 3). Under this model, FedEx contracts with ISPs, i.e., independent corporations with vehicles, drivers, and other employed personnel, that provide pickup and delivery services for FedEx. (ECF No. 29-2 ¶¶ 4, 5). According to FedEx, the ISPs:

   1) Ensure that all of their drivers are treated as employees of the ISP (*id.* ¶ 14);

   2) Agree to comply with all federal, state, and local employment laws (*id.*);

   3) Retain "sole and complete discretion in the staffing, selection, hiring, training, supervision, assignment, hours and days worked, discipline, compensation, benefits, and all other terms and conditions of employment" of their employees. (*Id.* ¶ 15).

### C.     Plaintiffs' Allegations

According to the Complaint, Plaintiff Sullivan-Blake is a resident of Texas and worked as a delivery driver for FedEx through an ISP from approximately November 2015 through October 2018.[1] (ECF No. 1 ¶ 3). Plaintiff Claiborne resides in North Carolina and has worked as a delivery driver for FedEx through ISPs since approximately 2011. (*Id.* ¶ 4). Both Plaintiffs allege that they were eligible for overtime compensation under the FLSA but did not receive it. (*Id.* ¶¶ 3, 4).

Plaintiffs have included their affidavits in support of the Motion. In her affidavit, Plaintiff Sullivan-Blake avers that she has worked full-time as a delivery driver out of three different FedEx terminals, all located in Texas, primarily using a van that was under 10,000 pounds. (ECF No. 11-1 ¶¶ 3–5). When she first started working for FedEx in November of 2015, FedEx paid her by the hour and she received overtime when she worked over forty hours a week (*Id.* ¶ 7). At the time, she was told by a FedEx manager that she was being paid by FedEx and that ISPs do not pay drivers by the hour. (*Id.* ¶ 9). Starting sometime in January of 2016, however, FedEx required her to be paid by an ISP. (*Id.* ¶ 7). Plaintiff Sullivan-Blake claims that in order to keep her job she was required to be paid through an ISP that compensated her at a flat daily rate regardless of how many hours she worked, even though she frequently worked more than forty hours a week. (*Id.*). She also asserts that after she started to be paid by an ISP for her FedEx delivery work, she continued reporting to work each morning and delivering packages for FedEx following the same mandatory delivery procedures established by FedEx and that nothing about her job changed. (*Id.* ¶ 13).

Plaintiff Claiborne's affidavit reflects that he too has worked as a full-time delivery driver out of three different FedEx terminals, one located in Virginia and the other two in North Carolina,

---

[1] Plaintiff Sullivan-Blake states in her affidavit that FedEx paid her directly from November of 2015 through approximately January of 2016 before requiring her to be paid through an ISP. (ECF No. 11-1 ¶ 7).

using trucks that weighed less than 10,001 pounds. (ECF No. 11-2 ¶¶ 2, 11, 13). During his work at all three terminals, he has been paid through an ISP. (*Id.* ¶¶ 2, 14). Plaintiff Claiborne alleges that he has never been paid any overtime even though he has regularly worked more than 40 hours each week during his employment. (*Id.* ¶ 17).

Based on their personal observations, Plaintiffs aver that all of the delivery drivers who worked alongside them were required to work under various ISPs. (ECF Nos. 11-1 ¶ 8; 11-2 ¶ 6, 18). According to their affidavits, all of the delivery drivers to whom Plaintiffs spoke told them that they do not get paid overtime for their work. (ECF Nos. 11-1 ¶ 11, 12, 26; 11-2 ¶ 19). Plaintiffs also allege that despite working for different ISPs, delivery drivers, including themselves, wore the same FedEx uniform, drove delivery vehicles with FedEx logos, and used special FedEx scanners for tracking packages. (ECF Nos. 11-1 ¶¶ 15, 16, 20; 11-2 ¶¶ 7, 8). In her affidavit, Plaintiff Sullivan-Blake notes that each morning when she reported to work, package handlers employed by FedEx had already separated the packages that each delivery driver was assigned to deliver that day. (ECF Nos. 11-1 ¶ 18). If a package assigned to a delivery driver was missing, that driver would have to wait for a FedEx manager to either track the missing package, or give permission to leave without the missing package. (*Id.* ¶¶ 20, 21).

Plaintiffs assert that customer comments or complaints about their work were directed to FedEx, as opposed to their ISPs. (ECF Nos. 11-1 ¶ 24; 11-2 ¶ 10). Plaintiffs' affidavits also reflect that during their time as drivers, they never delivered packages for another company as they did not have time to do so. (ECF Nos. 11-1 ¶ 17; 11-2 ¶ 16). In any event, they could not carry packages for anyone other than FedEx while on their FedEx delivery routes. (ECF No. 11-1 ¶ 17).

III.   PROCEDURAL HISTORY

Plaintiff Sullivan-Blake was a named plaintiff in *Roy v. FedEx Ground Package System, Inc.*, Case No. 17-30116, a lawsuit filed in the United States District Court of the District of Massachusetts on August 29, 2017. (ECF No. 104-1). On September 7, 2017, the named plaintiffs in the *Roy* action filed a motion for conditional certification and issuance of notice under 29 U.S.C. § 216(b). (*Id.*). While that motion was pending, the parties stipulated to tolling the statute of limitations for potential opt-ins from February 19, 2018, until the date the court ruled on the motion. (*Id.*). Plaintiff Claiborne filed his opt-in form in *Roy* on February 27, 2018. (*Id.*).

Relying upon the United States Supreme Court's decision in *Bristol-Myers Squibb Co. v. Superior Court of California*, 137 S. Ct. 1773 (2017), the *Roy* Court held that it lacked jurisdiction to adjudicate claims of any non-Massachusetts *named* plaintiffs and dismissed Plaintiff Sullivan-Blake from that case on May 22, 2018. *Roy v. FedEx Ground Package Sys., Inc.*, No. 17-30116, 2018 WL 2324092, *11 (D. Mass. May 22, 2018). After further briefing from the parties, in an opinion dated November 27, 2018, the *Roy* Court extended its holding to non-Massachusetts *opt-in* plaintiffs, effectively dismissing Plaintiff Claiborne from that action as well. *Roy v. FedEx Ground Package Sys., Inc.*, 353 F. Supp. 3d 43, 62 (D. Mass. 2018).

Plaintiffs subsequently commenced this action on December 21, 2018. (ECF No 1). On January 15, 2019, Plaintiffs filed the pending Motion, their supporting brief, and related evidence. (ECF Nos. 10, 11). FedEx subsequently responded with a brief in opposition and counter evidence (ECF No. 29) and Plaintiffs submitted a Reply Brief in further support of their Motion. (ECF No. 32). Plaintiffs have supplemented the evidentiary record with additional opt-in consent forms (ECF Nos. 38, 44, 53, 60, 68, 70, 71, 75, 79, 81) to which FedEx has responded. (ECF Nos. 55, 72, 88, 89).

5

Pursuant to the Court's August 28, 2019 Order, the parties recently submitted briefs regarding the appropriate time period for the proposed collective action. (ECF Nos. 103, 104, 105). As Plaintiffs' Motion is fully briefed, it is now ripe for disposition.

IV.    LEGAL STANDARD

Section 216(b) of the FLSA authorizes employees to bring a collective action on behalf of themselves and others "similarly situated." 29 U.S.C § 216(b). Courts in the Third Circuit follow a "two-step certification process" to manage FLSA collective actions. *Halle v. W. Penn Allegheny Health Sys. Inc.*, 842 F.3d 215, 224 (3d Cir. 2016).

Under the first step, collective actions under the FLSA must be "'conditionally' certified by the district court, which 'requires a named plaintiff to make a modest factual showing— something beyond mere speculation—to demonstrate a factual nexus between the manner in which the employer's alleged policy affected him or her and the manner in which it affected the proposed collective action members.'" *Reinig v. RBS Citizens, N.A.*, 912 F.3d 115, 123 n.1 (3d Cir. 2018) (quoting *Halle*, 842 F.3d at 224). "The sole consequence of conditional certification is the sending of court-approved written notice to employees . . . who in turn become parties to a collective action only by filing written consent with the court [.]" *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 75 (2013).

If a conditional class is certified at the first step, "discovery typically moves forward to assess whether the opt-ins are 'similarly situated' to the named plaintiffs." *Halle*, 842 F.3d at 226. "Upon conclusion of discovery, the parties will file motions seeking final certification or decertification of the collective action." *Id*. At this second step, the named plaintiffs "must demonstrate by a preponderance of the evidence" that the opt-ins are similarly situated to them "in order to obtain final certification and proceed with the case as a collective action." *Zavala v. Wal*

6

*Mart Stores Inc.*, 691 F.3d 527, 537 (3d Cir. 2012). The Court of Appeals for the Third Circuit has explained that the inquiry at the first step of the certification process is limited to whether "'similarly situated [individuals] do in fact exist,' while at the second stage, the District Court determines 'whether the [opt-ins] are in fact similarly situated to the named plaintiffs.'" *Id.* at 536 n.4 (quoting *Myers v. Hertz Corp.*, 624 F.3d 537, 555 (2d Cir. 2010)).

## V.   DISCUSSION

### A.   *Plaintiffs Have Satisfied Their Burden Regarding Conditional Certification*

Plaintiffs seek conditional certification of a proposed collective action to include:

> All individuals (outside Massachusetts) who worked as a FedEx delivery driver under an independent service provider (ISP) since August 29, 2014, who operated a vehicle weighing less than 10,001 pounds at any time since August 29, 2014, and were not paid overtime compensation for all hours worked over forty each week.

(ECF No. 10). At the first step of certification, Plaintiffs need only "make a modest factual showing—something beyond mere speculation—to demonstrate a factual nexus between the manner in which [FedEx's] alleged policy affected him or her and the manner in which it affected the proposed collective action members." *Halle*, 842 F.3d at 224.

Plaintiffs have submitted evidence showing that a group of similarly situated nationwide drivers who delivered packages for FedEx exists. To that end, they have submitted FedEx's 10-K which describes FedEx's shift to the ISP Model nationwide. Both Plaintiffs have submitted affidavits describing their work and interactions with other delivery drivers at a total of six different FedEx terminals in North Carolina, Texas, and Virginia. During the pendency of this Motion thirty-four individuals from eighteen different states have filed opt-in consent forms.[2]

---

[2] For purposes of this Opinion, the Court has not considered the opt-in forms of those individuals whose claims have been challenged by FedEx.

Plaintiffs' affidavits aver that FedEx required them, and the delivery drivers who worked alongside them, to be paid through ISPs. According to Plaintiffs, regardless of which ISP under which they worked, Plaintiffs and other delivery drivers typically worked full-time and exclusively as drivers delivering packages to FedEx customers using vehicles bearing FedEx logos. Aspects of their work were managed or directed by FedEx. They were not paid overtime for their work as drivers delivering FedEx packages.

In opposing the Motion, FedEx contends that Plaintiffs have failed to identify a uniform FedEx compensation policy that deprives them and the members of the proposed collective action of overtime pay. (ECF No. 29 at 8). Pointing to its ISP model, FedEx maintains that each ISP, not FedEx, has "sole and complete discretion" over their drivers' pay. (*Id.* at 9). Because not all ISPs have the same pay policies, FedEx contends, Plaintiffs cannot show that "all drivers employed by all ISPs are subject to the same compensation policy that produced the FLSA violations they allege." (*Id.*). FedEx also argues that its ISP model does not qualify as a common policy supporting conditional certification. (*Id.* at 11–12).

However, these contentions focus either on merits the of Plaintiffs' claims, or on whether the potential opt-ins are in fact similarly situated to Plaintiffs. This is an inquiry that will be undertaken at step two of the certification process with a more developed record.[3]

FedEx also argues that Plaintiffs' evidence is specific to their individual circumstances and cannot be extrapolated to thousands to other delivery drivers across hundreds of FedEx terminals

---

[3] FedEx's argument appears to be that it had no obligation to pay overtime to those the delivery drivers because it expected the ISPs to pay overtime to their own employees. The Court need not entertain this argument, which goes to the merits of Plaintiffs' claim, at this stage of the proceedings but notes that "[t]he FLSA establishes a federal minimum-wage, maximum-hour, and overtime guarantees that cannot be modified by contract." *Symczyk*, 569 U.S. at 69.

nationwide. (ECF No. 29 at 10). In support of this contention, FedEx cites this Court's decision in *Hodzic v. Fedex Package Sys., Inc.*, No. CV 15-956, 2016 WL 6248078 (W.D. Pa. Oct. 26, 2016), in which the court rejected an attempt at nationwide FLSA certification against FedEx because of the lack of evidence regarding delivery drivers outside the station where the named plaintiffs worked. *Hodzic* is inapposite, however, because in that case "the only evidence . . . proffered concerning FedEx operations beyond the Sewickley terminal [was] a statement by [one of the named plaintiffs] that '[he] underst[ood] that there were other FedEx terminals in Pennsylvania that operated the same way, because some contractors from the Sewickley terminal later moved to provide work from other terminals.'" *Hodzic*, WL 6248078, at \*9. According to the *Hodzic* Court, a "sole assertion as to the conditions at other, unidentified Pennsylvania terminals which relie[d] upon hearsay from unnamed declarants [was] not enough to broaden the scope of the putative class beyond the Sewickley terminal." *Id.*

In contrast to the "localized evidence which largely form[ed] the basis" of the overtime claims in *Hodzic*, Plaintiffs' affidavits detail their own experiences and interactions with delivery drivers at six FedEx terminals in three states. *Id.* This is sufficient at this stage of the proceedings.

Finally, FedEx asserts that although Plaintiffs have carved out Massachusetts drivers from their proposed collective action in deference to *Roy*, they wholly fail to address various other putative collective actions pending around the county. (ECF No. 29 at 13). According to FedEx, Plaintiffs' failure to propose any plan for those "first-filed" cases raises the potential of competing collective actions. (*Id*). The Court finds, however, that such concerns do not warrant a ruling denying conditional certification because "the first-to-file doctrine advanced by [FedEx] applies in motions to dismiss, stay or transfer and does not apply here to simply exclude certain plaintiffs

from a class." *Pereira v. Foot Locker, Inc.*, 261 F.R.D. 60, 68 (E.D. Pa. 2009). Additionally, such issues can be addressed and resolved at subsequent stages of this litigation.

Therefore, based on the evidence presented, the Court finds that Plaintiffs have met their burden for conditional certification of their putative collective action.[4]

### B. *Equitable Tolling Is Warranted*

An action for unpaid overtime compensation under the FLSA must be commenced within two years after the cause of action accrued, except that a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued. 29 U.S.C. § 255(a). In addition, under the FLSA, an action is commenced for named plaintiffs on the date when the complaint is filed, and for non-named plaintiffs, on the date when written consent to become a party plaintiff is filed. 29 U.S.C. § 256.

In their Motion, Plaintiffs request that notice should be issued to all putative collective members who have worked since August 29, 2014, three years prior to the date when the complaint in *Roy* was filed. Thus, they seek to equitably toll the notice period either as of the date the *Roy* case was filed or alternatively, as of September 7, 2017, the date the motion for conditional certification was filed in *Roy*. (ECF No. 104 at 2, 9). According to FedEx, however, equitable tolling is not warranted in this case as it is the exception, rather than the rule, and any delays in this case are part of the expected course of an FLSA collective action. (ECF No. 105 at 3).

The Court of Appeals for the Third Circuit has held that equitable tolling of a statutory limitations period may be appropriate where: (1) "the defendant has actively misled the plaintiff

---

[4] FedEx has asserted Plaintiff Claiborne never drove for an ISP because during the time he delivered packaged for FedEx, both Virginia and North Carolina were using a "Contracted Service Provider" ("CSP") model. (ECF Nos. 29 at 6; 29-2 ¶¶ 6, 7). This issue is not presently before the Court and will be addressed in the event that FedEx challenges Plaintiff Claiborne's standing.

respecting the plaintiff's cause of action, and that deception causes non-compliance with an applicable limitations provision;" (2) "the plaintiff in some extraordinary way has been prevented from asserting his rights;" or (3) "the plaintiff has timely asserted his or her rights mistakenly in the wrong forum." *Podobnik v. U.S. Postal Serv.*, 409 F.3d 584, 591 (3d Cir. 2005). Third Circuit case law also provides for equitable tolling when it "is demanded by sound legal principles as well as the interests of justice." *Jones v. Morton*, 195 F.3d 153, 159 (3d Cir. 1999).

Undoubtedly, the benefits of a collective action depend upon potential class members "receiving accurate and timely notice" of their potential claims. *Hoffman-La Roche, Inc. v. Sperling*, 493 U.S. 165, 170 (1989). Courts in this Circuit have recognized "that tolling may be appropriate where unreasonable delay results in potential prejudice to actual or potential opt-in plaintiffs." *McLaughlin v. Seneca Res. Corp.*, No. 17-255, 2018 WL 1784554, at *3 (W.D. Pa. Apr. 13, 2018) (citing decisions). Therefore, in light of the unique procedural history of this case, the Court concludes that "sound legal principles as well as the interests of justice" warrant equitably tolling the notice period to preserve the claims of potential op-ins. *Jones*, 195 F.3d at 159.

Next, the Court must determine the most appropriate date for tolling the notice period. In this regard the Court notes that tolling the notice period back to the filing date of either the complaint, or the motion for conditional certification in *Roy*, as suggested by Plaintiffs, is inappropriate.[5] Such a broad application of equitable tolling would alter the FLSA statutory scheme which specifies that, for the purposes of statute of limitations, an action is commenced for

---

[5] The Court need not decide at this juncture whether Plaintiff Sullivan-Blake's individual claim is subject to equitable tolling because she was either prevented from asserting her rights in "some extraordinary way," or asserted her "rights mistakenly in the wrong forum." *Podobnik*, 409 F.3d at 591.

named plaintiffs on the date when the complaint is filed, and for non-named plaintiffs, on the date when written consent to become a party plaintiff is filed. 29 U.S.C. § 256. Similarly, the Court does not agree with FedEx that *Roy* should be disregarded altogether.

In *Roy*, the court stayed briefing on plaintiffs' motion for conditional certification, at FedEx's request, after the parties stipulated to tolling the notice period for potential opt-ins as of February 19, 2018. (ECF No. 104-1). The purpose of that agreement was to preserve the claims of potential opt-ins while the *Roy* Court addressed whether it had jurisdiction over a nationwide collective against FedEx, an issue raised by FedEx. (*Id.*). It was not until approximately nine months later, on November 27, 2018, that the *Roy* Court decided that it lacked jurisdiction to entertain the claims of the potential opt-ins who did not reside in Massachusetts. Those potential non-Massachusetts opt-ins are the individuals whose claims would be preserved by tolling the notice period because court-approved notice is a mechanism that, among other things, allows potential opt-in plaintiffs to "make informed decisions about whether to participate" in a pending collective action. *Hoffman-La Roche*, 493 at 170. While the Court declines to adopt the February 19, 2018 tolling period applied in *Roy*, it concludes that an equitable date for tolling in this case is November 27, 2018, the date on which the *Roy* Court determined that it lacked jurisdiction over the non-Massachusetts potential opt-ins. Accordingly, notice should be issued to all putative collective members who have worked since November 27, 2015.[6]

Therefore, the parties are directed to meet and confer in an effort to finalize the content and form of the notice in accordance with this decision and to submit a joint proposal for the Court's consideration.

---

[6] FedEx concedes that under applicable case law, if the Court issues notice, a three-year notice period is appropriate because Plaintiffs have alleged willful conduct. (ECF No. 105 at 3 n.2).

## VI.   CONCLUSION

Based on the foregoing, Plaintiffs' Motion for Issuance of Notice Under § 216(b) of the

FLSA (ECF No. 10) will be granted in part and denied in part. An appropriate order will follow.


BY THE COURT:


PATRICIA L. DODGE
United States Magistrate Judge