**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| ANGEL SULLIVAN-BLAKE and HORACE CLAIBORNE, on behalf of themselves and others similarly situated, | ) ) ) | 2:18-cv-01698-RJC |
| | ) | |
| Plaintiffs, | ) | Judge Robert J. Colville |
| | ) | |
| vs. | ) | |
| | ) | |
| FEDEX GROUND PACKAGE SYSTEM, INC., | ) ) | |
| | ) | |
| Defendant. | ) | |

## OPINION

Robert J. Colville, United States District Judge

Before the Court is the Motion to Disqualify Plaintiffs' Counsel, Lichten & Liss-Riordan, P.C., (ECF No. 139) filed by Defendant FedEx Ground Package System, Inc. ("FedEx"). This matter has been fully briefed and is ripe for consideration. Also before the Court are several outstanding issues respecting notice in this matter set forth in the parties' Joint Status Report (ECF No. 141) that were raised, but purportedly not addressed, prior to this action being reassigned to the undersigned.

### I.        Factual Background & Procedural History

The present case is a collective action brought under the Fair Labor Standards Act ("FLSA") by Plaintiffs Angel Sullivan-Blake ("Sullivan-Blake") and Horace Claiborne ("Claiborne") on behalf of themselves and other similarly situated individuals (collectively, "Plaintiffs") against FedEx. Plaintiffs assert that they were employed by FedEx through

1

intermediary employers[1] to perform delivery services on FedEx's behalf.  Compl. 1, ECF No. 1.

Plaintiffs further assert that FedEx has violated the FLSA by not paying overtime compensation

to Plaintiffs for all hours worked over forty each week.  *Id.*

This case was reassigned from the Honorable Patricia L. Dodge to the undersigned on

February 4, 2020.  Order, ECF No. 137.  In her September 30, 2019 Memorandum Opinion (ECF

No. 106) granting Plaintiffs' Motion for Issuance of Notice Under § 216(b) of the FLSA, Judge

Dodge set forth the following comprehensive factual background for this case:

### A.     FedEx Operations and Business Model

FedEx, a Delaware Corporation with its principal place of business in
Coraopolis, Pennsylvania, operates a nationwide package pickup and delivery
business. (ECF No. 1 ¶¶ 4, 7).  FedEx contracts with thousands of small businesses
whose employees carry out the physical pickup and delivery of packages.  (ECF
No. 29 at 1).  Since long before 2014, FedEx has contracted only with incorporated
businesses for delivery services, and does not employ any drivers for such services.
(ECF No. 29-2 ¶ 10).  FedEx's Form 10-K for the fiscal year ending May 31, 2016
"10-K") reflects that FedEx "is involved in numerous lawsuits . . . where the
classification of its independent contractors is at issue." (ECF No. 11-3 at 3).  These
lawsuits involve a contractor model which FedEx has not operated since 2011.
(*Id.*).

### B.     The ISP Model

In 2010, FedEx began transitioning into a new negotiated agreement under
which FedEx's contractors are known as Independent Service Providers ("ISPs").
(ECF No. 29 at 1).  According to its 10-K, FedEx expects transition to the ISP
model to be completed nationwide by 2020.  (ECF No. 11-3 at 3).  Under this
model, FedEx contracts with ISPs, i.e., independent corporations with vehicles,
drivers, and other employed personnel, that provide pickup and delivery services
for FedEx.  (ECF No. 29-2 ¶¶ 4, 5).  According to FedEx, the ISPs:

1)     Ensure that all of their drivers are treated as employees of the ISP
(*id.* ¶ 14);

---

[1] These intermediary employers are companies that entered into contracts with FedEx to provide delivery and pickup services on FedEx's behalf, and are referred to as Independent Service Providers (ISPs) and Contracted Service Providers (CSPs) in the record.  The distinction between ISPs and CSPs is not relevant to this Court's consideration of Defendant's Motion to Disqualify.  For ease of reference, this Court will refer to ISPs and CSPs collectively as "Service Providers," and any reference to "ISPs" or "CSPs" in language quoted by this Court may be inferred to be a reference to Service Providers generally for the purposes of this Opinion.

2)      Agree to comply with all federal, state, and local employment laws (*id.*);

3)      Retain "sole and complete discretion in the staffing, selection, hiring, training, supervision, assignment, hours and days worked, discipline, compensation, benefits, and all other terms and conditions of employment" of their employees. (*Id.* ¶ 15).

### C.      *Plaintiffs' Allegations*

According to the Complaint, Plaintiff Sullivan-Blake is a resident of Texas and worked as a delivery driver for FedEx through an ISP from approximately November 2015 through October 2018.  (ECF No. 1 ¶ 3).  Plaintiff Claiborne resides in North Carolina and has worked as a delivery driver for FedEx through ISPs since approximately 2011.  (*Id.* ¶ 4).  Both Plaintiffs allege that they were eligible for overtime compensation under the FLSA but did not receive it.  (*Id.* ¶¶ 3, 4).

Plaintiffs have included their affidavits in support of the Motion.  In her affidavit, Plaintiff Sullivan-Blake avers that she has worked full-time as a delivery driver out of three different FedEx terminals, all located in Texas, primarily using a van that was under 10,000 pounds.  (ECF No. 11-1 ¶¶ 3-5).  When she first started working for FedEx in November of 2015, FedEx paid her by the hour and she received overtime when she worked over forty hours a week (*Id.* ¶ 7).  At the time, she was told by a FedEx manager that she was being paid by FedEx and that ISPs do not pay drivers by the hour.  (*Id.* ¶ 9).  Starting sometime in January of 2016, however, FedEx required her to be paid by an ISP.  (*Id.* ¶ 7).  Plaintiff Sullivan-Blake claims that in order to keep her job she was required to be paid through an ISP that compensated her at a flat daily rate regardless of how many hours she worked, even though she frequently worked more than forty hours a week.  (*Id.*).  She also asserts that after she started to be paid by an ISP for her FedEx delivery work, she continued reporting to work each morning and delivering packages for FedEx following the same mandatory delivery procedures established by FedEx and that nothing about her job changed.  (*Id.* ¶ 13).

Plaintiff Claiborne's affidavit reflects that he too has worked as a full-time delivery driver out of three different FedEx terminals, one located in Virginia and the other two in North Carolina, using trucks that weighed less than 10,001 pounds.  (ECF No. 11-2 ¶¶ 2, 11, 13).  During his work at all three terminals, he has been paid through an ISP.  (*Id.* ¶¶ 2, 14).  Plaintiff Claiborne alleges that he has never been paid any overtime even though he has regularly worked more than 40 hours each week during his employment.  (*Id.* ¶ 17).

Based on their personal observations, Plaintiffs aver that all of the delivery drivers who worked alongside them were required to work under various ISPs.  (ECF Nos. 11-1 ¶ 8; 11-2 ¶ 6, 18).  According to their affidavits, all of the delivery drivers to whom Plaintiffs spoke told them that they do not get paid overtime for their work.  (ECF Nos. 11-1 ¶ 11, 12, 26; 11-2 ¶ 19).  Plaintiffs also allege that despite working for different ISPs, delivery

drivers, including themselves, wore the same FedEx uniform, drove delivery vehicles with FedEx logos, and used special FedEx scanners for tracking packages.  (ECF Nos. 11-1 ¶¶ 15, 16, 20; 11-2 ¶¶ 7, 8).  In her affidavit, Plaintiff Sullivan-Blake notes that each morning when she reported to work, package handlers employed by FedEx had already separated the packages that each delivery driver was assigned to deliver that day.  (ECF Nos. 11-1 ¶ 18).  If a package assigned to a delivery driver was missing, that driver would have to wait for a FedEx manager to either track the missing package, or give permission to leave without the missing package.  (*Id.* ¶¶ 20, 21).

Plaintiffs assert that customer comments or complaints about their work were directed to FedEx, as opposed to their ISPs.  (ECF Nos. 11-1 ¶ 24; 11-2 ¶ 10).  Plaintiffs' affidavits also reflect that during their time as drivers, they never delivered packages for another company as they did not have time to do so.  (ECF Nos. 11-1 ¶ 17; 11-2 ¶ 16).  In any event, they could not carry packages for anyone other than FedEx while on their FedEx delivery routes.  (ECF No. 11-1 ¶ 17).

Sept. 30, 2019 Mem. Op. 2-4, ECF No. 106 (footnote omitted).

On October 8, 2019, Judge Dodge entered an Order conditionally certifying the following

nationwide (excluding Massachusetts) collective:

All individuals (outside Massachusetts) who worked as a FedEx delivery driver under an independent service provider (ISP) or a contracted service provider (CSP) since November 27, 2015, who operated a vehicle weighing less than 10,001 pounds at any time since November 27, 2015, and were not paid overtime compensation for all hours worked over forty each week.

Order, ECF No. 109.

On January 31, 2020, Judge Dodge entered a Memorandum Opinion (ECF No. 133) and

Order (ECF No. 134) denying FedEx's "Rule 19(a) Motion to Join Pennsylvania Service Providers

as Necessary Parties and Rule 19(b) Motion to Dismiss for Failure to Join Indispensable Parties"

(ECF No. 114).  In its Rule 19 Motion, FedEx sought joinder of Pennsylvania Servicer Providers

to this action, as well as dismissal of all claims pertaining to opt-in Plaintiffs residing outside of

Pennsylvania and Service Providers who employed drivers outside of Pennsylvania.  Jan. 31, 2020

Mem. Op. 1, ECF No. 133.  FedEx argued that Service Providers are necessary and indispensable

parties in this case because they employ and pay Plaintiff drivers, set the employment and wage

policies for drivers, and have a direct interest in the outcome of the case.  *Id.* at 2.  Judge Dodge rejected this argument, and held that Service Providers are not required parties under Fed. R. Civ. P. 19(a) because: 1) "The Court can accord complete relief among existing parties;" 2) "Service Providers do not have a direct stake in this litigation;" and 3) "[t]he absence of Service Providers would not subject FedEx to inconsistent obligations."  Jan. 31, 2020 Mem. Op. 3-5, ECF No. 133.

FedEx filed its Motion to Disqualify (ECF No. 139) on February 10, 2020.  FedEx seeks disqualification of Plaintiffs' counsel, Lichten & Liss-Riordan, P.C. ("LLR").  FedEx argues that LLR's representation of both Plaintiffs and a class of Service Providers in *Carrow v. FedEx Ground Package System, Inc.*, No. 16-3026 (D.N.J.) ("*Carrow*") creates a concurrent conflict of interest under Pennsylvania Rule of Professional Conduct 1.7, and that the only adequate remedy is disqualification of LLR in the present action.  Br. in Supp. 1, ECF No. 140.  Plaintiffs filed a Brief in Opposition to FedEx's Motion (ECF No. 146) on March 5, 2020.  FedEx filed a Reply (ECF No. 147) on March 20, 2020.  On April 2, 2020, this Court held a telephonic status conference with counsel in this matter wherein counsel provided brief argument with regard to their respective positions.  This matter is now ripe for disposition.

## II.    Legal Standard

With respect to conflicts of interest involving current clients, the Pennsylvania Rules of Professional Conduct[2] provide:

> (a) Except as provided in paragraph (b), a lawyer shall not represent a client if the representation involves a concurrent conflict of interest. A concurrent conflict of interest exists if:
>
> > (1) the representation of one client will be directly adverse to another client; or

---

[2] This Court has adopted the Pennsylvania Rules of Professional Conduct.  LCvR 83.3(A)(2).

(2) there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client or a third person or by a personal interest of the lawyer.

(b) Notwithstanding the existence of a concurrent conflict of interest under paragraph (a), a lawyer may represent a client if:

(1) the lawyer reasonably believes that the lawyer will be able to provide competent and diligent representation to each affected client;

(2) the representation is not prohibited by law;

(3) the representation does not involve the assertion of a claim by one client against another client represented by the lawyer in the same litigation or other proceeding before a tribunal; and

(4) each affected client gives informed consent.

Pa. R. Prof. Conduct 1.7.

The Third Circuit has explained that a district court "may disqualify an attorney only when 'disqualification is an appropriate means of enforcing the applicable disciplinary rule[,]' keeping in mind 'any countervailing policies, such as permitting a litigant to retain the counsel of his choice and enabling attorneys to practice without excessive restrictions.'" *Jackson v. Rohm & Haas Co.*, 366 F. App'x 342, 347 (3d Cir. 2010) (quoting *United States v. Miller*, 624 F.2d 1198, 1201 (3d Cir.1980)). "The moving party 'bears the burden of clearly showing that continued representation would be impermissible. Vague and unsupported allegations are not sufficient to meet this standard.'" *Griffin-El v. Beard*, No. Civ. A. 06-2719, 2009 WL 2929802, at *4 (E.D. Pa. Sept. 8, 2009) (quoting *Reg'l Employers' Assur. Leagues Voluntary Employees' Beneficiary Ass'n Tr. v. Castellano*, No. CIV A 03-6903, 2009 WL 1911671, at *2 (E.D. Pa. July 1, 2009)).

## III.    Discussion

FedEx argues that LLR's representation of Plaintiffs in this action creates a concurrent conflict of interest with respect to LLR's representation of the recently certified Rule 23(b) class

6

of New Jersey Service Providers in *Carrow*.  Br. in Supp. 1, ECF No. 140.  FedEx further argues that the present lawsuit, if successful, will present multiple repercussions for Service Providers, such as the plaintiffs in *Carrow*, because Service Providers pay and employ the Plaintiff drivers. *Id*.  FedEx argues that the pay practices of Service Providers are thus inherently implicated in the present matter.  *Id*.

FedEx first argues that LLR's representation of Plaintiffs is directly adverse to its representation of the *Carrow* class.  In support of this argument, FedEx asserts that: 1) because Service Providers are responsible for paying drivers such as Plaintiffs, Plaintiffs will be required to prove that Service Providers violated the FLSA to succeed in the present action; 2) FedEx will pursue indemnification against Service Providers, and may terminate contracts with Service Providers based upon their failure to comply with the law, if Plaintiffs successfully prove FedEx's liability in this action; and 3) LLR will be required to cross-examine Service Providers, such as the *Carrow* class, because FedEx intends to utilize Service Provider documents and testimony to prove that FedEx is not liable in the present action.  Br. in Supp. 7-8, ECF No. 140.

FedEx further argues that there is a significant risk that LLR's representation of the *Carrow* class will materially limit LLR's representation of Plaintiffs.  Specifically, FedEx asserts that: 1) LLR has expressed a willingness to exclude New Jersey drivers from notice in this action in response to FedEx's assertion of a conflict, thus demonstrating an inability to zealously advocate on behalf of the entire collective that has been conditionally certified in this action; 2) LLR's opposition to the joinder of Service Providers has reduced Plaintiffs' ultimate chances of success in this matter by foreclosing the participation of a potentially liable party in this action; 3) LLR's failure to sue Service Providers reduces the extent of Plaintiffs' potential recovery, as FedEx asserts that Service Providers are responsible for any willful conduct, which provides for a three-

year statute of limitations as opposed to a two-year statute for non-willful conduct; and 4) the statute of limitations with respect to Plaintiffs' potential claims against Service Providers continues to run, and is likely to expire prior to the completion of the present action.  Br. in Supp. 9-11, ECF No. 140.

FedEx also argues that LLR's representation of Plaintiffs creates a significant risk that LLR's representation of the *Carrow* class will be materially limited.  FedEx asserts that: 1) Plaintiffs will advance arguments in this action that will ultimately prove contrary to the interests of Service Providers such as the *Carrow* class; 2) Plaintiffs' assertion that FedEx and Service Providers are joint employers in the present case directly contradicts the *Carrow* class's argument that Service Providers are FedEx employees; and 3) the arguments outlined above respecting the adverse nature of LLR's clients (i.e. that Plaintiffs must prove an FLSA violation by Service Providers to succeed, that FedEx will seek indemnification and contract termination should Plaintiffs succeed, and that Plaintiffs will have to cross-examine Service Providers) will also limit LLR's representation of the *Carrow* class.  Br. in Supp. 12-14; ECF No. 140.  Finally, FedEx argues that the concurrent conflict of interest in this case cannot be waived.  *Id.* at 14-15.

Plaintiffs argue that its representation of both the *Carrow* class of Service Providers and the Plaintiffs in the present action does not create a concurrent conflict of interest.  Br. in Opp'n 2, ECF No. 146.  Plaintiffs argue that both the *Carrow* class and Plaintiffs set forth the consistent argument that FedEx is their employer.  Br. in Opp'n 3, ECF No. 146.  Plaintiffs also argue that a finding that FedEx is liable for violation of the FLSA as a joint employer in this case will not also require a finding of liability on the part of Service Providers.  *Id.*  Plaintiffs assert that their decision to pursue relief against only FedEx, and not Service Providers, was a strategic one, and argue that they are entitled to make such a decision in this action involving joint and several liability.  Br. in

Opp'n 2 n.4; 10-11, ECF No. 146.  Plaintiffs also assert that any conflict of interest can be waived.

*Id.* at 15.

### A.  *Carrow v. FedEx Ground Package System, Inc.*

On December 26, 2019, the United States District Court for the District of New Jersey

certified the following Fed. R. Civ. P. 23(b) class in *Carrow*:

> All persons who: 1) entered into a FedEx Ground or Home Delivery Operating
> Agreement, either personally or through a corporate entity; 2) drove a vehicle on a
> full-time basis to provide package pick-up and delivery services pursuant to the
> Operating Agreement in any week from April 13, 2010 to June 1, 2017 ("the Class
> Period"); 3) were dispatched out of a terminal in the state of New Jersey; and 4)
> who first signed an Operating Agreement after October 15, 2007, or excluded
> themselves from the certified class in *Tofaute v. FedEx Ground Package System,
> Inc.*, No. 05- 595 (N.D. Ind).

Br. in Supp. 4, ECF No. 146 (quoting Order on Class Cert., *Carrow v. FedEx Ground Package

Systems*, Case No. 1:16-cv-03026-RBK/JS (D.N.J., Dec. 26, 2019) (ECF No. 121)).

The plaintiffs in *Carrow* include Service Providers who assert claims against FedEx for

Misrepresentation and violation of the New Jersey Wage Payment Law.  Second Am. Compl.,

*Carrow v. FedEx Ground Package Systems*, Case No. 1:16-cv-03026-RBK/JS (D.N.J.) (ECF No.

41).[3]  The *Carrow* plaintiffs assert that FedEx, inter alia, took improper deductions from class

members' pay.  Br. in Opp'n 6, ECF No. 146.  The *Carrow* plaintiffs further assert that they are

FedEx employees, despite entering into operating agreements which characterize the plaintiffs as

"independent contractors."  *Carrow* Complaint ¶¶ 28-29.  The *Carrow* plaintiffs allege that they

contracted with FedEx to provide delivery and pick-up services to FedEx's customers.  *Carrow*

Complaint ¶ 9.  Some *Carrow* plaintiffs allege that they were required to create corporations to

enter into the operating agreements with FedEx.  *Id.* at 10-15; 27.  A current opt-in Plaintiff in this

---

[3] For ease of reference, the Court shall refer to this document as the "*Carrow* Complaint."

case drove for M&R Express, which is owned by a current *Carrow* class member.  Br. in Supp. 4, ECF No. 140; Br. in Opp'n 5 n.11; ECF No. 146.

**B.  Conflict of Interest Analysis**

A concurrent conflict of interest exists if: "(1) the representation of one client will be directly adverse to another client; or (2) there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client or a third person or by a personal interest of the lawyer."  Pa. R. Prof. Conduct 1.7(a).

**1.  Is LLR's representation of Plaintiffs Directly Adverse to the *Carrow* Class?**

A lawyer's representation of one client is directly adverse to another client if the lawyer acts "as an advocate in one matter against a person the lawyer represents in some other matter, even when the matters are wholly unrelated."  Pa. R. Prof. Conduct 1.7 cmt. 6.

**a.  Will this Court be Required to Find that Service Providers are Liable for FLSA Violations if it Finds FedEx Liable?**

In support of its assertion that LLR's  representation of Plaintiffs is directly adverse to the *Carrow* class, FedEx argues that "[a]lthough the Sullivan-Blake plaintiff-drivers name only FedEx Ground, any holding against FedEx Ground will necessarily require the court to find that the Service Providers' pay practices violate the FLSA."  Br. in Supp. 7, ECF No. 140.  FedEx bases this argument on Plaintiffs' assertion that FedEx is Plaintiffs' joint employer in this case.  Initially, FedEx raised the same argument in support of its Rule 19(a) Motion to Join (ECF No. 114).  Mem. Op. 4-5, ECF No. 133.  In her January 31, 2020 Memorandum Opinion, Judge Dodge rejected this argument in holding that Service Providers do not have a direct stake in this litigation, explaining:

> At this juncture, it would be premature for this Court to determine what effect, if any, an adverse judgment against FedEx in this case may have on subsequent, yet to be filed, lawsuits against the Service Providers brought either by Plaintiffs or FedEx.  Because the Service Providers do not have a direct stake in this litigation, they are not "required" parties under Rule 19(a)(l)(B).

Jan. 31, 2020 Mem. Op. 5, ECF No. 133.

With respect to joint employment, courts in the Third Circuit utilize the *Enterprise* test in determining whether a joint employer situation exists:

> When faced with a question requiring examination of a potential joint employment relationship under the FLSA, we conclude that courts should consider: 1) the alleged employer's authority to hire and fire the relevant employees; 2) the alleged employer's authority to promulgate work rules and assignments and to set the employees' conditions of employment: compensation, benefits, and work schedules, including the rate and method of payment; 3) the alleged employer's involvement in day-to-day employee supervision, including employee discipline; and 4) the alleged employer's actual control of employee records, such as payroll, insurance, or taxes.  As we have noted, however, this list is not exhaustive, and cannot be "blindly applied" as the sole considerations necessary to determine joint employment.  If a court concludes that other indicia of "significant control" are present to suggest that a given employer was a joint employer of an employee, that determination may be persuasive, when incorporated with the individual factors we have set forth.

*In re Enterprise Rent-A-Car Wage & Hour Employment Practices Litig.*, 683 F.3d 462, 469–70 (3d Cir. 2012) (citation omitted).

As clearly explained in Judge Dodge's January 31, 2020 Memorandum Opinion, Plaintiffs need only prove that they were not properly compensated pursuant to the FLSA and that FedEx is a joint employer pursuant to the FLSA to fully recover in this action, as joint employers may be held jointly and severally liable for violations of the FLSA.  Jan. 31, 2020 Mem. Op. 3-4, ECF No. 133.  While the Court acknowledges that this inquiry may inevitably involve an examination into the amount paid to Plaintiffs by Service Providers, this Court will not be required to make a judicial determination that Service Providers, who are not parties to this action, were *required* by the FLSA to pay overtime compensation to Plaintiffs.

While not binding precedent, this Court finds the reasoning set forth in *Romero v. Clean Harbors Surface Rentals USA, Inc.*, 368 F. Supp. 3d 152 (D. Mass. 2019)[4] to be sound.  In *Romero*, the United States District Court for the District of Massachusetts addressed a Rule 19 motion in a case wherein only one of two potential joint employers had been sued by the plaintiff.  The defendant argued that a staffing company, Drilling Professionals LLC, was the plaintiff's actual employer because the staffing company negotiated terms with employees such as the plaintiff and paid the plaintiff.  *Romero v. Clean Harbors Surface Rentals USA, Inc.*, 368 F. Supp. 3d 152, 158 (D. Mass. 2019).  The defendant in *Romero* further argued that the staffing company was indispensable because the *Romero* court would be required to determine "the nature of the employment relationship involving Romero, Clean Harbors, <u>and</u> Drilling Professionals" in resolving the plaintiff's FLSA claim.  *Id.*

In addressing this argument, the *Romero* court explained:

> The parties do not dispute that Romero's FLSA claim seeking backpay requires him to show that he was employed by Clean Harbors.  What the parties do dispute is what the fact-finder must decide in order to determine whether an employment relationship existed between Clean Harbors and Romero.  Clean Harbors assumes that in making this determination the fact finder necessarily must decide whether an employment relationship also existed between Romero and Drilling Professionals, but this is not the law.

*Romero*, 368 F. Supp. 3d 152, 158–59 (D. Mass. 2019) (citation omitted).  The *Romero* court further explained that, "[w]hile the analysis of the alleged employment relationship between Romero and Clean Harbors likely would consider facts about Drilling Professionals' relationship with Romero, the fact finder does not need to decide whether an employment relationship also existed between Drilling Professionals and Romero."  *Id.* at 159.  The court in *Romero* further

---

[4] The *Romero* court's Memorandum and Order were later clarified on September 11, 2019 by *Romero v. Clean Harbors Surface Rentals USA, Inc.*, 404 F. Supp. 3d 529, 530 (D. Mass. 2019).  That clarification did not involve the issues discussed herein.

explained that, even if the fact-finder accepted defendant's merits-based argument that the staffing company was the plaintiff's employer under the FLSA, such a scenario "just means that [plaintiff] might not be entitled to relief.  Further, if the ultimate fact finder is persuaded by Clean Harbors' argument, that does not mean it also has to decide that Drilling Professionals was Romero's employer."  *Romero*, 368 F. Supp. 3d at 159.

In the present action, Plaintiffs will attempt to prove that FedEx is Plaintiffs' joint employer pursuant to the FLSA.  There is no logical basis for Plaintiffs to introduce evidence which tends to establish that any other individual or entity is also a joint employer.  As such, the interests of Plaintiffs and the *Carrow* class are not adverse in the present action.  While some evidence regarding the nature of the relationship between Service Providers and Plaintiffs, as well as the relationship between Service Providers and FedEx, is likely to be introduced, it remains clear that Service Providers are not parties to this action.  For that reason, there is no circumstance wherein this Court or a jury will be required to find that Service Providers are Plaintiffs' employers.  If Plaintiffs are entitled to overtime compensation under the FLSA and the factfinder finds that FedEx is a joint employer under the FLSA, then FedEx is jointly and severally liable for the damages suffered by Plaintiffs and no finding as to any nonparty's liability is necessary.  If the factfinder agrees with FedEx's assertion that it is not Plaintiffs' employer, then FedEx will not be found liable for an FLSA violation, and this case will end with no finding of liability whatsoever. For these reasons, and for those discussed below with respect to joint and several liability, the Court finds that the factfinder will not have to decide whether Service Providers qualify as employers under the FLSA in resolving Plaintiffs' claim against FedEx.  Accordingly, a holding against FedEx will not require the Court to find that Service Providers' pay practices also violate the FLSA.  FedEx's argument to the contrary is without merit.

**b.  Potential Indemnification Claims and Contract Termination**

FedEx asserts that it will pursue indemnification against Service Providers and potentially terminate its contracts with Service Providers if Plaintiffs successfully establish FedEx's liability in this case.  While FedEx may pursue such relief, the Court notes that Plaintiffs' success in the present litigation does not guarantee that FedEx will ultimately succeed in an action for indemnification.  As discussed above, joint employers may be held jointly and severally liable for violations of the FLSA.  With respect to joint and several liability, the Third Circuit has explained:

> The possibility that [the defendant] may bear the whole loss if it is found liable is not the equivalent of double liability.  It is instead a common result of joint and several liability and should not be equated with prejudice.  Inherent in the concept of joint and several liability is the right of a plaintiff to satisfy its whole judgment by execution against any one of the multiple defendants who are liable to him, thereby forcing the debtor who has paid the whole debt to protect itself by an action for contribution against the other joint obligors.
>
> An outcome adverse to [the defendant] in [plaintiff's] present action against it does not have any legal effect on whatever right of contribution or indemnification [the defendant] may have against [a nonparty].

*Janney Montgomery Scott, Inc. v. Shepard Niles, Inc.*, 11 F.3d 399, 412 (3d Cir. 1993).  *See also Gen. Refractories Co. v. First State Ins. Co.*, 500 F.3d 306, 319 (3d Cir. 2007) ("However, *Janney Montgomery Scott* makes clear that the possibility defendants may have to shoulder the entire loss if found liable is a necessary consequence of joint and several liability."); *Bedel v. Thompson*, 103 F.R.D. 78, 81 (S.D. Ohio 1984) ("Thus, anytime a plaintiff does not join all possible defendants alleged to be jointly and severally liable, those parties who are joined suffer the risk of an inconsistent judgment result in a subsequent action for contribution or indemnification.  Such is the nature of joint and several liability and such is the case here.").[5]

---

[5] The Court cites to this caselaw for its analysis regarding joint and several liability, and not to address the issue of the availability of contribution or indemnity under the FLSA.  *See Berryman v. Newalta Envtl. Servs., Inc.*, No. CV 18-793, 2018 WL 5631169, at *3 (W.D. Pa. Oct. 31, 2018) ("Although the Third Circuit has not address[ed] the issue, other courts have uniformly agreed that an employer found liable under the FLSA has no right to contribution or indemnity from a third party.").

FedEx's own filings make clear that its right to pursue indemnification and its decision to terminate the contracts of Service Providers will rely on a determination that Service Providers have violated the law.  *See* Br. in Supp. 2, ECF No.140 ("Further, both the OA and the ISPA obligate the Service Providers to indemnify and hold FedEx Ground harmless against any liabilities arising from all claims brought against FedEx Ground *if the Service Providers fail to comply with any laws applicable* to its business, including the federal and state wage and hour laws." (emphasis added)); *id.* at 3 (asserting that FedEx may, if found to be liable in this action, terminate Service Providers' contracts "for violating their obligation to adhere to state and federal wage law.").  While FedEx may pursue indemnification and contract termination following the conclusion of the present action, a finding of liability on FedEx's part in no way establishes FedEx's right to recover from Service Providers.

As discussed above, the factfinder in this action will not be required to make a determination as to whether Service Providers constitute joint employers and thus had an obligation under the FLSA to pay overtime compensation to the Plaintiffs.  Thus, there will be no determination in this action that Service Providers violated the FLSA.  Accordingly, in pursuing indemnification, FedEx will be required to prove its case in its entirety, including that the contracts at issue are valid and enforceable and that a right of recovery arises out of those contracts, and no holding of this Court will bind the nonparty Service Providers with respect to an FLSA violation. *See Janney Montgomery Scott, Inc. v. Shepard Niles, Inc.*, 11 F.3d 399, 410 (3d Cir. 1993) ("In this respect, the district court is correct.  Its conclusion that [a nonparty] would not be bound is a corollary of the general rule that issue preclusion applies only to persons who were either parties to the prior action or shared the same interest as the parties who were present in the prior action."). Further, as discussed in the caselaw above, FedEx could be found liable in this action and also fail

15

in its indemnification action.  This is a common and necessary consequence of joint and several liability.  *Gen. Refractories Co. v. First State Ins. Co.*, 500 F.3d 306, 319 (3d Cir. 2007).

For the reasons discussed above, this Court finds that it will not be required to determine that Service Providers, who are not parties to this action, are liable for FLSA violations in order for Plaintiffs to recover.  The Court further finds that potential future indemnification suits or contract termination do not present a situation wherein LLR must directly advocate a position that is adverse to either of its clients in the present action.  Accordingly, the Court holds that FedEx has not met its burden of clearly establishing that either of these bases supports a finding of a directly adverse relationship with respect to LLR's concurrent representation of its clients.

### c.  Potential Cross-Examination of Service Providers

The Explanatory Comment to Pennsylvania Rule of Professional Conduct 1.7 provides that "a directly adverse conflict may arise when a lawyer is required to cross-examine a client who appears as a witness in a lawsuit involving another client, *as when the testimony will be damaging to the client who is represented in the lawsuit.*"  Pa. R. Prof. Conduct 1.7 cmt. 6 (emphasis added).  For the same reasons discussed above, FedEx's assertion regarding LLR's potential cross-examination of Service Providers also fails.

While LLR may be required to ask Service Providers whether Plaintiffs were paid overtime, there is no logical basis for LLR to inquire as to whether Service Providers were *required*, as joint employers pursuant to the FLSA, to pay overtime to Plaintiffs.  It is in the best interest of both Plaintiffs and the *Carrow* class that LLR's cross-examination of Service Providers be tailored toward establishing FedEx's, as opposed to nonparty Service Providers', status as a joint employer under the FLSA.  As such, LLR's cross-examination of Service Providers will not be adverse to Plaintiffs.  Accordingly, the Court finds that FedEx has not met its burden of clearly

16

establishing that any potential testimony elicited from Service Providers by LLR on cross-examination will be damaging to either of LLR's clients.  For all of the reasons discussed above, the Court further finds that FedEx has not clearly established that LLR's representation of Plaintiffs is directly adverse to the *Carrow* class.

### 2. Is there a Significant Risk that LLR's Representation of either Plaintiffs or the *Carrow* Class will limit LLR's Representation of the Other?

Pursuant to Pa. R. Prof. Conduct 1.7(a)(2), a concurrent conflict of interest also exists if "there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client or a third person or by a personal interest of the lawyer."  Pa. R. Prof. Conduct 1.7(a)(2).  With respect to whether there exists a significant risk that representation of a client will be materially limited by the lawyer's responsibilities to another client, the comments to Pennsylvania Rule of Professional Conduct 1.7 explain:

> Even where there is no direct adverseness, a conflict of interest exists if there is a significant risk that a lawyer's ability to consider, recommend or carry out an appropriate course of action for the client will be materially limited as a result of the lawyer's other responsibilities or interests. . . .  The mere possibility of subsequent harm does not itself require disclosure and consent.  The critical questions are the likelihood that a difference in interests will eventuate and, if it does, whether it will materially interfere with the lawyer's independent professional judgment in considering alternatives or foreclose courses of action that reasonably should be pursued on behalf of the client.

Pa. R. Prof. Conduct 1.7 cmt. 8.

With respect to conflicts which may arise during litigation, the Rules of Professional Conduct explain that "simultaneous representation of parties whose interests in litigation may conflict, such as co-plaintiffs or co-defendants, is governed by paragraph (a)(2).  A conflict may exist by reason of substantial discrepancy in the parties' testimony, incompatibility in positions in relation to an opposing party or the fact that there are substantially different possibilities of

settlement of the claims or liabilities in question." Pa. R. Prof. Conduct 1.7 cmt. 23. With regard

to potential litigation conflicts, the Pennsylvania Rules of Professional Conduct further provide:

> Ordinarily a lawyer may take inconsistent legal positions in different tribunals at
> different times on behalf of different clients. The mere fact that advocating a legal
> position on behalf of one client might create precedent adverse to the interests of a
> client represented by the lawyer in an unrelated matter does not create a conflict of
> interest. A conflict of interest exists, however, if there is a significant risk that a
> lawyer's action on behalf of one client will materially limit the lawyer's
> effectiveness in representing another client in a different case, for example, when a
> decision favoring one client will create a precedent likely to seriously weaken the
> position taken on behalf of the other client. Factors relevant in determining whether
> the clients need to be advised of the risk include: where the cases are pending,
> whether the issue is substantive or procedural, the temporal relationship between
> the matters, the significance of the issue to the immediate and long-term interests
> of the clients involved and the clients' reasonable expectations in retaining the
> lawyer. If there is significant risk of material limitation, then absent informed
> consent of the affected clients, the lawyer must refuse one of the representations or
> withdraw from one or both matters.

Pa. R. Prof. Conduct 1.7 cmt. 24.

As explained above, this Court finds that there is no current material difference of interests

with respect to Plaintiffs and the *Carrow* class. Both Plaintiffs and the *Carrow* class will attempt

to prove that FedEx is liable in their respective cases, and neither of LLR's clients has anything to

gain from proving that the other is liable. In light of this holding, as well as those discussed in

addressing FedEx's arguments regarding Pa. R. Prof. Conduct 1.7(a)(1), the Court shall briefly

address each of FedEx's assertions regarding Pa. R. Prof. Conduct 1.7(a)(2) below.

In support of its argument that LLR's representation of Plaintiffs in this action creates a

significant risk that LLR's representation of the *Carrow* class will be materially limited, FedEx

again raises concern that this Court must determine that Service Providers are liable for FLSA

violations if it finds that FedEx is liable for such violations. For the reasons discussed above, this

argument is without merit.

FedEx also asserts that Plaintiffs' failure to sue or join Service Providers in this case establishes that LLR's representation of Plaintiffs has already been limited by its representation of the *Carrow* class.  In a joint and several liability case, however, a plaintiff is not required to sue every entity or individual who may be liable to the plaintiff, and the plaintiff is entitled to choose against which defendant the plaintiff seeks relief.  *See Janney Montgomery Scott, Inc. v. Shepard Niles, Inc.*, 11 F.3d 399, 412 (3d Cir. 1993) ("Inherent in the concept of joint and several liability is the right of a plaintiff to satisfy its whole judgment by execution against any one of the multiple defendants who are liable to him, thereby forcing the debtor who has paid the whole debt to protect itself by an action for contribution against the other joint obligors."); *McDonald v. Pennsylvania State Police,* No. 02:09-cv-00442, 2012 WL 5381403, at *14 (W.D. Pa. Oct. 31, 2012), *aff'd*, 532 F. App'x 176 (3d Cir. 2013) ("As Plaintiff is master of his Complaint, he is entitled to limit his claims and select the Defendant(s)." (citing *Morgan v. Gay*, 471 F.3d 469, 474 (3d Cir.2006))); *Bedel v. Thompson*, 103 F.R.D. 78, 81 (S.D. Ohio 1984) ("A plaintiff is under no requirement to join all parties who might be jointly and severally liable." (citing *Delano v. Ives*, 40 F.Supp. 672 (E.D.Pa.1941); *Satink v. Holland Township*, 31 F.Supp. 229 (D.N.J.1940))).

A plaintiff is also not required to sue every entity or individual which may be considered its joint employer.  *Romero v. Clean Harbors Surface Rentals USA, Inc.*, 368 F. Supp. 3d 152, 160 (D. Mass. 2019) ("But this misses the point of Rule 19 – 'complete relief' does not require the joinder of all parties who might enhance plaintiff's damages award." (citing *Bacardi Int'l Ltd. v. V. Suárez & Co.*, 719 F.3d 1, 10 (1st Cir. 2013))); *Arwine-Lucas v. Caesars Enterprises Servs., LLC*, No. 4:17-CV-00451-HFS, 2019 WL 4296496, at *2 (W.D. Mo. Feb. 25, 2019) ("This Court recently rejected the argument that both sides to the joint employer relationship must be identified in the complaint."); *Iraheta v. Lam Yuen*, LLC, No. Civ. A. No. DKC 12-1426, 2012 WL 5995689,

at *5 (D. Md. Nov. 29, 2012).  ("Consistent with these principles, courts generally hold that where a plaintiff states an FLSA claim against a defendant who is alleged to be his employer, an unnamed co-employer is not a necessary party who should be joined under Rule 19(a)."); *DeWitt v. Daley*, 336 B.R. 552, 556 (S.D. Fla. 2006) ("As stated *supra*, the FLSA provides for joint and several liability.  Therefore, Plaintiffs can obtain complete relief from Defendant without making BBC a party to the case.")

While the Court acknowledges FedEx's proffered concerns regarding Plaintiffs' ultimate chances of success and potential extent of recovery, including FedEx's concerns regarding the applicability of different statutes of limitations, in this litigation in the absence of Service Providers, Plaintiffs are entitled to decide who they name as defendants, taking into account the trade-offs presented by including, or not including, specific defendants.  Plaintiffs assert that the "inclusion of [Service Providers] would render this litigation entirely unmanageable, as there are thousands of them nationwide[,]" and that "many, if not most, of the [Service Providers] would likely be unable to satisfy a judgment."  Br. in Opp'n 2 n.4.  The Court sees no cause to question the strategic bases set forth by Plaintiffs for suing only FedEx in this matter, and finds that Plaintiffs' failure to sue Service Providers does not evidence a concurrent conflict of interest. [6]

FedEx further argues that, because the FLSA's overtime requirements apply only to drivers who perform duties utilizing light vehicles, i.e. vehicles that weigh 10,000 pounds or less, under the light vehicle exception, and because the collective in this action includes drivers who drove

---

[6] The Court also notes that FedEx's reliance on *Yates v. Applied Performance Techs., Inc.*, 209 F.R.D. 143 (S.D. Ohio 2002) for the proposition that a conflict exists fails in two regards.  Initially, the *Yates* court's decision clearly hinged on the filing of a third-party complaint which named another client of plaintiffs' counsel as a third-party defendant. *See Yates v. Applied Performance Techs., Inc.*, 209 F.R.D. 143, 152 (S.D. Ohio 2002) ("In the Court's view, Lucent's third party complaint, which names Gregg McConnell as a third party defendant, places Ferron in an untenable situation.").  Further, FedEx's reliance on *Yates* presupposes that this Court must find that Service Providers violated the FLSA to find that FedEx violated the FLSA, and/or that testimony elicited by LLR from Service Providers will be adverse to Plaintiffs.  Br. in Supp. 11, ECF No. 140.  As discussed above, this Court does not find merit in either of these assertions.

both light vehicles and vehicles above 10,000 pounds,  Plaintiffs will necessarily argue for the lowest possible definition of de minimis in this action,[7] and that this argument is contrary to the interests of the *Carrow* class.   This argument fails because, at this moment, LLR represents Plaintiffs and the *Carrow* class in lawsuits against only FedEx.  Pennsylvania Rule of Professional Conduct 1.7 provides that "[a] conflict of interest exists . . . if there is a significant risk that a lawyer's action on behalf of one client will materially limit the lawyer's effectiveness in representing another client in a different case, for example, when a decision favoring one client will create a precedent likely to seriously weaken the position taken on behalf of the other client." Pa. R. Prof. Conduct 1.7 cmt. 24 (emphasis added).

FedEx's assertion of a conflict seemingly relies upon speculation that Service Providers will, at some point in the future, potentially be sued by drivers for FLSA violations, and that those Service Providers' interests will be harmed by a potential decision by this Court which agrees with Plaintiffs' definition of de minimis.  Such a decision, however, would have no impact on the interests of the *Carrow* class in their lawsuit against FedEx.  The *Carrow* class has sued FedEx for unpaid wages.  The *Carrow* class is not currently being sued for violations of the FLSA which implicate the light vehicle exception, and FedEx does not assert that LLR is advocating for a higher definition of de minimis in *Carrow*.  Accordingly, the Court finds that any argument respecting the light vehicle exception in this case will not "create a precedent likely to seriously weaken" LLR's position taken on behalf of its clients in the *Carrow* action.

Finally, absent some other factor supporting a finding of a concurrent conflict of interest in this matter, the Court finds that LLR's willingness to exclude New Jersey drivers from notice

---

[7] As to cases involving drivers who utilize both light and heavy vehicles, FedEx asserts that "courts have concluded that drivers are entitled to overtime under the light vehicle exception for weeks they used light vehicles, if their work on light vehicles is more than de [minimis], though they have not settled on what de [minimis] means." Br. in Supp. 12, ECF No. 140 (citations omitted).

in this action, alone, does not create a concurrent conflict of interest.  Such an assertion may support disqualification if the Court were to find that a conflict of interest exists.  As set forth above, however, that is not the case in this matter.

For all of the reasons discussed above, the Court finds FedEx has not met its burden of clearly showing that a concurrent conflict of interest warrants LLR's disqualification in this matter.

### C.  Outstanding Issues with Respect to Notice

In their February 14, 2020 Joint Status Report (ECF No. 141), the parties identified several issues respecting notice in this matter that had purportedly not yet been resolved at the time this case was reassigned.  The only remaining issues are: 1) the form of notice; and 2) whether Colorado drivers should receive notice in this action.

#### 1.  Form of Notice

The parties filed separate proposed notice forms (ECF Nos. 112 and 113) on October 11, 2019.  The parties disagree as to the inclusion of a single sentence in their respective proposed notice forms.  FedEx requests that the notice form and reminder notice form include the following sentence: "FedEx Ground intends to seek reimbursement from the ISPs and CSPs if it is eventually ordered to pay any back wages in this case."  Proposed Notice Forms 1, ECF No. 113.  Plaintiffs oppose the inclusion of this sentence.  Plaintiffs alternatively argue that, should this Court find that FedEx's proposed sentence should be included in the notice, the following sentence should directly follow FedEx's requested sentence: "Plaintiffs contend that it is FedEx Ground that is responsible for these payments and object to FedEx's attempt to deter drivers from participating in this case by threatening to seek reimbursement of the payment from ISPs or CSPs."  Pls.' Proposed Notice, Reminder Notice, and Opt-In Form 2, ECF No. 112.

22

The United States District Court for the District of New Jersey, citing the United States Supreme Court's decision in *Hoffmann–La Roche Inc. v. Sperling*, 493 U.S. 165 (1989), has explained:

> Upon conditional certification of a FLSA collective action, a court has discretion to provide court-facilitated notice to potentially eligible members of the collective action. *Hoffmann–La Roche Inc. v. Sperling*, 493 U.S. 165, 170, 110 S.Ct. 482, 107 L.Ed.2d 480 (1989). Such notice ensures that employees receive "accurate and timely notice concerning the pendency of the collective action, so that they can make informed decisions about whether to participate." *Id.* The notice also "serves the legitimate goal of avoiding a multiplicity of duplicative suits and setting cut off dates to expedite the disposition of the action." *Id.* at 172, 493 U.S. 165, 110 S.Ct. 482, 107 L.Ed.2d 480.

*Robles v. Vornado Realty Tr.*, Civ. A. No. 15-1406 JLL, 2015 WL 5012597, at *4 (D.N.J. Aug. 21, 2015). The United States District Court for Western District of Pennsylvania has previously held, in an FLSA action, that, "because of the real possibility that at least some opt-in Plaintiffs could be responsible for certain court costs, some language on that topic should be included in the Notice in order to provide potential opt-in Plaintiffs with appropriate disclosure of the possible risks of joining the lawsuit." *Dunkel v. Warrior Energy Servs., Inc.*, 304 F.R.D. 193, 207 (W.D. Pa. 2014).

Upon review of the submissions of the parties, as well as a review of relevant caselaw and the entire record in this matter, the Court finds that the additional language suggested by FedEx is unwarranted in the present action. Initially, Service Providers are not parties to this action. The proposed additional sentence pertains to FedEx's intention to pursue reimbursement from individuals and entities who are not parties to this action, but only in the event that FedEx is found liable. The Court finds that the proposed additional sentence could cause confusion as to whether Service Providers are parties to this lawsuit, and for that reason could have a chilling effect on potential opt-in Plaintiffs. FedEx's proposed sentence is also distinguishable from a sentence

which informs potential opt-in plaintiffs that they may be responsible for court costs if unsuccessful in litigation.  Such a sentence pertains only to the litigation to which the potential opt-in plaintiff will be a party, and provides such individuals with information regarding a potential consequence that the plaintiff personally may endure if the lawsuit is unsuccessful.  FedEx's proposed sentence describes a potential consequence for nonparties that can only be sought by way of a subsequent lawsuit.  Accordingly, the Court finds that the additional sentence proposed by FedEx regarding indemnification is unwarranted in this action,[8] and the Court shall enter an Order approving Plaintiffs' Proposed Notice, Reminder Notice, and Opt-In Form (ECF No. 112).

### 2.  Notice to Colorado Drivers

FedEx argues that Colorado drivers should not receive notice in this action because the United States District Court for the District of Colorado declined to conditionally certify the same proposed class of individuals in *Nelson v. FedEx Ground Package Sys., Inc.*, No. 18-cv-01378. Joint Status Report 2, ECF No. 141.  FedEx argues that Judge Dodge did not address this issue in granting conditional certification, and requests that this Court enter a ruling as to this issue.  *Id.* Plaintiffs assert that this issue was already raised in FedEx's Opposition to Plaintiffs' Motion for Issuance of Notice, and that Judge Dodge rejected this argument by granting nationwide conditional certification.  *Id.* at 3.  Plaintiffs further argue that the fact that another district court entered a contrary decision in a different case, while considering a different factual record, does not bind this Court.  *Id.*

The Court agrees with Plaintiffs.  FedEx clearly raised this issue before Judge Dodge in opposing conditional certification.  *See* FedEx's Opp'n to Mot. for Issuance of Notice 9, ECF No. 29 ("In fact, the federal court in Colorado has already rejected conditional certification of a putative

---

[8] The Court notes that, as a result of this determination, the additional sentence proposed by Plaintiffs is also unnecessary.

statewide collective action.  Ex. F at 8-10.  Granting conditional certification of a nationwide FLSA class that includes Colorado drivers would improperly allow Plaintiffs to effect an end-run around this ruling. The interests of judicial comity and efficiency do not countenance that result.");  FedEx's Resp. Regarding Pending Litigation 1-2, ECF No. 52.  Judge Dodge, in certifying a nationwide collective (excluding Massachusetts) which did not exclude Colorado drivers, has already ruled on this issue.  October 8, 2019 Order, ECF No. 109; September 30, 2019 Mem. Op., ECF No. 106.  The Court further notes that Judge Dodge also explicitly addressed FedEx's arguments regarding similar "first-filed" actions, and held that "such concerns do not warrant a ruling denying conditional certification."  Sept. 30, 2019 Mem. Op. 9, ECF No. 106.  As such, FedEx is incorrect in asserting that Judge Dodge has not addressed this issue, and this Court will not disturb Judge Dodge's decision at this time.

## IV.      Conclusion

For the reasons discussed above, FedEx's Motion to Disqualify Plaintiffs' Counsel, Lichten & Liss-Riordan, P.C., (ECF No. 139) will be denied.  With respect to the purported outstanding issues set forth in the parties' Joint Status Report (ECF No. 141), the Court shall enter an Order approving Plaintiffs' Proposed Notice, Reminder Notice, and Opt-In Form (ECF No. 112) without modification.  The Court further finds that Judge Dodge has already ruled on the issue of whether Colorado drivers should receive notice in this action, and this Court shall not revisit that determination at this time.  An appropriate Order of Court follows.

BY THE COURT:

s/*Robert J. Colville*
Robert J. Colville
United States District Court Judge

DATED: May 21, 2020

cc/ecf: All counsel of record