IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ANGEL SULLIVAN-BLAKE and HORACE CLAIBORNE, on behalf of themselves and others similarly situated, | |
| *Plaintiffs*, | Civil Action No. 2:18-cv-01698-RJC |
| v. | Judge Robert J. Colville |
| FEDEX GROUND PACKAGE SYSTEM, INC., | |
| *Defendant*. | |

**INTERVENOR, TABE TRUCKING INC.'S MEMORANDUM
IN SUPPORT OF MOTION TO INTERVENE**

**I.     INTRODUCTION**

TABE Trucking Inc. ("TTI") moves to intervene in order to strike the notices of consent and dismiss *with prejudice* the claims of fourteen opt-in Plaintiffs (the "Opt-Ins"). Eleven (11) Opt-In Plaintiffs never drove a vehicle with a gross vehicle weight rating of 10,000 lbs. or less while directly employed by TTI. One (1) Opt-In did not drive a vehicle with a gross vehicle weight rating of 10,000 lbs. or less during any work week in which he worked more than forty hours. The remaining two (2) Opt-In Plaintiffs directly employed by TTI never drove a vehicle with a gross vehicle weight rating of 10,000 lbs. or less more than a minimal amount. They are thus outside the scope of the conditional collective, and subject to the Motor Carrier Act ("MCA") exemption to the Fair Labor Standards Act of 1938 ("FLSA"). Additionally, because TTI directly employed these individuals, TTI is in the best position to present these facts to the Court. TTI also has a substantial interest in this litigation since FedEx Ground Package System, Inc. ("FedEx"), the sole

Defendant in this action, may seek indemnity from TTI if forced to pay a judgment on these claims. TTI thus has compelling grounds to intervene.

## II. STATEMENT OF FACTS

### A. Relationship Among the Parties

TTI provides ground transportation services for FedEx under an independent service provider agreement (the "Agreement" or "ISPA," attached as Exhibit 1 to the Answer and Defenses of TABE Trucking Inc., a copy of which is attached hereto pursuant to Federal Rule 24(C)). As a Service Provider ("SP"), TTI provides package pick-up and delivery services to FedEx, and directly employs the personnel to carry out those services. The Agreement states:

> **1.2 Contractual Relationship Between the Parties.** The Parties intend to create by this Agreement a business to business relationship **and not one of employment**. The Parties further agree that neither Party is, nor will be represented, alleged, or deemed to be a legal representative, joint venturer, joint employer, franchisor, franchisee, dealership, distributorship or legal partner of the other Party for any purpose. As a corporate entity and employer, TTI has the sole right and obligation to supervise, manage, direct, procure, perform or cause to be performed, all services to be provided by TTI under this Agreement. No officer, agent or employee of FXG has authority to direct TTI or TTI's "Personnel" (defined in Section 6.2) as to the methods, manner or means employed to provide the "Contracted Services" (defined in Attachment A-2 to Schedule A) or achieve the "Contracted Service Results" (defined in Attachment A-2 to Schedule A).

Agreement, p. 4, ¶ 1.2, (emphasis added.). The parties respectively agreed to abide by all laws, including the law applicable to employment practices. Agreement, p. 4, ¶ 1.3.

Under the Agreement, TTI agreed to assign only personnel directly employed by TTI to the FedEx account. Paragraph 6.2 of the Agreement states:

> **6.2 Responsibility for Employer-Related Expenses and Legal Compliance.** Subject only to the subcontracting exception under Section 7, TTI agrees to assign only Personnel, including officers and managers, that TTI ensures are treated as employees of TTI in the provision of Services under this Agreement ("TTI Personnel" or "Personnel"). TTI agrees that neither it nor any of its Personnel are to be treated as or considered to be FXG's employees, directly, indirectly, or jointly,

for any purpose, nor is TTI or its Personnel entitled to or eligible for any employee benefits from FXG or any FXG-sponsored benefit plans, even if subsequently reclassified as employees, under common law or otherwise, of FXG by a court, agency, or other adjudicative body.

TTI expressly agreed to assume responsibility for employment practices including the drivers' training, wages, salaries, benefits, employment taxes, payroll, and legal compliance. Agreement at p. 5-6, ¶ 6.2.

The Agreement further states that TTI has "sole and complete discretion" to determine the material aspects of the employment relationship:

> **6.4 ISP Personnel.** TTI has sole and complete discretion in the staffing, selection, hiring, training, supervision, assignment, hours and days worked, discipline, termination, compensation, benefits, and all other terms and conditions of employment of its Personnel assigned to provide Services under this Agreement, including conditions expressly agreed to in Section 6.4 and Schedule I, to TTI's obligation to treat its Personnel as its employees and comply with Applicable Law, and to the condition that TTI's Personnel assigned by it to provide Services under this Agreement not be employed by or under contract with a competitor of FXG. Agreement, p. 6, ¶ 6.4.

Schedule I to the Agreement ("Schedule I"), referenced in the paragraph above, states:

> TTI is responsible for the development, implementation, and performance of its safety and compliance program and for discretion in Personnel-related matters in connection with its program, including but not limited to, hiring, discipline, termination, supervision, compensation, and scheduling.

Agreement, Schedule I, at ¶ 6.4.

In addition to employing the drivers, TTI agreed to lease to FedEx TTI's trucks TTI's drivers operated. Agreement, p. 8 – 11, ¶¶ 8.1 – 8.9. TTI's responsibilities included owning, maintaining, and inspecting the vehicles while providing services under the Agreement. *See* Agreement, ¶ 8.1(A) – ¶ 8.4. This lease-back type of arrangement is common in the trucking

industry and, under the applicable federal regulations, permits TTI to operate under FedEx's Department of Transportation ("DOT") authority.

As the employer of the drivers and the owner of the trucks, TTI has direct knowledge of its vehicle operations.

The Agreement contains express indemnity provisions. Agreement, p. 14 - 15, ¶ 14 and Schedule L ("Schedule L" captioned "Insurance and Indemnification.). The parties agree to mutually indemnify each other against:

> any claims (including fines and penalties) relating to the failure (whether by act or omission of the indemnifying Party or any of its employees, agents or subcontractors to comply with Applicable Law.

Agreement, Schedule L, ¶ 2.1(B). "Applicable Law," as defined by the Agreement, includes wages, salaries, benefits, employment taxes, payroll, and legal compliance. Agreement at p. 5-6, ¶ 6.2. TTI also agreed to "indemnify, defend and hold harmless" FedEx from "any claims relating to assertions by any current or former TTI agent, employee, or subcontractor arising in any way out of their relationship with TTI or the termination of that relationship." Agreement, Schedule L, ¶ 2.3(A).[1]

B. **The Present Lawsuit**

On December 21, 2018, the named Plaintiffs in this action brought suit against FedEx seeking unpaid overtime compensation under the FLSA. Although the Plaintiffs acknowledge that FedEx works with independent service providers that employ them (Complaint at p.3, par. 9), the Plaintiffs also contend that the delivery drivers working under the service provider agreements are considered FedEx employees as well under the FLSA. Complaint, p. 3, ¶ 11 through p. 6, ¶ 17(i).

---

[1] It should be noted, however, that the Agreement and Schedule L were drafted by FedEx, and the express indemnity provisions primarily address liability for injury to person or property. Nowhere does Schedule L expressly mention liability for employment actions.

4

Plaintiffs seek to represent a class of delivery drivers who worked more than 40 hours per week, and drove vehicles with a gross vehicle weight rating of 10,000 lbs. or less, that were not paid overtime. Complaint, p. 3, ¶ 10.

On September 30, 2019, the Court conditionally certified the following collective:

> All individuals (outside Massachusetts) who worked as a FedEx delivery driver under an independent service provider (ISP) since November 27, 2015, who operated a vehicle weighing less than 10,001 pounds at any time since November 27, 2015, and were not paid overtime compensation for all hours worked over forty each week. (ECF No. 107)

On 10/30/2019, before notice issued, FedEx filed a Rule 19(a) Motion to Join Pennsylvania Service Providers as Necessary Parties and Rule 19(b) Motion to Dismiss for Failure to Join Indispensable Parties (ECF No. 114). FedEx argued that its network of Service Providers had a direct interest in the suit because they paid the drivers, set the compensation policies (including overtime eligibility), and faced liability for any judgment against FedEx under the contractual indemnification provisions of their service provider agreements. Brief in Support of Motion, ECF No. 115, at p. 2.

The Court disagreed. On January 31, 2020, this Court Ruled that: a) it could accord complete relief among the existing parties; b) the Service Providers do not have a direct stake in this litigation; and c) the absence of Service Providers would not subject FedEx to inconsistent obligations. Doc. No. 133. The Court denied FedEx's motion.

    **C.**    **Fourteen Opt-Ins Directly Employed by TABE Trucking, Inc.**

After the issuance of notice, fourteen current and/or former drivers directly employed by TTI filed consent forms in this matter. They are:

1)    Jimmy Louis Aragon (Opt-In Consent Form filed 7/30/2020, ECF Doc No. 183-30);

2)  James Michael Davis (Opt-In Consent Form filed 07/24/2020, ECF Doc No. 165-59);

3)  Xavier Ford (Opt-In Consent Form filed 09/17/2020, ECF Doc. No. 181-10);

4)  Jason Albert Griffin (Opt-In Consent Form filed 07/14/2020, ECF Doc. No. 159-3);

5)  De'Andre Durell Hudson (Opt-In Consent Form filed 09/14/2020, ECF Doc. No. 178-78);

6)  Anarose Michelle Knight (Opt-In Consent Form filed 09/10/2020, ECF Doc. No. 175-1);

7)  Joseph Knipp II (Opt-In Consent Form filed 09/18/2020, ECF Doc. No. 183-12);

8)  Teresa Jo Layne (Opt-In Consent Form filed 07/10/2020, ECF Doc. No. 158-19);

9)  Jason B. Luff (Opt-In Consent Form filed 07/17/2020, ECF Doc. No. 162-72);

10) Dennis J. Newland (Opt-In Consent Form filed 09/08/2020, ECF Doc. No. 173-52);

11) Daniel Preston (Opt-In Consent Form filed 09/11/2020, ECF Doc. No. 176-121);

12) Scott Alan Swisshelm (Opt-In Consent Form filed 07/17/2020, ECF Doc. No. 162-37);

13) Johnnie Williams (Opt-In Consent Form filed 09/16/2020, ECF Doc. No. 180-55); and

14) Kimberly Zahneis (Opt-In Consent Form filed 07/16/2020, ECF Doc. No. 161-2).

According to the data in TTI's possession, eleven (11) Opt-In Plaintiffs never drove a vehicle with a gross vehicle weight rating of 10,000 lbs. or less while directly employed by TTI. One (1) Opt-In did not drive a vehicle with a gross vehicle weight rating of 10,000 lbs. or less during any work week in which he worked more than forty hours. The remaining two (2) Opt-In Plaintiffs directly

employed by TTI never drove a vehicle with a gross vehicle weight rating of 10,000 lbs. or less more than a minimal amount. *See* Declaration of Tim Diehl, President, TABE Trucking, Inc. ("Declaration").

### D.     Potential for FedEx to Bring Indemnity Proceedings Against TTI

On or around January 19, 2021, TTI received a letter from counsel for FedEx (attached as Exhibit 1 to the Declaration). In that letter, counsel for FedEx states:

> The scanner data that FedEx Ground has pulled indicates that Tabe Trucking Inc. employed the above 14 driver(s) during the pertinent time period. This has important implications for Tabe Trucking Inc.
>
> - First, because of the indemnification (meaning, reimbursement) obligation Tabe Trucking Inc. owes to FedEx Ground if FedEx Ground has to pay the above driver(s) back wages, Tabe Trucking Inc. has interests in the lawsuit and interests in proving that it properly paid wages. As a result, **Tabe Trucking Inc. may seek to join the lawsuit to ensure that its interests are protected.**
>
> - If Tabe Trucking Inc. chooses not to join the lawsuit, please understand that it may be bound by any decision regarding the propriety of how Tabe Trucking Inc. paid its above employees, **and FedEx Ground may seek the full amount of those damages** related to Tabe Trucking Inc.'s employees from Tabe Trucking Inc., including its defense costs. (*See* Section 3.5 and Addendum 16 of the Operating Agreement and/or Section 14 of the ISP Agreement).

(Emphasis in original; footnote omitted.) The letter continues:

> Please understand that even if you believe Tabe Trucking Inc. has no risk of liability because it paid overtime wages, did not use vehicles with a GVWR of less than 10,001 pounds, did not have its driver(s) work more than 40 hours, or any other reason, **that belief is not enough by itself and will need to be proved in court with evidence.** . . . While FedEx Ground may have full information on vehicles driven and the GVWR of those vehicles for some driver(s), it does not have that information for all due to either incorrect vehicle number entries or incomplete information in the Vehicle Management System.

Declaration Exhibit 1 (*emphasis added*). TTI, as the direct employer of the fourteen Opt-In Plaintiffs, now moves for leave to intervene and present these facts to this Honorable Court.

### III.   ARGUMENT

#### A.   Rule 24(a)(2): Intervention as of Right

TTI seeks intervention of right under Federal Rule of Civil Procedure 24(a), which states, in relevant part:

> (a) **Intervention of Right.** Upon timely application, anyone shall be permitted to intervene in an action... (2) when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

Fed.R.Civ.P. 24(a)(2).

The Third Circuit Court of Appeals utilizes a four-factor test to determine whether the intervening party has a right to intervene under Rule 24(a). This test requires:

> 1) a timely application for leave to intervene, 2) a sufficient interest in the underlying litigation, 3) a threat that the interest will be impaired or affected by the disposition of the underlying action, and 4) that the existing parties to the action do not adequately represent the prospective intervenor's interests.

*Liberty Mut. Ins. Co. v. Treesdale, Inc.*, 419 F.3d 216, 220 (3d Cir. 2005); *see also Community Vocational Schools of Pittsburgh, Inc. v. Mildon Bus Lines, Inc.*, W.D.Pa. No. 09-1572, 2017 U.S. Dist. LEXIS 57870, at *5 (Apr. 17, 2017). The burden of proof as to each of these factors is on the party seeking to intervene. *Community Vocational Schools of Pittsburgh, Inc.*, 2017 U.S. Dist. LEXIS 57870, at *5-6. Nevertheless, the Third Circuit Court of Appeals takes an expansive approach, and seeks to qualify "as many concerned parties as is compatible with efficiency".

*Kleisser v. United States Forest Serv.*, 157 F.3d. 964, 969 (3d Cir. 1998). Herein, TTI meets its burden on all four requirements.

    1)    <u>TTI's motion is timely.</u>

When making a timeliness decision, courts within the Third Circuit "consider the totality of the circumstances, not the counting of days." *Community Vocational Schools,* 2017 U.S. Dist. LEXIS 57870, at *9. A district court must consider: 1) the stage of the proceeding at which the party seeks to intervene; 2) any prejudice to the parties; and 3) the reasons for any delay. *Id.*

When considering the stage of the proceeding, district courts measure timeliness from the point at which the applicant knew, or should have known, of the risk to its rights. *Id.* In this case, TTI is seeking intervention shortly after fourteen of its former employees consented to join this lawsuit. Prior to that time, TTI had no employees involved in this litigation and thus lacked standing to intervene.[2] Moreover, TTI first became aware of its potential exposure approximately January 19, 2021, when it received the letter from FedEx's counsel citing the indemnification provisions of TTI's agreement with FedEx, and indicating that FedEx may seek indemnification from TTI if FedEx is ordered to pay back wages to the fourteen TTI employees.

The second prong – prejudice to the parties – is considered the most important factor in determining timeliness. *Id.* at *11 - *12. In this action, none of the existing parties would be prejudiced by intervention. As for the Plaintiff and Opt-Ins, the final certification/decertification phase of this collective action is in its early stages and the Opt-Ins directly employed by TTI have only recently consented to join this litigation. TTI's counsel has conferred with FedEx's counsel, and FedEx agrees there is no prejudice to TTI joining now and, indeed, FedEx is the party that put TTI on notice that it may seek to join to ensure TTI's interests are protected. There has been no

---

[2] TTI did not have a live case or controversy until its employee, Teresa Jo Layne, consented to join this lawsuit on July 10, 2020, at the earliest.

9

discovery to date with respect to the fourteen TTI opt-in employees, and it does not appear that there is anything currently scheduled, as the current parties continue to debate and brief discovery issues to the Court. It appears that not even the two named Plaintiffs have been deposed yet.

Moreover, there will be no delay to the Court's calendar, as TTI will promptly move to strike and dismiss those employees who do not fit within the scope of the putative class. If unsuccessful, TTI plans to join FedEx in a motion to decertify at the appropriate time.

    2)    <u>TTI has a sufficient interest in the underlying litigation.</u>

TTI also has a substantial legal interest in this case that more than satisfies the Third Circuit's expansive reading of Rule 24(a) intervention, for three key reasons.

First, TTI has a strong basis to dispose of the claims the fourteen Opt-Ins who fall outside the conditional collective. The definition of the collective includes only those members "who operated a vehicle weighing less than 10,001 pounds at any time since November 27, 2015." ECF No. 107. This definition incorporates the MCA exemption to the FLSA, 29 U.S.C. § 213(b)(1), as well as the SAFETEA-LU Technical Corrections Act of 2008, Pub. L. No. 110-244, § 306(a), (c), 122 Stat. 1572, 1621 (June 6, 2008) ("TCA"), which together exclude drivers of vehicles with a vehicle weight rating over 10,000 lbs. from coverage under the FLSA. *See also* USDOL, Wage and Hour Div. Fact Sheet #19: The Motor Carrier Exemption under the Fair Labor Standards Act (FLSA). The burden of proving whether the vehicles weigh 10,000 pounds or less resides with the Plaintiff. *Carley v. Crest Pumping Technologies, LLC*, 890 F.3d 575, 580 (5th Cir. 2018). The proper measure of the vehicle's weight is the Gross Vehicle Weight Rating (GVWR). *Id.* at 582. In other words, each Plaintiff must produce evidence that he or she drove a vehicle with a GVWR of 10,000 pounds or less. *Id.* TTI has performed a search of its records, and has determined that eleven (11) Opt-In Plaintiffs never drove a vehicle with a gross vehicle weight rating of 10,000

lbs. or less while directly employed by TTI. One (1) Opt-In Plaintiff did not drive a vehicle with a gross vehicle weight rating of 10,000 lbs. or less during any work week in which he worked more than forty hours. The remaining two (2) Opt-In Plaintiffs directly employed by TTI never drove a vehicle with a gross vehicle weight rating of 10,000 lbs. or less more than a minimal amount.

Second, TTI, as the direct employer, has superior access to records. Because TTI is the direct employer of the Opt-Ins, from a practical perspective, it cannot avoid participating in this litigation, whether as Intervenor or as a material third-party witness. All parties will need access to TTI's documents and witnesses.

Third, if left out of this litigation, TTI might face liability for a judgment it had no opportunity to contest or, worse, damage to its entire business.[3] As an initial matter, if it is found in this proceeding that TTI did not properly classify or pay its fourteen opt-in employees (which could only potentially occur if TTI is not joined to defend its own pay practices and vehicle usage of its employees) FedEx could argue that TTI has breached its agreement with FedEx by purportedly not paying TTI's employees in compliance with the law. Such a finding could thus expose TTI to termination of its services contract with FedEx. Additionally, TTI has an interest in ensuring that FedEx is not found to be a joint employer of any of TTI's employees. If that were to occur, FedEx would most likely start getting involved in TTI's management of TTI's employees,

---

[3] TTI reserves the right to dispute any duty of indemnity under its ISP Agreement with FedEx, and acknowledges that some courts have found such a reservation of rights persuasive evidence that any interest in the litigation is too contingent and remote for intervention. *Community Vocational Schools*, 2017 U.S. Dist. LEXIS 57870, at *21 – 22, collecting cases. Those cases are distinguishable, however, because they involved insurers, and often underlying coverage disputes pending in other courts. In this case, any duty to indemnify is not contingent upon parallel coverage litigation, and FedEx Ground has indicated its intent to seek indemnification if it is ordered to pay damages to TTI's employees. *See, e.g., Estate of Siemen ex rel. Siemen v. Huron Med. Ctr.*, E.D. Mich. No. 11-11249-BC, 2012 U.S. Dist. LEXIS 35719 at * 12 (Mar. 16, 2012) (an intervenor has sufficient interest where it may be required to indemnify its customer). TTI is aware that the Court previously ruled (without the benefit of any Service Provider briefing) that the potential for an indemnification claim is insufficient to find that SPs such as TTI are necessary or indispensable parties. However, the risk of indemnification has now become tangible; in addition, this proceeding has the potential to put TTI's entire contract with FedEx at risk.

including hours worked, how to schedule them and on which trucks, and how TTI decides to pay them. TTI has no desire to have FedEx involved in its business in that manner. TTI has invested substantial sums of time, effort, and money in building its business, and this lawsuit threatens to jeopardize it in several ways, as just discussed.

      3)      <u>TTI's interest would be impaired by disposing of the underlying litigation without its participation.</u>

TTI presently has no control over when, how, or even if FedEx will move to strike and dismiss the fourteen Opt-Ins directly employed by TTI (or when the Court will permit FedEx to do so and, when the Court does, whether the Court will require FedEx to have to lump together thousands of other drivers and implicated Service Providers into one, potentially confusing and overwhelming, filing). The choices FedEx makes during this litigation are a matter for FedEx and its counsel. And TTI has no interest in being lumped together with thousands of other potentially implicated SPs or having its fourteen opt-in employees that have no claims hidden amongst the tens of thousands of drivers that have opted into this case, which appears to be Plaintiffs' strategy in this case.

As discussed above, FedEx has indicated to SPs that it may not have complete vehicle weight records with respect to the vehicles the SP opt-in drivers drove (and it has even less, if any, information regarding how SPs paid SP drivers). It is beyond dispute that TTI is situated to efficiently dispose of the claims of the fourteen Opt-Ins it directly employed. TTI should not be forced to rely on FedEx—a Defendant (i) that does not have employment records for TTI's employees, (ii) has indicated its intent to initiate indemnification proceedings against TTI if it comes to that, and (iii) has its efforts stretched and divided amongst approximately 6,000 different SPs. If FedEx fails to strike and dismiss the claims of the Opt-Ins directly employed by TTI, and

TTI has not sought to intervene, then TTI could potentially be estopped from making the same arguments in a subsequent indemnity action. *See Vasandani, supra* at *6.

    4)    <u>FedEx does not adequately represent TTI's interest.</u>

It is apparent from numerous filings with the Court as well as FedEx's letter to TTI that FedEx is taking the position that if opt-in drivers were not properly categorized as exempt or were not properly paid under the FLSA, it will seek reimbursement from SPs for damages it has to pay. FedEx made this clear when it moved to implead Pennsylvania SPs (and dismiss the rest of the states) implicated by the few dozen drivers that opted into the case before notice issued. FedEx also pointed out to the Court several ways in which its interests may, and will (if the case proceeds), diverge from the SPs, just one of which being the willfulness issue under the FLSA. FedEx appears to intend to argue that if there is any willfulness at all to extend the statute of limitations to three years, it must be the willfulness of the SPs, not FedEx, because the SPs signed annual certification forms to FedEx every year indicating the SPs were in compliance with all wage and hour laws.

TTI thus has a greater interest than FedEx in ensuring that the fourteen Opt-Ins it directly employed, but who do not meet the conditional collective class definition, are dismissed. Unlike FedEx, TTI is operating without a potential contractual safety net. *See Morocco v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, S.D. Ohio No. 2:03-CV-523, 2003 U.S. Dist. LEXIS 17918 at * 8 - * 9 (S.D. Ohio Oct. 9, 2003) (finding intervention of right because it appeared that any judgment against the defendant would ultimately be borne, from a financial standpoint, by the proposed intervenor, and the defendant's representation of intervenor's interests would be inadequate.)

In summary, TTI's motion to intervene is timely, and TTI has a sufficient interest in the underlying litigation. Moreover, FedEx does not adequately represent TTI's interest, and that

interest would be substantially impaired if this court were to proceed without TTI's participation. TTI thus has a right to intervene under Rule 24(A)(2).

### B.      Rule 24(b): Permissive Intervention

If the intervening party does not meet its burden under Rule 24(a), it may still be able to intervene under Rule 24(b), which provides for permissive intervention at the discretion of the Court. *Community Vocational Schools of Pittsburg*, *supra,* at *6. Rule 24(b) provides, in relevant part:

> (b) Permissive intervention. Upon timely application, anyone may be permitted to intervene in an action: . . . (2) when an applicant's claim or defense and the main action have a question of law or fact in common.

Rule 24(b); *see also Community Vocational Schools,* 2017 U.S. Dist. LEXIS 57870, at * 23 - *24. Both conditions are met here.

There are undeniably **common questions of law**, primarily whether the consents of the fourteen Opt-Ins should be stricken and their claims dismissed with prejudice for failure to satisfy their burden to prove that they meet the collective definition. There is also a question whether these fourteen Opt-Ins are similarly situated to the members of the conditional class for the purposes of final certification/decertification.

Moreover, there are **common questions of fact**, such as whether the Opt-Ins drove vehicles with a GVWR 10,000 lbs. or less as required by the collective. TTI and FedEx have asserted common defenses — that opt-in drivers have been properly compensated by their SPs (which includes TTI), that the Opt-Ins Plaintiffs meet the Motor Carrier exemption to the FLSA, and that these questions must be answered at least on an SP-by-SP basis, if not on a driver-by-driver basis, because it is prejudicial and unfair to attempt to lump all SPs together as if they all used the same vehicles for their drivers, had the same employment practices, and paid the same way (they did

not). Put differently, a full airing of the facts upon which liability depends is not possible without the participation of the direct employers. *Lexington Streetsboro, LLC v. Geis*, N.D. Ohio No. 5:07CV02450, 2008 U.S. Dist. LEXIS 108090 at *11 (N.D. Ohio Feb. 22, 2008) (granting intervention permissively where "the relationships between the various parties and the claims in this case arise from the common nucleus of operative fact surrounding" the subject matter of the lawsuit).

IV.   CONCLUSION

FedEx has stated its intent to seek indemnity for any liability it incurs in this case. That is reason alone for TTI to intervene, whether as of right or permissibly. TTI has a strong interest in making sure the fourteen Opt-Ins it directly employed are dismissed with prejudice for failure to meet the definition of the collective and the small carrier exception under the MCA exemption to the FLSA. TTI is also the direct employer of the fourteen Opt-Ins, and is in the best position to address any factual issues in this litigation related to them. The Opt-Ins have only recently joined this litigation, and will not be prejudiced or delayed by TTI's intervention. Moreover, FedEx's interests may become adverse to TTI's interests, but, more, importantly, TTI should not be required to rely on FedEx as their sole (and possibly, temporary) advocate in the underlying litigation along with a mass of 6,000 other SPs. TTI is entitled to have its own voice and evidence heard and through its own representation. For these reasons, TTI satisfies the requirements for intervention under Rules 24(a)(2) and 24(b)(1)(B). A draft pleading is attached pursuant to Federal Rule 24(c).

Respectfully submitted,

 /s/ Nick A. Nykulak
Nick A. Nykulak (OH0075961)*
Sean S. Kelly (OH0075442)*
Ross, Brittain & Schonberg Co., L.P.A.
6480 Rockside Woods Blvd. South, Suite 350
Cleveland, OH  44131
Telephone:  (216) 447-1551
Facsimile:   (216) 447-1554
Email: nnykulak@rbslaw.com

*Counsel for Intervenor, TABE Trucking Inc.*

*Pro Hac Vice

**CERTIFICATE OF SERVICE**

The undersigned does certify that on the 27th day of May, 2021, I electronically transmitted the attached document to the Clerk of the Court using the ECF System for filing. Based on the records currently on file, the Clerk of Court will transmit a Notice of Electronic Filing to the applicable ECF registrants.

The following are those who are currently on the list to receive e-mail notices for this case:

<u>Counsel for Plaintiffs</u>:

Michelle Cassorla,, mcassorla@llrlaw.com

Brian Gonzales (pro hac vice), bgonzales@coloradowagelaw.com

Mark J. Gottesfeld, mgottesfeld@winebrakelaw.com

Shannon Liss-Riordan, sliss@llrlaw.com

Zachary L. Rubin, zrubin@llrlaw.com

Peter Winebrake, pwinebrake@winebrakelaw.com

<u>Counsel for Defendant, FedEx Ground Package System, Inc.</u>

Michele O. Choe, choe@wtotrial.com

Shanicka L. Kennedy, shanicka.kennedy@usdoj.gov

Joseph P. McHugh, joseph.mchugh@fedex.com

Andrew H Myers, myers@wtotrial.com

Jessica G Scott, scott@wtotrial.com

        */s/ Nick A. Nykulak*
        Nick A. Nykulak (0075961)
        *Counsel for Intervenor, TABE Trucking Inc.*