**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| ANGEL SULLIVAN-BLAKE and HORACE CLAIBORNE, on behalf of themselves and others similarly situated, | ) ) ) | 2:18-cv-01698-RJC |
| | ) | |
| Plaintiffs, | ) | Judge Robert J. Colville |
| | ) | |
| vs. | ) | |
| | ) | |
| FEDEX GROUND PACKAGE SYSTEM, INC., | ) ) | |
| | ) | |
| Defendant. | ) | |

**<u>MEMORANDUM OPINION</u>**

Robert J. Colville, United States District Judge

Before the Court is the Motion for Leave to File Amended Complaint (ECF No. 235) ("Motion to Amend") filed by Plaintiffs Angel Sullivan-Blake ("Sullivan-Blake") and Horace Claiborne ("Claiborne"), on behalf of themselves and other similarly situated individuals, (collectively, "Plaintiffs").  Plaintiffs seek leave to file an amended complaint to add additional named plaintiffs in this Fair Labor Standards Act ("FLSA") conditionally certified collective action and to assert Rule 23 state law overtime class action claims on behalf of drivers who have worked in the following states: Arkansas, Connecticut, Hawaii, Illinois, Maine, Maryland, Michigan, Minnesota, New Jersey, Oregon, Pennsylvania, Rhode Island, Vermont, and Wisconsin.[1]  Mot. 1, ECF No. 235.  Defendant FedEx Ground Package System, Inc. ("FedEx")

---

[1] Plaintiffs state that they have also removed Sullivan-Blake as a named Plaintiff in the proposed amended complaint, which is attached as Exhibit A to their Motion.  Mot. 1 n.1, ECF No. 235.  The Court notes that, by way of its Memorandum Opinion and Order of Court of the same date addressing various discovery Motions filed by the parties, Sullivan-Blake will be dismissed with prejudice from this case, and not merely removed as a named plaintiff.

opposes the Motion to Amend.  The Court has jurisdiction in this matter pursuant to 28 U.S.C. § 1331.  The Motion to Amend has been fully briefed, and is ripe for disposition.

## I.       Factual Background & Procedural History

This Court set forth the relevant factual background, and some of the relevant procedural history, of this case in its May 21, 2020 Opinion (ECF No. 156) denying FedEx's Motion to Disqualify Plaintiffs' Counsel (ECF No. 139), and will borrow from the same for purposes of the present Memorandum Opinion.   The present case is, currently, a nationwide (excluding Massachusetts) collective action brought under the FLSA by Plaintiffs against FedEx.  Plaintiffs assert that they were employed by FedEx through intermediary employers[2] to perform delivery services on FedEx's behalf.  Compl. 1, ECF No. 1.  Plaintiffs further assert that FedEx has violated the FLSA by not paying overtime compensation to Plaintiffs for all hours worked over forty each week.  *Id*.

The Complaint (ECF No. 1) was filed in this matter on December 21, 2018.  FedEx filed an Answer (ECF No. 14) on February 7, 2019.  The parties appeared before the Honorable Cynthia Reed Eddy, to whom this matter was originally assigned, for an Initial Case Management Conference on March 27, 2019.  *See* ECF Nos. 26; 41.   Following this Case Management Conference, Judge Eddy entered a Case Management Order (ECF No. 42) ("CMO") dated March 27, 2019.  The CMO provides: "The parties shall move to amend the pleadings or add new parties no later than 60 days prior to the close of fact/merits discovery."  CMO ¶ 1, ECF No. 42.  The CMO generally, including the language in Paragraph 1, clearly takes into account a "Joint

---

[2] These intermediary employers are companies that entered into contracts with FedEx to provide delivery and pickup services on FedEx's behalf, and are referred to as Independent Service Providers (ISPs) and Contracted Service Providers (CSPs) in the record.  The distinction between ISPs and CSPs is not relevant to this Court's consideration of the Motion to Amend.  For ease of reference, this Court will refer to ISPs and CSPs collectively as "Service Providers," and any reference to "ISPs" or "CSPs" in language quoted by this Court in this Memorandum Opinion may be inferred to be a reference to Service Providers generally.

Proposed Case Management Order" (ECF No. 37) submitted by the parties in this matter, which provided: "1. The parties shall move to amend the pleadings or add new parties by no later than 60 days prior to the close of discovery or as extended with regard to third-party practice as provided for in Dkt. 24." Joint Proposed Case Management Order ¶ 1, ECF No. 37. While this case has twice been reassigned, each Order reassigning the case provided that "[a]ll previously scheduled deadlines and proceedings shall remain in effect unless otherwise ordered by the Court." Order, ECF No. 76; Order, ECF No. 136. The docket in this action consists of nearly 300 docket entries. The Court's review of the same indicates that the deadline for motions to amend the pleadings has not been adjusted by court order at any point. Accordingly, this deadline remains in full force and effect.

This case was reassigned from Judge Eddy to the Honorable Patricia L. Dodge on July 9, 2019. Order, ECF No. 76. In a September 30, 2019 Memorandum Opinion (ECF No. 106) granting Plaintiffs' Motion for Issuance of Notice Under § 216(b) of the FLSA, Judge Dodge set forth the following comprehensive factual background for this case:

### A.    FedEx Operations and Business Model

FedEx, a Delaware Corporation with its principal place of business in Coraopolis, Pennsylvania, operates a nationwide package pickup and delivery business. (ECF No. 1 ¶¶ 4, 7). FedEx contracts with thousands of small businesses whose employees carry out the physical pickup and delivery of packages. (ECF No. 29 at 1). Since long before 2014, FedEx has contracted only with incorporated businesses for delivery services, and does not employ any drivers for such services. (ECF No. 29-2 ¶ 10). FedEx's Form 10-K for the fiscal year ending May 31, 2016 "10K") reflects that FedEx "is involved in numerous lawsuits . . . where the classification of its independent contractors is at issue." (ECF No. 11-3 at 3). These lawsuits involve a contractor model which FedEx has not operated since 2011. (*Id.*).

### B.    The ISP Model

In 2010, FedEx began transitioning into a new negotiated agreement under which FedEx's contractors are known as Independent Service Providers ("ISPs").

(ECF No. 29 at 1).  According to its 10-K, FedEx expects transition to the ISP model to be completed nationwide by 2020.  (ECF No. 11-3 at 3).  Under this model, FedEx contracts with ISPs, i.e., independent corporations with vehicles, drivers, and other employed personnel, that provide pickup and delivery services for FedEx.  (ECF No. 29-2 ¶¶ 4, 5).  According to FedEx, the ISPs:

> 1)   Ensure that all of their drivers are treated as employees of the ISP (*id.* ¶ 14);
>
> 2)   Agree to comply with all federal, state, and local employment laws (*id.*);
>
> 3)   Retain "sole and complete discretion in the staffing, selection, hiring, training, supervision, assignment, hours and days worked, discipline, compensation, benefits, and all other terms and conditions of employment" of their employees. (*Id.* ¶ 15).

### C.   *Plaintiffs' Allegations*

According to the Complaint, Plaintiff Sullivan-Blake is a resident of Texas and worked as a delivery driver for FedEx through an ISP from approximately November 2015 through October 2018.  (ECF No. 1 ¶ 3).  Plaintiff Claiborne resides in North Carolina and has worked as a delivery driver for FedEx through ISPs since approximately 2011.  (*Id.* ¶ 4).  Both Plaintiffs allege that they were eligible for overtime compensation under the FLSA but did not receive it.  (*Id.* ¶¶ 3, 4).

Plaintiffs have included their affidavits in support of the Motion.  In her affidavit, Plaintiff Sullivan-Blake avers that she has worked full-time as a delivery driver out of three different FedEx terminals, all located in Texas, primarily using a van that was under 10,000 pounds.  (ECF No. 11-1 ¶¶ 3-5).  When she first started working for FedEx in November of 2015, FedEx paid her by the hour and she received overtime when she worked over forty hours a week (*Id.* ¶ 7).  At the time, she was told by a FedEx manager that she was being paid by FedEx and that ISPs do not pay drivers by the hour.  (*Id.* ¶ 9).  Starting sometime in January of 2016, however, FedEx required her to be paid by an ISP.  (*Id.* ¶ 7).  Plaintiff Sullivan-Blake claims that in order to keep her job she was required to be paid through an ISP that compensated her at a flat daily rate regardless of how many hours she worked, even though she frequently worked more than forty hours a week.  (*Id.*).  She also asserts that after she started to be paid by an ISP for her FedEx delivery work, she continued reporting to work each morning and delivering packages for FedEx following the same mandatory delivery procedures established by FedEx and that nothing about her job changed.  (*Id.* ¶ 13).

Plaintiff Claiborne's affidavit reflects that he too has worked as a full-time delivery driver out of three different FedEx terminals, one located in Virginia and

4

the other two in North Carolina, using trucks that weighed less than 10,001 pounds. (ECF No. 11-2 ¶¶ 2, 11, 13).  During his work at all three terminals, he has been paid through an ISP.  (*Id.* ¶¶ 2, 14).  Plaintiff Claiborne alleges that he has never been paid any overtime even though he has regularly worked more than 40 hours each week during his employment.  (*Id.* ¶ 17).

Based on their personal observations, Plaintiffs aver that all of the delivery drivers who worked alongside them were required to work under various ISPs. (ECF Nos. 11-1 ¶ 8; 11-2 ¶ 6, 18).  According to their affidavits, all of the delivery drivers to whom Plaintiffs spoke told them that they do not get paid overtime for their work.  (ECF Nos. 11-1 ¶ 11, 12, 26; 11-2 ¶ 19).  Plaintiffs also allege that despite working for different ISPs, delivery drivers, including themselves, wore the same FedEx uniform, drove delivery vehicles with FedEx logos, and used special FedEx scanners for tracking packages.  (ECF Nos. 11-1 ¶¶ 15, 16, 20; 11-2 ¶¶ 7, 8).  In her affidavit, Plaintiff Sullivan-Blake notes that each morning when she reported to work, package handlers employed by FedEx had already separated the packages that each delivery driver was assigned to deliver that day.  (ECF Nos. 11-1 ¶ 18).  If a package assigned to a delivery driver was missing, that driver would have to wait for a FedEx manager to either track the missing package, or give permission to leave without the missing package.  (*Id.* ¶¶ 20, 21).

Plaintiffs assert that customer comments or complaints about their work were directed to FedEx, as opposed to their ISPs. (ECF Nos. 11-1 ¶ 24; 11-2 ¶ 10). Plaintiffs' affidavits also reflect that during their time as drivers, they never delivered packages for another company as they did not have time to do so.  (ECF Nos. 11-1 ¶ 17; 11-2 ¶ 16).  In any event, they could not carry packages for anyone other than FedEx while on their FedEx delivery routes.  (ECF No. 11-1 ¶ 17).

Sept. 30, 2019 Mem. Op. 2-4, ECF No. 106 (footnote omitted).

On October 8, 2019, Judge Dodge entered an Order conditionally certifying the following

nationwide (excluding Massachusetts) collective:

All individuals (outside Massachusetts) who worked as a FedEx delivery driver under an independent service provider (ISP) or a contracted service provider (CSP) since November 27, 2015, who operated a vehicle weighing less than 10,001 pounds at any time since November 27, 2015, and were not paid overtime compensation for all hours worked over forty each week.

Order, ECF No. 109.

On January 31, 2020, Judge Dodge entered a Memorandum Opinion (ECF No. 133) and

Order (ECF No. 134) denying FedEx's "Rule 19(a) Motion to Join Pennsylvania Service Providers

as Necessary Parties and Rule 19(b) Motion to Dismiss for Failure to Join Indispensable Parties" (ECF No. 114).  In its Rule 19 Motion, FedEx sought joinder of Pennsylvania Servicer Providers to this action, as well as dismissal of all claims pertaining to opt-in Plaintiffs residing outside of Pennsylvania and Service Providers who employed drivers outside of Pennsylvania.  Jan. 31, 2020 Mem. Op. 1, ECF No. 133.  FedEx argued that Service Providers are necessary and indispensable parties in this case because they employ and pay Plaintiff drivers, set the employment and wage policies for drivers, and have a direct interest in the outcome of the case.  *Id.* at 2.  Judge Dodge rejected this argument, and held that Service Providers are not required parties under Fed. R. Civ. P. 19(a) because: 1) "The Court can accord complete relief among existing parties"; 2) "Service Providers do not have a direct stake in this litigation"; and 3) "[t]he absence of Service Providers would not subject FedEx to inconsistent obligations."  Jan. 31, 2020 Mem. Op. 3-5, ECF No. 133.

This case was subsequently reassigned from Judge Dodge to the undersigned on February 4, 2020.  Order, ECF No. 137.  On May 21, 2020, this Court denied FedEx's Motion to Disqualify, which sought disqualification of Plaintiffs' counsel, Lichten & Liss-Riordan, P.C., on the basis that the firm's representation of both Plaintiffs and a class of Service Providers in *Carrow v. FedEx Ground Package System, Inc.*, No. 16-3026 (D.N.J.) purportedly created a concurrent conflict of interest under Pennsylvania Rule of Professional Conduct 1.7.  Mem. Op. 5, ECF No. 156.  The Court's Order (ECF No. 157) denying FedEx's Motion to Disqualify also approved Plaintiffs' Proposed Notice, Reminder Notice, and Opt-In Form (ECF No. 112) without modification.  Notice was issued on June 16, 2020.  ECF No. 170.

Following an April 2, 2020 Status Conference, the parties reached an agreement respecting written discovery as to FedEx and the initial 57 opt-in Plaintiffs.  *See* ECF No. 151.  This Court then entered a Case Management Order (ECF No. 152) on April 10, 2020 setting forth deadlines

6

for such discovery, and further directing the parties to file a joint status report respecting the status

of discovery by August 14, 2020.  On August 14, 2020, the parties filed their Joint Status Report

(ECF No. 170) pursuant to this Court's April 10, 2020 Order.  The Status Report advised the Court

that: (1) discovery as to the initial 57 opt-in Plaintiffs was proceeding on schedule; (2) due to the

volume of opt-in forms received and logistical issues, the parties would not know the identities of

all opt-ins until September 8, 2020; and (3) that the parties intended to confer regarding the scope

of representative discovery and would submit their positions on the same by October 23, 2020.

ECF No. 170.  The parties sought three extensions of the deadline for their submissions respecting

representative discovery, *see* ECF Nos. 185; 186; 187, and eventually filed such submissions on

December 4, 2020.  Plaintiffs and FedEx each filed a Response (ECF Nos. 193; 194) to the other's

submission on December 18, 2020.  At the parties' request, the Court heard oral argument as to

the scope of representative discovery on January 27, 2021.[3]  FedEx filed an unsolicited

Supplemental Notice (ECF No. 209) on March 5, 2021, and Plaintiffs filed a Response and Request

to Strike (ECF No. 210) FedEx's Supplemental Notice on March 8, 2021.

   Upon notice and request of the parties, the Court scheduled a status conference for February

24, 2021 to discuss issues that had arisen in discovery, specifically respecting discovery requests

that had been served upon the named Plaintiffs and initial opt-in Plaintiffs who had joined before

Notice issued in this matter.  The parties filed a "Joint Summary of Scope and Nature of Discovery

Disputes" (ECF No. 206) on February 22, 2021, and the Court convened the status conference on

February 24, 2021.  The Court directed the parties to confer in an attempt to resolve the issues

---

[3] The Transcript of this oral argument is filed on the docket at ECF No. 203.  It was during this January 27, 2021 oral argument that Plaintiffs first asserted, at least of record, an intention to seek leave to file an amended complaint. *See* Tr. 7:7-14, ECF No. 203 ("I did want to point out to the Court that we have already informed FedEx that plaintiffs are planning to move to amend the complaint now that we know the scope of the case and drivers have opted in from around the country.  We will be moving to amend to add Rule 23 state law claims for a number of states for which the state law mirrors the federal law.  So, in other words, by amending in certain state law claims it is not going to expand really the legal issues in the case.").

discussed during the February 24, 2021 status conference, and to file another joint status report, as well as proposed orders, advising the Court as to the issues upon which the parties agreed.  *See* ECF No. 208.  The parties subsequently submitted three agreed-upon proposed orders of court requiring the production of evidence from the named Plaintiffs and the initial opt-in Plaintiffs who had not yet sufficiently responded to discovery requests, and the Court entered Orders of Court (ECF Nos. 212; 213; 214) consistent with the same on March 10, 2021.  While the parties reached agreement as to orders requiring the production of such evidence, the parties failed to reach agreement as to the impact of any party's failure to produce discovery consistent with the Court's Orders.  *See* ECF No. 211.  Those disagreements are the subject of three discovery Motions filed by FedEx in this matter at ECF Nos. 217, 220, and 222.

While the parties' submissions respecting the scope of representative discovery and FedEx's discovery Motions were pending, the parties filed another "Joint Summary of Scope and Nature of Discovery Disputes" (ECF No. 232) on April 12, 2021, this time advising the Court that the parties could not reach agreement with respect to discovery requests that had been served upon FedEx by Plaintiffs.  The Court did not schedule another status conference at that time, and instead entered an Order granting Plaintiffs leave to file a motion addressing the same by April 27, 2021. ECF No. 234.  Consistent with the Court's Order, Plaintiffs filed their Motion to Compel the Production of Witnesses for Deposition and Documents (ECF No. 248) on April 27, 2021, and the Motion was fully briefed as of May 14, 2021.  The Court is entering a thirty-three-page Memorandum Opinion and a five-page Order of Court addressing each of above-discussed discovery Motions contemporaneously with this Memorandum Opinion.

Plaintiffs filed the Motion to Amend on April 15, 2021.  FedEx filed a Response in Opposition (ECF No. 265) on May 20, 2021.  Plaintiffs filed their Reply (ECF No. 272) on June

8, 2021.  FedEx filed a "Motion Requesting Oral Argument on Plaintiffs' Motion for Leave to File Amended Complaint" (ECF No. 274) on June 9, 2021.  Because the Court finds that nothing set forth in FedEx's Motion Requesting Oral Argument necessitates the scheduling of oral argument or would affect this Court's decision on the Motion to Amend, because the Motion to Amend has been fully briefed, and because oral argument would simply cause further delay in a case whose pace has slowed considerably due to frequent motion practice and requests for oral argument and status conferences, the Court will deny FedEx's Motion Requesting Oral Argument filed at ECF No. 274.

The Court notes that, also presently pending before the Court are three Motions to Intervene filed by Ryan Systems, Inc. (ECF No. 224), TABE Trucking Inc. (ECF No. 266), and Cauble Enterprises, Inc. (ECF No. 283).  Plaintiffs oppose these Motions, and FedEx does not oppose these Motions.  Each of the potential intervenors moves, pursuant to Federal Rule of Civil Procedure 14(a) and 24(b), to intervene in order to request that the Court strike the notices of consent and dismiss with prejudice certain opt-ins.  *See* ECF Nos. 224; 266; 283.  These Motions were filed on April 5, 2021, May 27, 2021, and July 1, 2021, respectively, and shall be addressed in due course.  Also currently pending is a contested Motion for Substitution of Party which has not yet been fully briefed.  While the above, in this Court's estimation, adequately and comprehensively describes most, if not all, of the material motion practice that has taken place to date in this action, the Court notes that the docket in this matter reflects a number of further motions, as well as briefing, involving: requests to supplement the record; requests for oral argument; requests to submit additional briefing; and a Motion for Protective Order to Restrict Plaintiffs' Counsel's Communications with Potential Opt-In Individuals (ECF No. 84) that was ultimately denied as moot.

## II.    Legal Standard

Federal Rule of Civil Procedure 16(b)(4) provides: "Modifying a Schedule.  A schedule may be modified only for good cause and with the judge's consent."  Fed. R. Civ. P. 16(b)(4). With respect to amendments other than those that may occur as a matter of course under Rule 15(a)(1), Rule 15 provides that "a party may amend its pleading only with the opposing party's written consent or the court's leave.  The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2).

The United States Court of Appeals for the Third Circuit has explained that, "when a party moves to amend or add a party after the deadline in a district court's scheduling order has passed, the 'good cause' standard of Rule 16(b)(4) of the Federal Rules of Civil Procedure applies." *Premier Comp Sols., LLC v. UPMC*, 970 F.3d 316, 319 (3d Cir. 2020).  The Third Circuit has further explained that "[a] party must meet this standard before a district court considers whether the party also meets Rule 15(a)'s more liberal standard."  *Premier Comp*, 970 F.3d at 319. "[W]hether 'good cause' exists under Rule 16(b)(4) depends in part on a plaintiff's diligence."  *Id.* (citing *Race Tires Am., Inc. v. Hoosier Racing Tire Corp.*, 614 F.3d 57, 84–85 (3d Cir. 2010); *Eastern Minerals & Chemicals Co. v. Mahan*, 225 F.3d 330, 340 (3d Cir. 2000)); *see also* Fed. R. Civ. P. 16 advisory committee's note to 1983 amendment ("the court may modify the schedule on a showing of good cause if it cannot reasonably be met despite the diligence of the party seeking the extension."); *Chancellor v. Pottsgrove Sch. Dist.*, 501 F. Supp. 2d 695, 701 (E.D. Pa. 2007) ("'Good cause' under Rule 16(b) focuses on the diligence of the party seeking the modification of the scheduling order.").  Courts consider only the conduct of the moving party, and not prejudice to the non-moving party, in determining whether the moving party has shown good cause under Rule 16(b)(4).  *See Chancellor*, 501 F. Supp. 2d at 702. ("However, the Court concludes that

examining the prejudice to the opposing party would shift the inquiry from the conduct of the moving party to the burden on the non-moving party, thus eviscerating the requirement that the moving party show 'good cause.'").

With respect to Rule 15(a), the Supreme Court of the United States has explained:

> Rule 15(a) declares that leave to amend 'shall be freely given when justice so requires'; this mandate is to be heeded.  If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits.  In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be 'freely given.'

*Foman v. Davis*, 371 U.S. 178, 182 (1962) (citation omitted).  Under Rule 15(a), delay alone is insufficient to support a denial of leave to amend.  *Cornell & Co. v. Occupational Safety & Health Rev. Com'n*, 573 F.2d 820, 823 (3d Cir. 1978).  "However, 'at some point, the delay will become "undue," placing an unwarranted burden on the court, or will become "prejudicial," placing an unfair burden on the opposing party.'"  *Cureton v. Nat'l Collegiate Athletic Ass'n*, 252 F.3d 267, 273 (3d Cir. 2001) (quoting *Adams v. Gould Inc.*, 739 F.2d 858, 868 (3d Cir. 1984)).  "Given the liberal standard under Rule 15(a), 'the burden is on the party opposing the amendment to show prejudice, bad faith, undue delay, or futility.'"  *Graham v. Progressive Direct Ins. Co.*, 271 F.R.D. 112, 122 (W.D. Pa. 2010) (quoting *Chancellor*, 501 F. Supp. 2d at 700).

The Third Circuit has explained: "[i]t is well-settled that prejudice to the non-moving party is the touchstone for the denial of an amendment."  *Cornell*, 573 F.2d at 823 (citations omitted); *see also Chancellor*, 501 F. Supp. 2d at 702 ("Under the Rule 15 analysis, the focus is on the prejudice to the party opposing the amendment.").  With respect to prejudice to the non-moving party, courts look to "the hardship to the [non-moving party] if the amendment were permitted[,]"

and specifically consider "whether allowing an amendment would result in additional discovery, cost, and preparation to defend against new facts or new theories." *Cureton*, 252 F.3d at 273. "In the absence of substantial or undue prejudice, denial instead must be based on bad faith or dilatory motives, truly undue or unexplained delay, repeated failures to cure the deficiency by amendments previously allowed, or futility of amendment." *Lorenz v. CSX Corp.*, 1 F.3d 1406, 1414 (3d Cir. 1993) (citing *Heyl & Patterson Int'l, Inc. v. F.D. Rich Housing of the Virgin Islands, Inc.*, 663 F.2d 419, 425 (3d Cir.1981), *cert. denied*, 455 U.S. 1018, 102 S.Ct. 1714, 72 L.Ed.2d 136 (1982)).

## III.    Discussion

Initially, the CMO clearly constitutes a "Scheduling Order" under Fed. R. Civ. P. 16(b). Rule 16(b)(3)(A) provides that "[t]he scheduling order must limit the time to join other parties, amend the pleadings, complete discovery, and file motions." Fed. R. Civ. P. 16(b)(3)(A). "The purpose of limiting the period for amending the pleadings is to assure 'that at some point both the parties and the pleadings will be fixed.'" *Graham v. Progressive Direct Ins. Co.*, 271 F.R.D. 112, 119 (W.D. Pa. 2010) (quoting *O'Connell v. Hyatt Hotels of Puerto Rico,* 357 F.3d 152, 154 (1st Cir.2004)).

The CMO provides: "The parties shall move to amend the pleadings or add new parties no later than 60 days prior to the close of fact/merits discovery." CMO ¶ 1, ECF No. 42. While neither party cites to the CMO, the Court finds that the CMO dictates the deadline for motions to amend the pleadings in this case, and that Plaintiffs' Motion was filed well before that deadline. A review of the language of the CMO reveals that there is simply no question that facts/merits discovery has not yet commenced in this action. *See id.* at ¶ 2, ECF No. 42 (explaining that discovery would proceed in phases, with the first being "collective/class discovery" to commence following a decision on conditional certification, and the second being "fact" discovery, to

commence following a decision on any motion for "class certification.").[4]   Because "collective/class discovery" is in its infancy, especially with Court having entered its Memorandum Opinion of the same date addressing various discovery Motions related to the same, it simply cannot follow that the deadline for motions to amend the pleadings has expired.

Because the Motion to Amend was filed before the deadline for such motions had passed, the Court's review in this matter is governed by the liberal standard for amendment provided by Rule 15(a).  *See Atl. Holdings Ltd. v. Apollo Metals, Ltd.*, No. 5:16-CV-06247, 2018 WL 5816906, at *3 (E.D. Pa. Nov. 7, 2018); *Juul Labs, Inc. v. 4X PODS*, No. CV 18-15444 (KM) (MAH), 2020 WL 2029327, at *2 (D.N.J. Apr. 28, 2020); *AmerisourceBergen Corp. v. Dialysist W., Inc.*, 465 F.3d 946, 952 (9th Cir. 2006).  The parties seem to acknowledge the same, as all briefing on Plaintiffs' Motion to Amend analyzes the issue under the Rule 15 standard.

Initially, while Plaintiffs correctly assert that this "case is still in the early discovery phase[,]" Mot. 1, ECF No. 235, the Court notes that this statement respecting the procedural posture and/or status of discovery in this case does not tell the whole story.  As described in detail above, this case has featured significant motion practice to date, resulting in several Opinions and Orders of Court being entered by the undersigned and Judge Dodge.  The Court is also

---

[4] While the Joint Proposed Case Management Order does not refer to "class certification" or "collective/class discovery," the CMO does contain such references.  The United States Court of Appeals for the Third Circuit has explained:

> Most courts, ours included, have not been methodical in their use of the terms "class action" and "collective action."  The result is that numerous cases about FLSA "collective actions" use the Rule 23 term "class action."  Here, we will quote cases that use the terms interchangeably, and we will refer to members of a "collective action" as part of a "class," but we will indicate where our analysis is limited to collective actions.

*Ruehl v. Viacom, Inc.*, 500 F.3d 375, 379 n.3 (3d Cir. 2007).  Because no party asserts at this time that the CMO provided for deadlines for Rule 23 class certification or discovery, and because no party has, to this Court's knowledge, asserted the same at any point on the record in this litigation, the Court finds that that CMO does not provide deadlines for any future Rule 23 claims, and further finds that the reference to a decision on "any motion for class certification" in Paragraph 4 of the CMO refers to the "motions for certification or decertification," i.e. the final certification stage of an FLSA collective action, which are explicitly referenced in Paragraph 5 of the CMO.

contemporaneously entering a Memorandum Opinion and Order of Court addressing Plaintiffs' and FedEx's various discovery Motions, which involved consideration of approximately thirty (30) materially relevant docket entries, with such docket entries consisting of over 700 pages of motions, briefing, exhibits, status reports, notices, proposed orders, and transcripts.[5]   At this juncture, the docket in this conditionally certified nationwide collective action, which FedEx repeatedly (and presumably accurately) asserts is the largest in history, Br. in Opp'n 1, ECF No. 265, is approaching 300 entries.  Further, three Service Providers have filed Motions to Intervene in this matter, and a contested Motion for Substitution of Party remains pending.  In light of the above, the Court respectfully finds Plaintiffs' statement as to the procedural posture of this case to be an understatement.

Plaintiffs argue that amendment is proper because their request is made in good faith and because amendment will not cause undue delay or prejudice to FedEx because discovery is in its early phases.  Mot. 1, ECF No. 235.  Plaintiffs further assert that the additional state law claims mirror the FLSA claim already pled and do not add any factual allegations to the case, and that "the proposed Rule 23 state law classes cover thousands of drivers who are protected by state overtime laws but who did not opt in to the FLSA action."  *Id.* at 2.  Plaintiffs argue that "judicial efficiency and the remedial purpose of overtime protections favor permitting the filing of this

---

[5] Given this fact, the Court sees no reason that it would grant Plaintiffs' request, to the extent the same constitutes an actual request, in a footnote, that "the Court could simplify discovery by allowing discovery to proceed first on the Rule 23 claims and defer the more voluminous discovery that the parties have been discussing for the FLSA opt-ins." Mot. 6 n.6, ECF No. 235.  Indeed, it is Footnote 6 that comes closest to establishing that Plaintiffs' request to amend may result in significant delay, burden, and prejudice, as both the parties and the Court have expended significant resources in addressing representative discovery, even before the Court's Memorandum Opinion on the topic.  Further, such a request to delay representative discovery would also seemingly directly contradict Plaintiffs' assertion that the FLSA claim and state law claims could proceed on similar discovery and certification trajectories, and thus not cause a significant delay in the adjudication of this matter.  *See id.* at 5 ("[C]ourts routinely decide motions for Rule 23 class certification and FLSA decertification contemporaneously, since they require examination of the same facts and similar legal considerations.").  As the Court finds that Footnote 6 constitutes a mere suggestion of one path forward in this case if the Court had not yet ruled on the scope of representative discovery, and not the only path forward, the Court does not find that Footnote 6 is sufficient to establish undue delay, undue prejudice, or unwarranted burden.

amended complaint, so that these additional plaintiffs may pursue a remedy on behalf of these drivers through Rule 23 classes." *Id.* FedEx asserts that Plaintiffs' Motion to Amend should be denied because: (1) Plaintiffs' delay in bringing their Motion is undue; (2) amendment will result in considerable prejudice to FedEx and burden on the Court; and (3) Plaintiffs' proposed amendment is futile as to "many of the state law claims." Br. in Opp'n 1, ECF No. 265.

"[G]iven the liberal standard under Rule 15(a)," it is FedEx, as the party opposing amendment, that bears the burden of establishing prejudice, bad faith, undue delay, or futility. *Graham*, 271 F.R.D. at 122. Initially, with respect to the issue of undue delay, courts "focus on the movant's reasons for not amending sooner." *Cureton*, 252 F.3d at 273. Clearly, as discussed above, Plaintiffs' Motion to Amend was filed well within the deadline for motions to amend in this matter. Further, the late deadline for motions to amend was, in essence, suggested by the parties in their Joint Proposed Case Management Order filed in anticipation of the Initial Case Management Conference in this matter. FedEx cannot truly assert surprise at the timing of the Motion to Amend where it had a hand in establishing the deadline allowing for a motion to amend to be filed at this stage of the proceedings.

Further, following review of all of the case law submitted by the parties, it is clear that, when faced with similar motions to amend filed at a similar stage of the proceedings, district courts routinely grant relief similar to that requested in Plaintiffs' Motion to Amend. *See Higgins v. Bayada Home Health Care, Inc.*, No. CV 3:16-2382, 2019 WL 6467857, at *5 (M.D. Pa. Dec. 2, 2019) (granting a motion for leave to amend a complaint to add six state law minimum wage claims, as well as six additional named plaintiffs, approximately two years after the original complaint was filed); *Scott v. Chipotle Mexican Grill, Inc.*, 300 F.R.D. 193, 195 (S.D.N.Y. 2014) (granting a motion to amend which sought to convert four opt-in plaintiffs to named plaintiffs and

to add four additional state labor law class action claims); *Fenley v. Wood Grp. Mustang, Inc.*, No. 2:15-CV-00326, 2016 WL 10570260, at *2 (S.D. Ohio Nov. 21, 2016) (granting a plaintiff's motion to add claims under Illinois, Pennsylvania, and California law and to add three representative class members that was filed within a month after the opt-in period had closed); *Charlot v. Ecolab, Inc.*, 97 F. Supp. 3d 40, 44 (E.D.N.Y. 2015) (granting a motion for leave to amend a complaint to add four additional named plaintiffs and their respective individual and representative state law claims); *Ugas v. H & R Block Enterprises*, No. CV09-6510-CAS (SHX), 2010 WL 891303, at *3 (C.D. Cal. Mar. 10, 2010) (granting a motion to file an amended complaint adding a nationwide FLSA claim to a Rule 23 state law case that had recently been removed to federal court even where the defendants argued that the motion should be denied because amendment would make the case a "'hybrid' collection action under FLSA and a California state law wage and hour class action under Fed. R. Civ. P. 23."); *Kumar v. Tech Mahindra (Americas) Inc.*, No. 4:16-CV-00905-JAR, 2018 WL 1157061, at *1 (E.D. Mo. Mar. 5, 2018) (granting a motion for leave to amend which sought to add three named plaintiffs and to advance new claims under the laws of three states, even where the new claims could expand the class by ten times and where the motion was filed two months after opt-in period had closed); *Ruggles v. Wellpoint, Inc.*, 687 F. Supp. 2d 30, 33 (N.D.N.Y. 2009) (granting a motion to amend which sought to add class action claims pursuant to California and Illinois state laws on behalf of several individuals who had opted-in to the lawsuit where the motion was filed approximately 16 months after the original complaint was filed and two months after the opt-in period closed); *Hodapp v. Regions Bank*, No. 4:18CV1389 HEA, 2020 WL 1445717, at *1 (E.D. Mo. Mar. 25, 2020) (granting a motion to amend that sought to add ten opt-in plaintiffs as additional named plaintiffs and to add Rule 23 claims under the wage and hour law and/or common law of each state in which the additional

named plaintiffs worked); *see also Hanna v. S-L Distribution Co.*, LLC, No. 1:19-CV-2143, 2021 WL 51581, at *4 (M.D. Pa. Jan. 6, 2021) ("Indeed, there are many instances in which courts have allowed plaintiffs to amend complaints in FLSA collective actions to include state law claims." (citing *Scott*, 300 F.R.D. at 199; *Higgins*, 2019 WL 6467857, at *1)).

Moreover, in permitting amendment, some of the courts in the above-cited cases also found that the plaintiffs in those actions satisfied Rule 16(b)(4)'s more stringent good cause standard. *See Scott*, 300 F.R.D. at 199 (finding good cause for modification of schedule, holding that a three-month delay after the opt-in period was not sufficient to defeat the plaintiffs' demonstration of good cause where 500 individuals had opted in to the lawsuit, and further explaining that the "FLSA's broad remedial nature and its collective action provision suggest that the act contemplates this very situation, and given the choice between litigating each claim separately or in the aggregate, it favors the latter."); *Higgins*, 2019 WL 6467857, at *3 (finding good cause to amend scheduling order where plaintiff "acted diligently in pursuing discovery and moved for leave to amend within two days of the close of the seventy-five-day opt-in period, during which she discovered these additional claims."); *Fenley*, 2016 WL 10570260, at *3 (finding that the plaintiff showed good cause and that judicial economy warranted amendment, explaining: "[f]rom the start, this case has been a national class and collective action.  As such, plaintiffs from Illinois, Pennsylvania, and California opted into the class.  It would be inefficient to deny amendment and force these plaintiffs to litigate their FLSA claims here and their state-law claims—which have the same factual basis—in their respective home states.  Moreover, the Court finds that the risk of inconsistent judgments across the country supports permitting amendment."); *Kumar*, 2018 WL 1157061, at *2 (finding good cause where plaintiff acted diligently in pursuing amendment).

17

The Court acknowledges that nearly all of the cases relied upon by Plaintiffs, and summarized above, involved amendment where the cases at issue were, from the start, hybrid actions involving both Rule 23 opt-out class action claims and an FLSA opt-in collective action claim, and that amendment was sought in such cases following the FLSA opt-in period so that the plaintiffs could supplement their original complaints with *additional* state law class action claims for opt-ins who had not been a part of the action to that point.  In those cases, however, courts also permitted the addition of multiple classes from multiple states where the cases had previously involved only a single such Rule 23 opt-out class.  The Court notes that, in this matter, FedEx asserts that the *number* of state law claims in the proposed amended complaint will render this case more complex and thus result in a burden on the Court, which FedEx asserts warrants denial. *See* Br. in Opp'n 5, ECF No. 265 ("Plaintiffs' motion here multiplies that complexity by 14.").  In each instance where district courts have permitted the addition of multiple state law claims, such an amendment created a more complex and difficult to manage hybrid action.  Further, the court in *Ugas* permitted amendment to add a nationwide FLSA claim to a Rule 23 state law case that had originally asserted violations of the laws of a single state, and, in doing so, converted a Rule 23 class action case into a hybrid action.  *Ugas*, 2010 WL 891303, at *3.  While the Court acknowledges that this case will become larger and more complex as a result of amendment, the Court is not persuaded, based on the case law cited above, that the same is a sufficient basis for a denial of the Motion to Amend in this matter.

Further, each of the arguments FedEx relies upon in support of its assertion that the Motion to Amend should be denied because of prejudice to FedEx or burden on the Court were squarely addressed and consistently rejected in the case law cited above. *See Higgins*, 2019 WL 6467857, at *4 ("Similarly, Bayada has not demonstrated sufficient prejudice such that the denial of leave

to amend is appropriate here.  Bayada argues that the addition of the six party plaintiffs and the respective state law claims is unduly prejudicial because Bayada was not put on notice of additional state claims.  While the addition of the state law claims is somewhat prejudicial, Bayada has not identified any reason as to why it would be substantially prejudiced by the amendment, particularly where Higgins filed this suit as a collective and class action complaint from the start and alleged that the action arose out of Bayada's 'systematic, company-wide wrongful classification of [Higgins] and other similarly-situated home health Clinicians,' and that '[Bayada]'s core business involves the provision of home health care services in at least 22 states, including Pennsylvania.'" (citation omitted)); *Scott*, 300 F.R.D. at 200 ("Furthermore, Chipotle is not prejudiced because discovery has not yet concluded.  A court is more likely to find an amendment prejudicial if discovery has closed."); *Fenley*, 2016 WL 10570260, at *3 ("As an initial matter, the type discovery that will be at issue if amendment is granted will be no different than the kind of discovery the parties already have been requesting and producing.  Moreover, Plaintiff's counsel has represented that it will proceed with these claims regardless of whether amendment is granted.  Accordingly, Defendant will have to engage in this particular discovery regardless of the outcome of this Motion.  Therefore, the Court finds that the proposed amendment, if granted, would not significantly prejudice Defendant."); *Kumar*, 2018 WL 1157061, at *2 ("First, the new claims largely turn on the same core facts as the claims from the original complaint.  Indeed, collective actions are decided based on representative testimony, so additional plaintiffs are unlikely to require significant additional discovery, despite Defendant's argument to the contrary.  That said, the Court agrees with Defendant that there may be state- or plaintiff-specific issues arising from the amendments, but the Court notes that it has discretion to amend the scheduling order for good cause should the current schedule prove unworkable."); *Ruggles*,

19

687 F. Supp. 2d at 36–37 ("Wellpoint may indeed incur some additional costs defending against Plaintiffs' California and Illinois state-law claims, but those costs should be significantly limited by the common ultimate question that predominates Plaintiffs' claims: whether Wellpoint should have paid Plaintiffs overtime wages. And, despite Defendant's stated preference to incur the costs of defending against the proposed claims in separate state court actions, such a scenario would not achieve overall judicial economy given the common questions of fact and law that need to be resolved. Whether Wellpoint defends against numerous state actions across the nation or one central and collective action within a particular district that addresses the very same issues, Wellpoint, in all probability, will expend the same exact amount of resources."). *See also Flood v. Carlson Restaurants Inc.*, No. 14 Civ. 2740(AT)(GWG), 2016 WL 3221146, at \*3 (S.D.N.Y. June 7, 2016) ("Furthermore, the extent to which differences among the state laws render class treatment inappropriate, as Defendants argue, or will necessitate more creative case management strategies as the case proceeds, are issues best addressed at later junctures, after both parties have had the opportunity to at least commence discovery."); *Deakin v. Magellan Health, Inc.*, No. 1:17-CV-00773-WJ-KK, 2019 WL 5212805, at \*4 (D.N.M. Oct. 16, 2019) ("Surely defending against a hybrid suit is a complicated undertaking, but no more so than other complex class action litigation. Accordingly, the Court finds no specific prejudice to Defendants in allowing amendment.").

The Court further notes that the situations presented in the case law relied upon by FedEx in support of its assertion that district courts routinely deny motions to amend where plaintiffs seek to add, for the first time, Rule 23 class action claims to an existing FLSA collective action are each materially distinguishable from the instant matter. Initially, while Sullivan-Blake was originally a named plaintiff, and Claiborne was an opt-in plaintiff, in *Roy v. FedEx Ground Package System,*

*Inc.*, Case No. 3:17-cv-30116-KAR, that case was limited, via a Memorandum and Order dated November 27, 2018, to only drivers who delivered FedEx packages in Massachusetts.  *Roy v. FedEx Ground Package Sys., Inc.*, No. 3:17-CV-30116-KAR, 2021 WL 1565509, at *1 (D. Mass. Apr. 21, 2021).  The motion seeking amendment in that case is distinguishable in several ways. First, the *Roy* court explained that, "[a]ccording to the First Circuit, '[w]here ... considerable time has elapsed between the filing of the complaint and the motion to amend, the movant has the burden of showing some "valid reason for his neglect and delay.""  *Roy*, 2021 WL 1565509, at *2 (quoting *Grant v. News Grp. Boston, Inc.*, 55 F.3d 1, 6 (1st Cir. 1995)).  While courts in the Third Circuit "focus on the movant's reasons for not amending sooner" in determining undue delay, *Cureton*, 252 F.3d at 273, it is the party opposing amendment that bears the burden of showing undue delay in the Third Circuit.  *Graham*, 271 F.R.D. at 122.

Further, the *Roy* court held that "it was apparent as of November 27, 2018, when the court limited the FLSA collective action to Massachusetts delivery drivers, that [the *Roy*] lawsuit would be an appropriate vehicle for claims brought pursuant to [Massachusetts state law]."  *Roy*, 2021 WL 1565509, at *2; *see also id.* at *3 ("In contrast, here, the identity of potential plaintiffs was established in November 2018 when the court limited the collective to Massachusetts delivery drivers.").  Despite the fact that the *Roy* suit was limited to only Massachusetts drivers, and despite the fact that two of the named plaintiffs in that case delivered packages in Massachusetts, the plaintiffs in *Roy* waited more than two years (January 13, 2021) to move to amend their complaint to include Massachusetts state law overtime claims.  *Id.*  In this conditionally certified nationwide collective action, however, Plaintiffs do not seek amendment to add state law claims that the original named Plaintiffs could have pursued.  Rather, Plaintiffs move to include individuals who opted in to this action *after* the case was filed, and seek to add claims under state laws which could

not have been brought until an individual from that state had opted in.  As such, Plaintiffs "could not actually know the entire scope of potential plaintiffs until notice issued to the nation-wide collective, until those potential plaintiffs opted in, and until the opt-in period finally closed." *Scott*, 300 F.R.D. at 198.

Further, the opt-in period in *Roy* ended approximately fourteen to sixteen months prior to any motion to amend being filed, and the *Roy* court noted that the plaintiffs in that action offered no explanation for such a delay.  *Id*.  In this case, while the opt-in period ended on August 14, 2020, the parties submitted several joint status reports from August 14, 2020 through November 19, 2020 indicating that additional time was required to determine the identities of the approximately 30,000 opt-ins and to properly confer and prepare submissions respecting potential representative discovery of the opt-ins.  *See* ECF Nos. 170; 185; 186; 187.  Plaintiffs first informed the Court of their intention to seek leave to file an amended complaint during the January 27, 2021 oral argument respecting representative discovery, and further represented that they had, by that point, informed FedEx of the same.  *See* Tr. 7:7-14, ECF No. 203.  Plaintiffs further assert that any delay in filing the Motion to Amend can also be explained by time expended conferring with FedEx as to the relief requested in the Motion to Amend, and by delays in ascertaining the identities of the opt-ins due to remote work necessitated by the COVID-19 pandemic.[6]  Reply 2-3; 3 n.2, ECF No. 272.  While the time between the end of the opt-in period and the filing of the Motion to Amend is approximately eight months, the Court finds that Plaintiffs in this case, and unlike in

---

[6] *See Ruggles*, 687 F. Supp. 2d at 34–35 (N.D.N.Y. 2009) ("In addition, Plaintiffs assert that immediately following the close of the opt-in period, they reached out to Defendant regarding their intent to amend the Complaint, and after Wellpoint indicated its unwillingness to consent to such amendments, filed a letter with the Court to initiate motion practice. . . .  Obviously, this contributed to the delay in filing the Motion to Amend." (citation omitted)).

*Roy*, have offered an adequate explanation as to why the Motion to Amend was filed after this delay.

With respect to *Troyer v. T. John E. Prods., Inc.*, No. 1:09-CV-821, 2010 WL 11534383 (W.D. Mich. June 8, 2010), the court's holding in that case took issue with the plaintiffs' failure to include, in the original complaint, the state law class action claim they sought to add by way of amendment. *See Troyer*, 2010 WL 11534383, at * 2 ("Plaintiffs themselves initially framed this case without including the state wage and hour claim, and without invoking either the general diversity or the CAFA diversity jurisdiction of the Court."); *id.* at * 1 ("The case is currently framed as a single-count FLSA claim on which Plaintiffs seek collective action status. The question, then, is whether Plaintiffs should now be permitted to add to the case an overlapping state wage and hour claim that Plaintiffs originally chose not to include."). The Court again notes that the claims that Plaintiffs seek to add in this matter could not have initially been brought in Plaintiffs' original Complaint, as Plaintiffs seek to add claims under state laws which could not have been brought until an individual from that state had opted in.

FedEx also cites to *Westbrook v. Advanced Solids Control*, LLC, No. 2:14-CV-131, 2015 WL 4389044 (S.D. Tex. July 15, 2015), wherein the United States District Court for the Southern District of Texas, Corpus Christi Division held that:

> Allowing the amendment would very likely transform the case midstream from a relatively small and straight forward opt-in FLSA collective action case with 31 plaintiffs to a significantly more complex state law labor opt-out class action lawsuit. This change of course was not anticipated by the parties or the Court at this stage of the litigation.

*Westbrook*, 2015 WL 4389044, at *3. Initially, and obviously, *Westbrook* is materially distinguishable in that the present case is not "a relatively small and straightforward" FLSA action. While the Court has already acknowledged that amendment will result in this case becoming larger

and more complex, the degree of shift in complexity is likely less than that considered by the court in *Westbrook*.  *See Deakin*, 2019 WL 5212805, at \*4 ("Surely defending against a hybrid suit is a complicated undertaking, but no more so than other complex class action litigation.").  Further, and similar to both *Roy* and *Troyer*, the plaintiff in *Westbrook* sought to bring state law class action claims that could have been asserted at the time he filed the original complaint in that case.  *See Westbrook*, 2015 WL 4389044, at \*1-2 (explaining that plaintiff Zach Westbrook, who had originally brought the case, sought amendment of his complaint to add Rule 23 class action claims and to be appointed class representative).  Again, the original named Plaintiffs in this action could not have asserted state law claims under the laws of Arkansas, Connecticut, Hawaii, Illinois, Maine, Maryland, Michigan, Minnesota, New Jersey, Oregon, Pennsylvania, Rhode Island, Vermont, and Wisconsin at the outset of this litigation.

In light of all of the above, the Court is satisfied that Plaintiffs have not unduly delayed in bringing their Motion to Amend, and that any prejudice to FedEx or burden on the Court has simply not been sufficiently established such that denial of the Motion to Amend would be warranted.  Plaintiffs' filing of the Motion to Amend after the close of the opt-in period is consistent with the case law described above,[7] and, as explained above, the Court also finds that Plaintiffs have adequately explained the delay between the close of the opt-in period and the filing of the Motion to Amend.  With respect to FedEx's assertions that the Motion to Amend should be denied due to the need for additional discovery and further motion practice, as well as the complexity of hybrid actions, the Court finds, consistent with the case law discussed above, that

---

[7] *See Scott*, 300 F.R.D. at 198 ("Chipotle next argues that plaintiffs should have filed the motion to amend before the close of the opt-in period.  Holding plaintiffs to this standard makes little sense.  Plaintiffs reasonably awaited the close of the opt-in period to file one additional amended complaint.  Plaintiffs could have filed for leave each time they identified a state law class action claim and class representative, but that practice would simply burden the Court and the parties with redundant, virtually identical motions, when instead efforts could be focused on discovery and the opt-in period.").

these assertions are not sufficient to warrant denial of Plaintiffs' Motion to Amend in this matter, especially where discovery is in its infancy, the new state law claims largely turn on the same facts as the original FLSA claim, and FedEx was on notice, and had a hand in establishing, that a motion to amend the pleadings could be filed at this stage of the proceedings. *See Ruggles*, 687 F. Supp. 2d at 35 ("Courts will further consider whether the opponent was otherwise on notice of the new claim, and whether that claim derives from the same facts set forth in the original pleading.").

Given the relatively light briefing on the futility issue, as well as the fact that FedEx seemingly concedes that some of the state law claims are not, at this juncture, futile, the Court rejects FedEx's assertion that futility is an adequate basis on which the Court should deny Plaintiffs' Motion to Amend at this time. Accordingly, FedEx has not carried its burden of establishing prejudice, bad faith, undue delay, or futility, and the Court will grant Plaintiffs' Motion to Amend.

## IV.    Conclusion

For the reasons discussed above, the Court will grant Plaintiffs' Motion for Leave to File Amended Complaint (ECF No. 235). An appropriate Order of Court follows.

BY THE COURT:

s/*Robert J. Colville*_____
Robert J. Colville
United States District Judge

DATED: August 12, 2021

cc/ecf: All counsel of record