**IN THE UNITED STATES DISTRICT COURT**

**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| HORACE CLAIBORNE, SONJIA MONIQUE BOWLIN, TYSHAWN WALKER, DEZRAE KAUHANE, WILLIE SEALS, FREDERICK EPPICH, JEROME SCHOOLFIELD, KRISTINA TRAVIS, JEREMY WINKELS, DANIEL FORRESTER, MARK DAVID GRIFFETH, DOUGLAS RUSSELL, KENNETH BURTON, GERALD GENSOLI, and THOMAS DEPPIESSE, on behalf of themselves and others similarly situated,<br><br>       Plaintiffs,<br><br>v.<br><br>FEDEX GROUND PACKAGE SYSTEM, INC.,<br><br>       Defendant. | CIVIL ACTION<br><br>No. 2:18-cv-01698-RJC |

**FEDEX GROUND'S OPPOSITION TO PLAINTIFFS' MOTION TO DISMISS 450 OPT-IN PLAINTIFFS BASED ON FEDEX GROUND'S SCANNER DATA**

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ...................................................................................... iii

FACTUAL AND PROCEDURAL BACKGROUND................................................... 2

I.    UNTIL NOW, PLAINTIFFS HAVE REFUSED TO WITHDRAW OPT-IN
      PLAINTIFFS BASED ON SCANNER AND VEHICLE-WEIGHT DATA................... 2

      A.    Neither the Conditional Collective Definition Nor the Notice and Opt-In
            Form Conditioned Eligibility on FedEx Ground's Data for Light-Vehicle
            Use ................................................................................................................ 2

      B.    Plaintiffs' Summary Judgment Opposition on Deppiesse's Claims
            Confirms the Need for Individualized Inquiries, No Matter the Collective
            Definition ..................................................................................................... 4

II.   THE PARTIES HAVE ENGAGED IN POST-CONDITIONAL
      CERTIFICATION DISCOVERY FOR THE PAST TWO YEARS................................. 5

      A.    Pre-Notice Opt-In Plaintiff Discovery .................................................... 5

      B.    Representative Opt-In Discovery............................................................. 6

      C.    Plaintiffs' Request for Individualized GVWR Data for All 30,000 Opt-Ins .......... 6

ARGUMENT ............................................................................................................. 7

I.    PLAINTIFFS' MOTION ILLUSTRATES JUST ONE OF NUMEROUS FATAL
      FLAWS THAT REQUIRE DECERTIFICATION OF THEIR COLLECTIVE................. 7

      A.    Plaintiffs' New Proposal Does Nothing to Avoid Individualized Inquiries
            as to Each Opt-In Plaintiff's Eligibility for Overtime Pay ..................... 8

      B.    Redefining the Collective Will Substantially Prejudice FedEx Ground and
            Cause Undue Delay.................................................................................. 12

II.   Plaintiffs Are Not Entitled To Unconditional Dismissal Without Prejudice Under
      Rule 41(a)(2)................................................................................................. 15

      A.    Four of the Five Factors Courts Use to Identify Prejudice Counsel Against
            Dismissal Without Prejudice or Conditions under Rule 41(a)(2)........................ 15

      B.    Conditional Dismissal Is Needed to Alleviate Prejudice to FedEx Ground ........ 17

      C.    Eighty-Five Opt-Ins Should Be Dismissed with Prejudice.................................. 19

            1.    Opt-in Plaintiffs subject to pending motions to dismiss ........................... 19

2.      Three opt-ins admit they drove only heavy vehicles ................................ 19

3.      Pre-Notice Opt-In Plaintiffs should be dismissed with prejudice............. 19

4.      Seventy-Four opt-ins should be required to fully respond to
        pending discovery or otherwise be dismissed with prejudice................... 20

CONCLUSION.................................................................................................................... 20

## **TABLE OF AUTHORITIES**

**CASES**

*Bell v. Citizens Fin. Grp., Inc.*,
   Civ. A. No. 10–0320, 2011 WL 5024409
   (W.D. Pa. Oct. 20, 2011) ........................................................................ 14

*Berry v. Best Transp., Inc.*,
   No. 4:16-CV-00473, 2018 WL 6830097
   (E.D. Mo. Dec. 27, 2018)........................................................................ 9

*Duke v. Harvest Hosps., Inc.*,
   No. 2:20-CV-00865-CCW, 2021 WL 4245089
   (W.D. Pa. Sept. 17, 2021) ....................................................................... 14

*Echevarria v. Nevada*,
   No. 3:14-cv-00320, 2020 WL 1549734
   (D. Nev. Apr. 1, 2020) ............................................................................ 14

*Espenscheid v. DirectSAT USA, LLC*,
   No. 09-cv-625, 2011 WL 2009967
   (W.D. Wis. May 23, 2011)
   *aff'd*, 705 F.3d 770 (7th Cir. 2013)........................................................ 11

*Halle v. W. Penn Allegheny Health Sys. Inc.*,
   842 F.3d 215 (3d Cir. 2016)..................................................................... 12

*Hodzic v. Fedex Package Sys., Inc.*,
   No. CV 15-956, 2016 WL 6248078
   (W.D. Pa. Oct. 26, 2016) ......................................................................... 12

*In re Allstate Ins. Co. FLSA Litig.*,
   No. 2:03-MD-1541, 2008 WL 2783280
   (D. Ariz. July 15, 2008) ........................................................................... 16

*McMaster v. E. Armored Servs., Inc.*,
   No. CIV.A. 11-5100, 2013 WL 1288613
   (D.N.J. Mar. 26, 2013)
   *aff'd*, 780 F.3d 167 (3d Cir. 2015) ......................................................... 11

*Nelson v. FedEx Ground Package Sys., Inc.*,
   No. 1:18-cv-01378, 2019 WL 1437765
   (D. Colo. Feb. 8, 2019) ............................................................................ 9

*Scioto Properties SP-16 LLC v. Twp. of Shaler*,
   No. 2:18-CV-01448-RJC, 2020 WL 871335
   (W.D. Pa. Feb. 21, 2020) ......................................................................... 15

*Scott v. Chipotle Mexican Grill, Inc.*,
No. 12-CV-08333, 2015 WL 13745760
(S.D.N.Y. July 31, 2015) ................................................................................. 13, 14

*Shoop v. JusticeWorks Youthcare, Inc.*,
No. 2:21-CV-732, 2022 WL 1748390
(W.D. Pa. May 31, 2022) ..................................................................................... 11

*Symczyk v. Genesis HealthCare Corp.*,
656 F.3d 189 (3d Cir. 2011)
*rev'd on other grounds*, 569 U.S. 66 (2013) ...................................................... 12

*Ware v. Hosp. of the Univ. of Pa.*,
No. 2:14-CV-00014, 2016 WL 4702117
(E.D. Pa. Sept. 8, 2016) ...................................................................................... 17

*Zamias v. Fifth Third Bank*,
No. 3:17-CV-153, 2018 WL 3079464
(W.D. Pa. June 21, 2018) ......................................................................... 15, 16, 17

*Zavala v. WalMart Stores, Inc.*,
691 F.3d 527 (3d Cir. 2012) .................................................................................. 7

**RULES**

Fed. R. Civ. P. 41 .................................................................................................. 15

The conditional collective in this case is—and has been for over three years—defined to encompass drivers who (a) <u>claim</u> to have driven a "light vehicle," meaning a vehicle with a Gross Vehicle Weight Rating ("GVWR") of 10,000 pounds or less, (b) at <u>any time</u> during the relevant period. Even before conditional certification, Plaintiffs knew their proposed collective included opt-ins who, according to FedEx Ground's records, either never drove a light vehicle or drove a light vehicle less than one percent of the time. And yet, until now, Plaintiffs refused to dismiss those opt-ins, arguing they properly joined this case. As a result, the Parties engaged in "extensive litigation and discovery" (Pls.' Mem. 4) for over two years to determine whether members of <u>that</u> conditionally certified collective are "similarly situated."

Plaintiffs now ask the Court to dismiss 450 opt-in Plaintiffs because, in a sudden about-face, they want to drastically redefine the conditional collective to avoid the GVWR issue, one of many individualized issues Plaintiffs created in defining their proposed collective. Plaintiffs' motion is an admission that the collective—which admittedly includes a substantial number of opt-ins with the same problem as the 450—was fundamentally flawed from the outset and cannot be finally certified. That admission justifies the Court in decertifying the conditional collective sua sponte, or at least ordering separate briefing on the issue.[1] Once decertified, <u>all</u> opt-in Plaintiffs will be dismissed from this case without prejudice (the relief Plaintiffs now request).

Regardless, Plaintiffs' request to dismiss 450 opt-in Plaintiffs without prejudice should be denied. Unconditional dismissal of these opt-ins would prejudice FedEx Ground by wasting its substantial investments in pre-certification discovery and by allowing Plaintiffs to cherry pick opt-ins, thereby skewing the "representative" discovery sample. Rather than simply erasing these opt-

---

[1] FedEx Ground does not waive its right to file a motion to decertify, if the Court decides the Plaintiffs' changed positions and recent cases do not justify decertification now.

ins from this long-running litigation, the Court should (1) order that all discovery related to these

opt-in Plaintiffs remains relevant and available for use (for final certification and otherwise);

(2) order the 450 Plaintiffs to fully respond to all outstanding discovery (if not already complete)

before dismissal; and (3) dismiss certain opt-in Plaintiffs with prejudice for individual reasons.

## FACTUAL AND PROCEDURAL BACKGROUND

### I.     UNTIL NOW, PLAINTIFFS HAVE REFUSED TO WITHDRAW OPT-IN PLAINTIFFS BASED ON SCANNER AND VEHICLE-WEIGHT DATA

#### A.     Neither the Conditional Collective Definition Nor the Notice and Opt-In Form Conditioned Eligibility on FedEx Ground's Data for Light-Vehicle Use

Plaintiffs moved to issue notice to potential collective members in January 2019—over

three years ago—asking the Court to conditionally certify the following collective:

> All individuals (outside Massachusetts) who worked as a FedEx Ground delivery
> driver under an independent service provider (ISP) or a contracted service
> provider (CSP) since August 29, 2014, who operated a vehicle weighing less than
> 10,001 pounds <u>at any time</u> since August 29, 2014, and were not paid overtime
> compensation for all hours worked over forty each week.

(ECF 10 (emphasis added).) Plaintiffs later moved to supplement the record with 57 opt-in forms

("Pre-Notice Opt-In Plaintiffs") and asked the Court to consider those unsworn statements as

evidence supporting conditional certification. (ECF 38, 44-45, 60, 69-71, 75, 79, 81.)

In response, FedEx Ground moved to supplement the record with scanner and GVWR data

showing that some Pre-Notice Opt-In Plaintiffs did <u>not</u> drive light vehicles during the relevant

period, contrary to the opt-in forms they signed. (ECF 55, 72, 88, 89.) Plaintiffs offered several

responses. First, they argued conditional certification was appropriate <u>because</u> the scanner and

available GVWR data could be used to issue notice. (ECF 63 at 2-3.) Second, Plaintiffs admitted

"there may be certain distinctions among drivers" regarding light-vehicle use but argued that

such "individualized inquiries" did not preclude conditional certification because they are "merits"

issues. (*Id.* at 1, 3.) Third, Plaintiffs said the Court could conditionally certify "a narrower class"

than Plaintiffs requested "[i]f the Court found it appropriate to modify the collective definition <u>in light of the data to which FedEx Ground has access</u>." (*Id.* at 3 n.3 (emphasis added).) Plaintiffs, however, never moved to conditionally certify that more narrowly-defined collective.

FedEx Ground also requested an order directing Plaintiffs' counsel to withdraw the consent forms of Pre-Notice Opt-In Plaintiffs who, as shown by scanner and VMS data, did not drive light vehicles. (ECF 84.) Plaintiffs opposed that request. They maintained that counsel had generally confirmed the Pre-Notice Opt-In Plaintiffs met the collective's requirements, and that scanner and VMS data is not "infallible" and individual opt-in Plaintiffs "can rebut these records based on their personal knowledge of . . . the vehicles they drove." (ECF 93 at 12.)

The Court conditionally certified Plaintiffs' collective in September 2019 and ordered that notice be issued. (ECF 107, 109.) FedEx Ground advised the Court and Plaintiffs' counsel that it did not have any information concerning drivers' pay and had only incomplete GVWR information; thus, FedEx Ground could not identify from its own records drivers that drove a light vehicle and were not paid overtime, especially when Plaintiffs' intended to challenge FedEx Ground's GVWR information and to rely instead on the unsupported assertions of opt-in Plaintiffs. (ECF 110 at 2.) As a result, the notice list was about 180,000 drivers nationwide. Given that large number, FedEx Ground's counsel explained to Plaintiffs' counsel it would have been time and cost prohibitive for FedEx Ground to attempt to determine the light-vehicle usage of <u>180,000 drivers</u> before notice issued. (Ex. A, Decl. of Jessica Scott ¶ 5.) Plaintiffs' counsel wholeheartedly agreed to sending notice to all 180,000 drivers, never proposing a solution to the time and cost of attempting to pare down the list before notice issued.[2] (*Id.* ¶ 5.)

---

[2] In *Roy*, the case is limited only to drivers that drove out of Massachusetts stations; resulting in a <u>much</u> smaller population for analysis of the vehicle weight issue <u>for notice purposes only</u> (e.g., the list included those drivers that drove "unknown" vehicles). (Scott Decl. ¶ 6.)

The notice form advised drivers they were "eligible to participate in this case" if they "operated a vehicle under 10,001 pounds gross vehicle weight <u>at any time</u> since November 27, 2015," and were not paid overtime. (ECF 112 (emphasis added); *see also* ECF 157 (court order approving notice form).) The opt-in consent form required them to confirm, under penalty of perjury, that they drove a light vehicle "for all <u>or part</u>" of the relevant period. (ECF 112-3 (emphasis added); ECF 157 (court order approving consent form).)

Accordingly, neither the definition of the collective nor the notice and opt-in form conditioned a driver's eligibility to participate on light-vehicle use shown by any verifiable records or satisfaction of a one percent *de minimis* requirement. To the contrary, Plaintiffs maintained that drivers met the collective definition and were eligible to participate in this case if <u>they merely claimed</u> to have driven a light vehicle <u>at any time</u> during the relevant period.

**B.    Plaintiffs' Summary Judgment Opposition on Deppiesse's Claims Confirms the Need for Individualized Inquiries, No Matter the Collective Definition**

FedEx Ground's data show that named Plaintiff Deppiesse did not drive a light vehicle. FedEx Ground therefore moved for summary judgment on his overtime claims in November 2021. (ECF 317, 318.) At that time, Plaintiffs argued that "plain factual disputes" precluded summary judgment because Deppiesse <u>claimed</u> he drove a light vehicle, and Deppiesse had not had "the opportunity to engage in <u>any discovery</u>" on that issue. (ECF 323 at 2-3 (emphasis in original).) Plaintiffs, however, still argued that FedEx Ground's records were "generally" reliable and could be used to prove that <u>other</u> drivers in the collective were eligible for overtime. (*Id.* at 3 n.2.)

Plaintiffs' insistence that Deppiesse's self-serving claim created a fact dispute precluding summary judgement served only to highlight why collective adjudication of Plaintiffs' claims is manifestly unmanageable and improper. If, as Plaintiffs asserted, Deppiesse could challenge the available GVWR data with individualized discovery and testimony, so too could every other opt-

in Plaintiff. (ECF 330 at 4-5 & n.2.) Thus, by opposing summary judgment on Deppiesse's claims,

Plaintiffs illustrated that determining whether opt-in Plaintiffs are even eligible for overtime pay

under the small vehicle exception requires individualized inquiries for 30,000 opt ins.

At the Court's instruction, the Parties fully re-briefed summary judgment on Deppiesse's

claims after his deposition in February 2022. (*See* ECF 366.) This time, however, Plaintiffs did

not oppose dismissal of Deppiesse's claims, albeit <u>without</u> prejudice. (ECF 385 at 1, 3-4.) Instead,

Plaintiffs reversed their years-old position, announcing for the first time that they agreed with a

*de minimis* requirement and wanted "to limit this litigation to individuals who have potentially

viable FLSA claims <u>according to FedEx's Scanner Data</u>." (*Id.* at 2, 4 (emphasis added).)

## II.   THE PARTIES HAVE ENGAGED IN POST-CONDITIONAL CERTIFICATION DISCOVERY FOR THE PAST TWO YEARS

### A.   Pre-Notice Opt-In Plaintiff Discovery

Per Court order (ECF 152), the Parties began engaging in discovery of the Pre-Notice

Opt-Ins in April 2020. FedEx Ground served written questionnaires to all 57 Pre-Notice Opt-In

Plaintiffs and responded to full sets of requests for production and interrogatories for each,

including the four Pre-Notice Opt-Ins on Plaintiffs' dismissal list[3] that have not withdrawn their

claims or been dismissed with prejudice, as others have. (Scott Decl. ¶ 9.) When FedEx Ground

prepared and served questionnaires on these Plaintiffs in the spring of 2020, FedEx Ground again

provided documentation to Plaintiffs showing these individuals did not drive light vehicles. (*Id.*)

These particular Plaintiffs produced completed questionnaires and documents. (*Id.* ¶ 10.) FedEx

Ground prepared for and took the deposition of one of those opt-ins, Nicholas Papandria, in

February 2022. (*Id.* ¶ 12.) FedEx Ground also scheduled and prepared for Keith Strege's

---

[3] These are Keith Strege, Jr., Nicholas Papandria, Freddie Joe Stovall, Jr., and Lonny Stormoen.

deposition, though he failed to show twice. (*See* ECF 40.)

### B.    Representative Opt-In Discovery

After briefing from the Parties, the Court ordered that FedEx Ground could serve questionnaire discovery on a total of 1,748 opt-in Plaintiffs of its choosing, or about 5.5% of the collective. (ECF 293 at 19; *see also* ECF 322, 324.)

Since then, FedEx Ground has tried to move representative discovery forward, though opt-in Plaintiffs' low response rate has stymied that effort. To start, FedEx Ground engaged in a time-consuming and expensive process to choose the discovery opt-ins. (Scott Decl. ¶ 14.) This sampling was based on all 30,000 opt-ins—Plaintiffs' defined, and Court-adopted, collective. FedEx Ground then pulled scanner and GVWR data for the 1,748 chosen discovery opt-ins to prepare opt-in questionnaires, which include individualized information identifying the Service Providers for whom they worked, on-duty dates, and vehicle weights. (*Id.* ¶ 15.) Further, given the low response rate from discovery opt-ins, FedEx Ground began pulling the same data and preparing questionnaires for an additional 1,000 alternative opt-in Plaintiffs (this process ceased as soon as Plaintiffs indicated their plan to proceed on their new path). (*Id.* ¶ 16.)

FedEx Ground has received completed questionnaires and document productions from only 274 of the representative discovery opt-ins, including 11 opt-ins on Plaintiffs' dismissal list. (*Id.*) The Court has dismissed over 200 opt-ins with prejudice for failing to comply with their discovery obligations (ECF 349-1, 358), and another 140 are subject to a pending motion to dismiss for the same reason (ECF 356). Questionnaire responses from the remaining 1,100+ opt-ins, including 71 on Plaintiffs' dismissal list, are due June 15, 2022. (ECF 308 at 2.)

### C.    Plaintiffs' Request for Individualized GVWR Data for All 30,000 Opt-Ins

In April 2021, Plaintiffs moved to compel production of GVWR data for all 30,000 opt-ins "because [FedEx Ground] contends that many opt-ins did not drive vehicles under 10,001

pounds" and, thus, are not eligible for overtime pay under the small vehicle exception to the FLSA's Motor Carrier Act ("MCA") exemption. (ECF 248 at 2.) According to Plaintiffs, absent production of this individualized data, FedEx Ground "should not be permitted to argue that [the] MCA exemption"—and, presumably, the individualized issues created by the small vehicle exception—"undermines the appropriateness of certification in this action." (ECF 248 at 9 n.6.)

FedEx Ground opposed Plaintiffs' motion because the immense burden of that individualized production was not proportionate to the needs of pre-certification discovery. (ECF 257 at 4-6.) Moreover, FedEx Ground noted (again) that many opt-ins never drove light vehicles, despite swearing to the contrary, and that Plaintiffs sought GVWR information solely to identify and remove those opt-ins from the collective (i.e., to cherry pick for final certification). (*Id.* at 4.)

The Court denied Plaintiffs' request and, instead, ordered production of GVWR information for: (1) any named Plaintiff or opt-in for whom FedEx Ground accessed that information; (2) all opt-ins chosen for representative discovery (already part of the questionnaire process); and (3) for an additional 1,000 opt-ins chosen by Plaintiffs. (ECF 293 at 33.)

## **ARGUMENT**

## I.     PLAINTIFFS' MOTION ILLUSTRATES JUST ONE OF NUMEROUS FATAL FLAWS THAT REQUIRE DECERTIFICATION OF THEIR COLLECTIVE

This collective action can be finally certified only if Plaintiffs prove by a <u>preponderance of the evidence</u> that the members of the collective are "<u>in fact</u> similarly situated." *Zavala v. WalMart Stores, Inc.*, 691 F.3d 527, 534 (3d Cir. 2012) (citation omitted and emphasis added). Plaintiffs must thus show that opt-ins are "subjected to some common employer practice that, if proved, would help demonstrate a violation of the FLSA." *Id.* at 538. Sharing some general status, such as having a common joint employer, is not sufficient when (as here) that (alleged) fact does not streamline proof of an FLSA violation for all members of the collective. *Id.*

Plaintiffs' motion highlights one of several reasons why the conditionally certified collective cannot meet this standard: individualized inquiries are needed to determine whether opt-ins drove light vehicles for more than a *de minimis* amount of time. Trying to avoid this particular issue, Plaintiffs now want to use FedEx Ground's records to create a <u>new</u> collective by individually identifying and then dismissing opt-ins who either do not qualify for overtime pay or, like Deppiesse, would need to rely on their own individual testimony (or other individualized evidence) to prove otherwise.[4] But that proposal does not solve their individualized-issue problem or bring them any closer to proving that members of the collective are, in fact, similarly situated. Instead the opposite is true: Plaintiffs' proposal is an admission that members of the collective are <u>not</u> similarly situated and that their claims are necessarily individualized. Moreover, redefining the collective at this juncture will distort the purported "representative" discovery sample on which the similarly-situated analysis will be based and, thus, cause significant prejudice to FedEx Ground and further undue delay.

A.   **Plaintiffs' New Proposal Does Nothing to Avoid Individualized Inquiries as to Each Opt-In Plaintiff's Eligibility for Overtime Pay**

Individualized discovery and analysis is needed to identify newly "ineligible" opt-ins and, thus, to implement Plaintiffs' new collective definition. Plaintiffs agree. They conducted an individualized, driver-specific analysis of data to identify the 450 opt-ins they now seek to dismiss. (Pls.' Mem. at 6 & Ex. 1.) Identifying other opt-ins deemed ineligible under their new collective definition would require the same individualized discovery and analysis—for all remaining 27,000 opt-ins in the collective. Plaintiffs, that is, want to redefine the collective in a

---

[4] Although Plaintiffs claim they want to dismiss only opt-ins that do not meet the requirements of the collective (Pls.' Mem. 7), the truth is they seek to redefine the collective and dismiss opt-ins for failing to satisfy their new definition (ECF 385 at 2, 4; *see also* Facts § 1.A).

way that requires the very individualized inquiries they seek to minimize (because they cannot outright avoid them). That alone shows decertification of this collective is warranted. (*See* ECF 396 at 2-5.) The Court's initial reaction to Plaintiffs' proposition was directly on point: "what I'm getting at is why is this a collective? What is the point of doing it as a collective if we are going to conduct individual discovery as to every opt-in?" (Apr. 25, 2022 Tr. 13:2-5.)

The small vehicle exception's *de minimis* requirement only magnifies this problem. Though uniformly recognized, that requirement "is more of a standard than a rule, clearly defined in the extremes but much hazier toward the middle." *Berry v. Best Transp., Inc.*, No. 4:16-CV-00473, 2018 WL 6830097, at *7 (E.D. Mo. Dec. 27, 2018). Thus, a driver's use of light vehicles less than one percent of the relevant time is *de minimis* as a matter of law. *Nelson v. FedEx Ground Package Sys., Inc.*, No. 1:18-cv-01378, 2019 WL 1437765, at *3-4 (D. Colo. Feb. 8, 2019). But FedEx Ground does not concede that one percent is the ceiling for *de minimis* use, as Plaintiffs state. To the contrary, there exist sound reasons for applying the *de minimis* exclusion to drivers whose light-vehicle use exceeds that threshold.

Take, for example, Joshua Hilding, who drove light vehicles only 4 of 255 days (1.6%) during the relevant period. (Scott Decl. ¶ 20.) Of those 4 days, only 1 was in a week during which Hilding was "on duty" for more than 40 hours (and, thus, <u>may</u> have worked overtime), which represents only 0.4% of time.[5] (*Id.*) Hilding is not on Plaintiffs' list of 450. Thus, he would remain in this case if it continues even under Plaintiffs' redefined collective, leaving for future litigation the individualized analysis needed to determine if he satisfies the *de minimis* standard under his unique circumstances, whether he actually worked compensable time of over

---

[5] As FedEx Ground has repeatedly made clear, DOT "on-duty" time does not equate to compensable time because it does not record or factor in break time, but, instead, is the <u>upper</u> limit for what a driver <u>could</u> have worked. (*See, e.g.*, ECF 375-2 (Decl. of Don Linder ¶ 13).)

40 hours the single week in which he drove a light vehicle, and whether he was paid overtime.

Other unique circumstances also demand scrutiny. A driver may work a short period for a Service Provider whose fleet is made up solely of heavy vehicles, but drive a light vehicle for one day during the relevant period (e.g., because a fleet vehicle needed repairs, and the Service Provider used a rental truck that weighed 10,000 pounds or less). Given the short duration of his employment during the relevant period, that one day may be slightly more than one percent. Does this driver still meet the *de minimis* requirement? Or, what if he drove only heavy vehicles for this Service Provider for years, mostly before the relevant period for this lawsuit, but drove a light vehicle for one day near the end of his employment, causing that one day to exceed the one-percent threshold but only in the relevant period? How is he different from a driver who works for the same Service Provider for a longer time during the relevant period, such that the one day he drove a light vehicle accounts for less than one percent of that time? (*See e.g.*, Scott Decl. ¶¶ 25-29.) There is no way to know whether and to what extent these circumstances exist without conducting an individualized analysis of each driver's data and employment history.

And even if a one-percent threshold is applied, additional individualized nuances will continue to complicate the analysis. For instance, what if a driver has two distinct stints of employment within the relevant period (e.g., she worked for one Service Provider for a period and then, after a year-long gap, worked for a different Service Provider)? Wouldn't those stints need to be considered separate employments and, thus, analyzed individually to apply the *de minimis* requirement? If the driver drove light vehicles regularly for the second Service Provider, but less than one percent of her time driving for the first, would she retroactively be entitled to overtime pay for the few times she drove light vehicles for the first? (*See, e.g.*, Scott Decl. ¶ 29.) The answer to that question should of course be "no." Again, there is no way to identify and

address these circumstances without closely examining the unique circumstances of <u>each</u> opt-in.

As these variations show, Plaintiffs cannot avoid the individualized issues arising from the *de minimis* requirement by applying a blanket one-percent threshold, as that approach fails to take relevant—and dispositive—facts into consideration. *See McMaster v. E. Armored Servs., Inc.*, No. CIV.A. 11-5100, 2013 WL 1288613, at *4 (D.N.J. Mar. 26, 2013) (recognizing that "'*de minimis*' does not lend itself to a simple quantitative definition" when determining whether small vehicle exemption applies), *aff'd*, 780 F.3d 167 (3d Cir. 2015)*.* The Court should reject Plaintiffs' proposal to use a hatchet to address an issue that requires a surgical knife.

Plaintiffs' motion reflects their own acknowledgement that a large percentage of the collective they defined is <u>not</u> similarly situated and cannot be finally certified. That alone justifies the Court's sua sponte decertification of the collective.[6] At a minimum, however, the Court should order separate briefing on whether Plaintiffs' motion, along with their continued requests for individualized discovery (*see* ECF 386, 402) and recent legal developments,[7] warrant decertification solely on those bases now, before further resources are wasted on certification-related discovery.

---

[6] *See, e.g.*, *Espenscheid v. DirectSAT USA, LLC*, No. 09-cv-625, 2011 WL 2009967 (W.D. Wis. May 23, 2011) (decertifying collective sua sponte when "proof of plaintiffs' claims depends on how individual [plaintiffs] responded to [defendant's] . . . policies and practices" and plaintiffs could not explain "how counsel could extrapolate the findings from a small sub-set of [proposed representative opt-ins] to an absent class"), *aff'd*, 705 F.3d 770 (7th Cir. 2013).

[7] For example, last week Judge Horan denied conditional certification of a much smaller proposed FLSA collective because the plaintiffs could not identify a common FLSA-violating employment practice that applied to potential opt-ins and, thus, could not provide "evidence of a factual nexus between the employees beyond mere speculation." *See Shoop v. JusticeWorks Youthcare, Inc.*, No. 2:21-CV-732, 2022 WL 1748390, at *3 (W.D. Pa. May 31, 2022). Moreover, FedEx Ground has recently defeated class certification in four cases—all premised on the same theory Plaintiffs raise here—in which drivers sought to certify statewide classes under Rule 23. Each court concluded that the individualized issues arising from Service Providers' differing operations precluded class certification. (*See* Scott Decl. ¶¶ 31-35 & Exs. 6-9.)

**B.     Redefining the Collective Will Substantially Prejudice FedEx Ground and Cause Undue Delay**

Pre-certification discovery is an essential component of the Third Circuit's two-step certification process for FLSA collective actions. *See Halle v. W. Penn Allegheny Health Sys. Inc.*, 842 F.3d 215, 224 (3d Cir. 2016). The first step, conditional certification, facilitates notice to potential members of the collective who may choose to opt in. *Id.* at 224. Once opt-in consents are filed, the parties engage in certification-related discovery to assess whether those who opted in are, in fact, similarly situated. *Id.* at 226. Then, at the second stage, the court must make a case-specific factual determination as to whether "the specific plaintiffs who have opted-in" are indeed similarly situated, such that the case may proceed to a collective trial. *Hodzic v. Fedex Package Sys., Inc.*, No. CV 15-956, 2016 WL 6248078, at *5 (W.D. Pa. Oct. 26, 2016) (emphasis added); *see also Symczyk v. Genesis HealthCare Corp.*, 656 F.3d 189, 193 (3d Cir. 2011) (second stage inquiry asks "whether each plaintiff who has opted in to the collective action is in fact similarly situated to the named plaintiff" (emphasis added)), *rev'd on other grounds*, 569 U.S. 66 (2013).

The Parties have now been engaged in stage-two discovery for over two years. All of those discovery efforts, including FedEx Ground's sampling for representative discovery, have been based on the current makeup of the collective. That collective is exceptionally large and diverse, containing a nationwide group of approximately 30,000 drivers who worked for roughly 6,000 different Service Providers, each of which have their own employment practices and methods of operation that may or may not have changed during the seven years at issue. For that reason, the opt-in Plaintiffs here necessarily conflict in terms of their compensation plans, the vehicles they drove, the nature of their routes and schedules, and many other relevant factors. That extensive divergence, coupled with the limited "representative" discovery permitted by the Court, required FedEx Ground to make strategic decisions when selecting opt-ins for discovery

12

so that the sample covered a broad range of the collective's material differences. (Scott Decl. ¶ 14.) *See Scott v. Chipotle Mexican Grill, Inc.*, No. 12-CV-08333, 2015 WL 13745760, at * 5 (S.D.N.Y. July 31, 2015) (recognizing that "it is a reasonable inference to draw that [defendant] chose specific opt-in plaintiffs for strategic reasons).

Fundamentally changing the makeup of the collective at this late hour, as Plaintiffs wish to do, would cause substantial prejudice to FedEx Ground's ongoing discovery efforts. It would change the rules in the middle of the game, after FedEx Ground has already invested extensive resources in discovery based on the current collective that Plaintiffs defined and for which they sought and obtained conditional certification. As a result, FedEx Ground's sampling from the current collective would be distorted, as it was drawn for a collective that would no longer exist.

This legal prejudice cannot be alleviated, and any attempt to do so would cause further prejudice and undue delay of this already years-long case. At minimum, FedEx Ground will be forced to re-sample the opt-in Plaintiffs using the new collective definition. Doing that would first require identification of the opt-ins who satisfy Plaintiffs' new collective definition; otherwise, FedEx Ground would waste resources creating discovery and pulling data for <u>at least</u> dozens of drivers Plaintiffs will later seek to dismiss without prejudice. That process, as the Court recognizes, would require individualized discovery and analysis of each of the remaining 27,000 opt-in Plaintiffs (Apr. 25, 2022 Tr. 12:3-8, 13:8-14:10), and likely take many months, if not well over a year, to complete. Only then could FedEx Ground identify a new sample for discovery, which would require further internal investigation and analysis, drafting and serving new opt-in specific questionnaires, and then waiting on complete responses (an excruciatingly slow process, as this case has shown) before beginning opt-in depositions. This Court refused to permit three Service Providers to permissibly intervene under Rule 24 based solely on the potential for undue

delay. (ECF 359 at 13.) What Plaintiffs propose exponentially increases undue delay above any that would have been caused by permitting Service Providers to intervene.

Restarting stage-two discovery now would also exacerbate prejudice caused by the passage of time. FedEx Ground has already had substantial difficulty obtaining documents from opt-ins, even when they are current drivers with access to their pay and other employment records. As time passes, opt-ins continue to lose or destroy relevant documents. (Scott Decl. ¶ 17.)

Plaintiffs provide no support for what they propose: conducting tens of thousands of opt-in specific inquiries to cherry-pick their collective in an effort to hide—for final certification, at least—just one of the many individualized issues that plague their overtime claims. Nor do they offer support for redefining the collective in a way that itself necessitates those individualized inquiries, particularly given the prejudice to FedEx Ground. The majority of the cases Plaintiffs cite in their motion do not involve a fundamental change to the collective but, rather, isolated dismissal of certain opt-in Plaintiffs.[8] The few cases that do involve some alteration of the collective are not factually analogous, as they did not involve "an exceptionally large and complex nationwide collective action" like this one (Mem. Op. at 18, ECF 293), or redefining the collective in a way that requires thousands of individualized inquiries. *Cf. Duke v. Harvest Hosps., Inc.*, No. 2:20-CV-00865-CCW, 2021 WL 4245089, at *1, 6 (W.D. Pa. Sept. 17, 2021) (dismissing opt-in plaintiffs who worked at certain geographic locations in collective action involving 293 opt-in plaintiffs in which roughly 50% responded to written discovery); *Echevarria v. Nevada*, No. 3:14-cv-00320, 2020 WL 1549734, at *1, 4 (D. Nev. Apr. 1, 2020)

---

[8] *See, e.g.*, *Bell v. Citizens Fin. Grp., Inc.*, Civ. A. No. 10–0320, 2011 WL 5024409, at *1 (W.D. Pa. Oct. 20, 2011) (dismissing single opt-in plaintiff); *Scott v. Chipotle Mexican Grill, Inc.*, 12-CV-08333, 2015 WL 13745760, at *10 (S.D.N.Y. July 31, 2015) (dismissing 66 opt-in plaintiffs for failure to respond to discovery and 11 who chose to withdraw their consent to join).

(dismissing five opt-in plaintiffs who worked only at certain facilities). And neither of those cases addressed the issue FedEx Ground raises—the impact of redefining the collective on the representativeness of a limited sample of discovery opt-ins and the resulting prejudice.

## II.     Plaintiffs Are Not Entitled To Unconditional Dismissal Without Prejudice Under Rule 41(a)(2)

At this stage, Plaintiffs may voluntarily dismiss their claims "only by court order, on terms that the court considers proper." Fed. R. Civ. P. 41(a)(2). That rule necessarily gives courts discretion to "prevent voluntary dismissals that unfairly affect the opposition, and to allow for the imposition of curative conditions." *Scioto Properties SP-16 LLC v. Twp. of Shaler*, No. 2:18-CV-01448-RJC, 2020 WL 871335, at *2 (W.D. Pa. Feb. 21, 2020). In exercising that discretion, "the primary concern . . . is the existence and extent of any prejudice to the defendant." *Id.*

Here, FedEx Ground will suffer prejudice if the Court adopts Plaintiffs' cherry-picking approach and simply erases the 450 opt-in Plaintiffs from this long-running litigation. Instead, the Court should (1) order that all discovery related to these opt-in Plaintiffs remains relevant and available for use by either party (for final certification and otherwise); (2) order the 450 Plaintiffs to fully respond to all outstanding discovery directed to them (if not already complete) before dismissal; and (3) dismiss certain opt-ins with prejudice for the reasons identified below.

### A.     Four of the Five Factors Courts Use to Identify Prejudice Counsel Against Dismissal Without Prejudice or Conditions under Rule 41(a)(2)

Courts in the Third Circuit typically examine five non-exclusive factors when evaluating a request for voluntary dismissal under Rule 41(a)(2). *See, e.g.*, *Zamias v. Fifth Third Bank*, No. 3:17-CV-153, 2018 WL 3079464, at *3 (W.D. Pa. June 21, 2018). Here, four weigh against unconditional dismissal: (1) the extent to which this case has progressed; (2) the effort and expense FedEx Ground has incurred in preparing for trial (or, here, the critical issue of final certification); (3) the pendency of a dispositive motion; and (4) Plaintiffs' undue delay in bringing their motion.

15

First, this is a three-and-a-half-year-old case in which the Parties (and the Court) have invested significant time and expense. As Plaintiffs recognize, this case has been "extensive[ly]" litigated for the three-plus years. (Pls.' Mem. 4.) While a trial date is not set, the Parties have expended substantial resources litigating the critical issue of certification, which must be resolved before the Parties can move on to the merits phase of this case. Those efforts include extensive motion practice on material issues, including conditional certification, numerous discovery disputes over the scope of representative discovery, motions to compel and to dismiss for failure to participate in discovery, and more. (*See, e.g.*, ECF 293 at 1-2 n.1.) The first two factors thus counsel against unconditional dismissal without prejudice. *See Zamias*, 2018 WL 3079464, at *3 (denying motion for dismissal because the case had "progressed substantially and the parties ha[d] expended significant resources litigating" the case).

Second, Plaintiffs' motion is a direct result of FedEx Ground's summary judgment motion against three named Plaintiffs. (Pls.' Mem. 4-5.) While that motion did not address opt-in Plaintiffs' claims, it raises the prospect of an adverse legal ruling on a substantive issue that affects every member of the collective. *See, e.g.*, *In re Allstate Ins. Co. FLSA Litig.*, No. 2:03-MD-1541, 2008 WL 2783280, at *1 (D. Ariz. July 15, 2008) (rejecting motion to dismiss without conditions, noting that granting summary judgment for the employer on an FLSA exemption had "far reaching consequences" and resolved "significant substantive issues" that affected the opt-ins' claims). Further, Plaintiffs' attempt to neutralize this factor by arguing that FedEx Ground's summary judgment motion "effectively demonstrated" that FedEx Ground's records could be used to determine opt-ins' eligibility for overtime is belied by their express refusal to accept that proposition for the past three years. (*Compare* Pls.' Mem. 4, *with* Facts § I.A-B.)

Third, Plaintiffs' motion is far from timely, and their explanation for it rings hollow.

Plaintiffs have known about this problem since 2019. (Facts § I.A.) Plaintiffs had then the same information they claim to rely on now: a detailed declaration from Susan Kernen that addressed maintenance of FedEx Ground's scanner data, the availability and maintenance of GVWR information, and how FedEx Ground analyzed that data to determine overtime eligibility. (*Compare* ECF 72-1 (06/26/19 Kernen Decl.), *with* ECF 375-2, Ex. B (11/03/21 Kernen Decl.), *and* Pls.' Mem. 5 (claiming that the November 2021 Kernen declaration "was important in helping Plaintiffs understand the general reliability of FedEx's Scanner Data").) Though Plaintiffs did not depose Ms. Kernen until recently, that was their decision; they could have, but did not, ask to depose her earlier. Still further, over a year ago, Plaintiffs moved to compel GVWR information for all 30,000 opt-in Plaintiffs—which the Court generally denied—because "FedEx [Ground] has argued that a least some [members] of the collective are exempt" from overtime because they did not drive light vehicles. (ECF 248 at 6.) Plaintiffs do not identify any newly-obtained information that justifies their failure to seek dismissal of these 450 opt-ins sooner. Their unreasonable delay strongly counsels against unconditional dismissal.[9]

### B.     Conditional Dismissal Is Needed to Alleviate Prejudice to FedEx Ground

Plaintiffs' request for unconditional dismissal, if granted, will prejudice FedEx Ground in two significant ways: (1) by wasting the considerable expense and effort the Parties (and the Court) have invested in stage-two discovery of these 450 opt-ins; and (2) by allowing Plaintiffs to self-select which opt-ins will be considered at the second stage of certification, thereby

---

[9] *See Zamias*, 2018 WL 3079464, at *3 (denying plaintiff's Rule 41(a)(2) motion to dismiss, when plaintiff "failed to act promptly and diligently" in pursuing dismissal); *Ware v. Hosp. of the Univ. of Pa.*, No. 2:14-CV-00014, 2016 WL 4702117, at *6 (E.D. Pa. Sept. 8, 2016) (denying motion to dismiss without prejudice when plaintiff failed to explain why it took 12 months to assess the issue, while defendants were engaging in discovery on issues that would have been unnecessary had plaintiff sought dismissal earlier).

distorting the "representative" discovery sample and manipulating the certification process.

FedEx Ground has invested substantial resources in discovery related to the 450 opt-ins. It has analyzed opt-in specific data and prepared written questionnaires for nearly 100 of those opt-ins. Roughly a dozen have fully or partially responded, and responses for the other 71 are due this month. FedEx Ground has already deposed one of them (and prepared to depose another, who failed to appear twice). And, at Plaintiffs' request and pursuant to this Court's order, FedEx Ground pulled, prepared, and produced scanner data and available GVWR information for the remaining group. All of these efforts will go to waste if the Court does not condition dismissal.

Further, unconditional dismissal of the 450 opt-in Plaintiffs at issue will produce a skewed discovery sample that unfairly tilts in favor of final certification. Plaintiffs' motion seeks to dismiss only <u>discovery</u> opt-ins who cannot prove their eligibility for overtime pay by reference to FedEx Ground's records. Plaintiffs do not propose to dismiss non-discovery opt-in Plaintiffs who face the same problem, claiming instead that those opt-ins may be <u>individually</u> identified at some unspecified time <u>after</u> final certification. Thus, dismissing the 450 opt-ins at issue undisputedly leaves a substantial, but unknown, number of opt-in Plaintiffs in the collective who also cannot establish overtime eligibility. As a result, the culled discovery sample would no longer represent the characteristics of the larger collective and would misleadingly present an inaccurate picture of the true universe of opt-in Plaintiffs.

As explained above, decertifying the collective is the only way to directly address the severe underlying defects in Plaintiffs' collective theory. But conditioning dismissal of the 450 opt-ins at issue, as FedEx Ground requests, will at least alleviate some of this prejudice. Those conditions also make practical sense and will help to avoid further discovery delays. Because the collective will admittedly continue to include opt-in Plaintiffs whose overtime eligibility cannot

be determined by reference to FedEx Ground's records, discovery relating to the 450 opt-ins at issue will be highly relevant to whether the remaining opt-ins are similarly situated, and will be necessary for the Court's determination on decertification. Still further, clarifying the ongoing relevance of that discovery will avoid the need to conduct additional discovery to replace what FedEx Ground would otherwise lose through unconditional dismissal of these 450 opt-ins.

C.    **Eighty-Five Opt-Ins Should Be Dismissed with Prejudice**

1.    **Opt-in Plaintiffs subject to pending motions to dismiss**

Four opt-ins should be dismissed with prejudice for non-compliance with the Court's December 7, 2021, discovery order, as stated in FedEx Ground's pending motion to dismiss. (*See* ECF 356, 357.) These are Zachary Day; Chad Noel; Steven Wright; and Marco Zambonino.

Keith Strege should also be dismissed with prejudice for failing to comply with his discovery obligations, as stated in FedEx Ground's motion for sanctions. (*See* ECF 400, 401.)

The Court has already dismissed opt-in William Stewart, with prejudice. (ECF 358.)

2.    **Three opt-ins admit they drove only heavy vehicles**

Opt-In Plaintiffs Jason McCoy, Joseph Amerson, and Freddie Stovall each admitted in their questionnaire responses that FedEx Ground's scanner data, which showed they drove only vehicles with a GVWR of 10,001 pounds or more, was accurate (or, in the case of Stovall, could not be refuted). (Scott Decl. ¶¶ 11, 21-22.) There is no dispute that drivers are ineligible for overtime under the small vehicle exception if they did not drive a light vehicle. (Pls.' Mem. 6.) And Plaintiffs agree that "opt-ins who agree that they do not have a viable overtime claim under the FLSA should be dismissed *with prejudice*." (ECF 385 at 6 n.7.) Thus, these opt-ins should be dismissed with prejudice, as there is no dispute that they are ineligible for overtime pay.

3.    **Pre-Notice Opt-In Plaintiffs should be dismissed with prejudice**

In 2019, FedEx Ground identified in court filings several Pre-Notice Opt-Ins that,

according to its records, did not drive a light vehicle during the relevant period: Keith Strege; Nicholas Papandria; and Lonny Stormoen. (*See* ECF 72, 88, 89.) These opt-ins should be dismissed with prejudice for that reason alone. Papandria should also be dismissed with prejudice because FedEx Ground has already deposed him.

### 4. Seventy-Four opt-ins should be required to fully respond to pending discovery or otherwise be dismissed with prejudice

The Court has already ruled that opt-ins who do not respond to discovery will be dismissed with prejudice. (*See* ECF 321, 358, and 363.) Plaintiffs' dismissal list includes 71 opt-in Plaintiffs who have not fully responded to all outstanding discovery.[10] While these opt-in Plaintiffs' questionnaire responses (and accompanying document production) are not due until June 15, 2022, Plaintiffs' dismissal motion is indication enough that they have no intention to do so. Three opt-in Plaintiffs returned incomplete questionnaire responses or failed to produce documents they said they have or should have.[11] All 74 of these opt-ins should be required to fully respond to discovery as a condition of their dismissal without prejudice or be dismissed with prejudice if they fail to respond. If the latter, FedEx Ground should be entitled to an inference that these individuals were <u>not</u> similarly situated.

## CONCLUSION

For these reasons, Plaintiffs' motion for unconditional dismissal without prejudice should be denied. The Court should sua sponte decertify this collective and dismiss all opt-ins without prejudice, or order further briefing on the issue given Plaintiffs' admissions that the collective, as currently defined, is <u>not</u> substantially similar. Alternatively, FedEx Ground requests any dismissal to be conditioned as described above.

---

[10] These opt-in Plaintiffs are identified pursuant to the legend in Appendix A.

[11] These opt-in Plaintiffs are separately identified in Appendix A.

Dated:  June 6, 2022                    Respectfully submitted,

*s/ Jessica G. Scott*
Jessica G. Scott
Wheeler Trigg O'Donnell LLP
370 Seventeenth Street, Suite 4500
Denver, CO  80202-5647
Telephone:     303.244.1800
Facsimile:     303.244.1879
Email:  scott@wtotrial.com


Joseph P. McHugh
Shanicka L. Kennedy
FedEx Ground Package System, Inc.
1000 FedEx Drive
Moon Township, PA  15108
Telephone:     (412) 859-5917
                (412) 859-5792
Facsimile:     (412) 859-5450
Email:  joseph.mchugh@fedex.com
         shanicka.kennedy@fedex.com

Attorneys for Defendant
FedEx Ground Package System, Inc.

21

## <u>CERTIFICATE OF SERVICE (CM/ECF)</u>

I HEREBY CERTIFY that on June 6, 2022, I electronically filed the foregoing **FEDEX GROUND'S OPPOSITION TO PLAINTIFFS' MOTION TO DISMISS 450 OPT-IN PLAINTIFFS BASED ON FEDEX GROUND'S SCANNER DATA** with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following email addresses:

- **Harold Lichten**
  hlichten@llrlaw.com, courts@llrlaw.com

- **Shannon Liss-Riordan**
  sliss@llrlaw.com, courts@llrlaw.com

- **Michelle Cassorla**
  mcassorla@llrlaw.com

- **Zachary L. Rubin**
  zrubin@llrlaw.com

- **Krysten Leigh Connon**
  kconnon@llrlaw.com

- **Peter Winebrake**
  pwinebrake@winebrakelaw.com

- **R. Andrew Santillo**
  asantillo@winebrakelaw.com

- **Mark J. Gottesfeld**
  mgottesfeld@winebrakelaw.com

- **Michelle L. Tolodziecki**
  tuf22843@temple.edu, mtolodziecki@winebrakelaw.com

- **Brian D. Gonzales**
  BGonzales@ColoradoWageLaw.com

- **Joseph P. McHugh**
  joseph.mchugh@fedex.com, susan.kernen@fedex.com, amy.chambers@fedex.com

- **Shanicka L. Kennedy**
  shanicka.kennedy@fedex.com

- **Jessica Goneau Scott**
  scott@wtotrial.com, umaguing@wtotrial.com

- **Frederick R. Yarger**
  yarger@wtotrial.com, keitlen@wtotrial.com

- **Juan S. Ramirez**
  ramirez@wtotrial.com, miller@wtotrial.com

- **Andrew H Myers**
  myers@wtotrial.com, keitlen@wtotrial.com, halvorsen@wtotrial.com

- **Michele O. Choe**
  choe@wtotrial.com

- **David J. Schaller**
  schaller@wtotrial.com, umaguing@wtotrial.com

- **Natalie R. Colao**
  colao@wtotrial.com

- **Brian Ruocco**
  ruocco@wtotrial.com

- **Thomas C. Dec**
  dec@wtotrial.com

- **Teresa G. Akkara**
  akkara@wtotrial.com

- **Nick A. Nykulak**
  nnykulak@rbslaw.com, kbasta@rbslaw.com

- **Sean S. Kelly**
  skelly@rbslaw.com, kbasta@rbslaw.com

- **John R. Schneider**
  john@johnsonschneider.com, sasha@johnsonschneider.com

*s/ Jessica G. Scott*