IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| HORACE CLAIBORNE, SONJIA MONIQUE BOWLIN, TYSHAWN WALKER, WILLIE SEALS, FREDERICK EPPICH, JEROME SCHOOLFIELD, KRISTINA TRAVIS, JEREMY WINKELS, DANIEL FORRESTER, MARK DAVID GRIFFETH, DOUGLAS RUSSELL, KENNETH BURTON, GERALD GENSOLI, and THOMAS DEPPIESSE, on behalf of themselves and others similarly situated,<br><br>       Plaintiffs,<br><br>  vs.<br><br>FEDEX GROUND PACKAGE SYSTEMS, INC.,<br><br>       Defendant. | )<br>)<br>)<br>)   2:18-cv-01698-RJC<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## MEMORANDUM OPINION

Robert J. Colville, United States District Judge

Before the Court are the following Motions filed by the parties in the above-captioned matter: (1) the "Motion to Dismiss 450 Opt-In Plaintiffs Based on Fedex's Scanner Data" (the "Motion to Dismiss") (ECF No. 397) filed by Plaintiffs; (2) the "Rule 37 Motion for Sanctions Relating to Opt-In Plaintiff, Keith Strege" (the "Motion for Sanctions") (ECF No. 400) filed by Defendant FedEx Ground Package System, Inc. ("FedEx"); (3) Plaintiffs' "Motion to Compel the Production of Documents" (the "Motion to Compel Documents") (ECF No. 402); and (4) Plaintiffs' "Motion to Compel the Production of Certain FedEx Policies" (the "Motion to Compel

Policies") (ECF No. 416).  The present case is a hybrid collective action under the Fair Labor

Standards Act ("FLSA") and Rule 23 class action brought under the laws of certain states by the

named Plaintiffs on behalf of themselves and other similarly situated individuals (collectively,

"Plaintiffs") against FedEx for FedEx's alleged failure to pay requisite overtime compensation to

Plaintiffs.  The Court has jurisdiction in this matter pursuant to 28 U.S.C. § 1331.  The Motions at

issue have been fully briefed and are ripe for disposition.

## I.      Factual Background & Procedural History

As this Court has noted in previous opinions in this case, Plaintiffs assert that they were

employed by FedEx through intermediary employers[1] to perform delivery services on FedEx's

behalf.  First Am. Compl. ¶ 35, ECF No. 297.  Plaintiffs further assert that FedEx has violated the

FLSA by not paying overtime compensation to Plaintiffs for all hours worked over forty each

week.  *Id*.  Because the Court writes primarily for the benefit of the parties and has set forth the

factual background and procedural history of this matter at length in its previous opinions, the

Court foregoes a detailed recitation of the factual background and procedural history in this

Memorandum Opinion.  Where appropriate, the Court will cite to relevant facts or procedural

history in the discussion section of this Memorandum Opinion.

## II.     Legal Standards

### A.  Dismissal Pursuant to Rule 41(a)(2)

With respect to voluntary dismissal where a court order is required, Federal Rule of Civil

Procedure 41(a)(2) provides as follows:

> Except as provided in Rule 41(a)(1), an action may be dismissed at the plaintiff's
> request only by court order, on terms that the court considers proper.  If a defendant

---

[1] These intermediary employers are companies that entered into contracts with FedEx to provide delivery and pickup services on FedEx's behalf and are referred to as Independent Service Providers (ISPs) and Contracted Service Providers (CSPs) in the record.  The distinction between ISPs and CSPs is not relevant to this Court's consideration of the present Motions, and the Court will refer to ISPs and CSPs collectively as "Service Providers."

has pleaded a counterclaim before being served with the plaintiff's motion to dismiss, the action may be dismissed over the defendant's objection only if the counterclaim can remain pending for independent adjudication.  Unless the order states otherwise, a dismissal under this paragraph (2) is without prejudice.

Fed. R. Civ. P. 41(a)(2).  "A motion for voluntary dismissal under Rule 41(a)(2) lies within the sound discretion of the district court." *Dodge-Regupol, Inc. v. RB Rubber Prod., Inc.*, 585 F. Supp. 2d 645, 652 (M.D. Pa. 2008).

### B.  Motions for Sanctions Pursuant to Rule 37

Federal Rule of Civil Procedure 37(b)(2) describes the sanctions that may be imposed for a party's failure to obey a discovery order, and provides:

(2) Sanctions Sought in the District Where the Action Is Pending.

(A) For Not Obeying a Discovery Order. If a party or a party's officer, director, or managing agent--or a witness designated under Rule 30(b)(6) or 31(a)(4)--fails to obey an order to provide or permit discovery, including an order under Rule 26(f), 35, or 37(a), the court where the action is pending may issue further just orders.  They may include the following:

(i) directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims;

(ii) prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence;

(iii) striking pleadings in whole or in part;

(iv) staying further proceedings until the order is obeyed;

(v) dismissing the action or proceeding in whole or in part;

(vi) rendering a default judgment against the disobedient party; or

> (vii) treating as contempt of court the failure to obey any order except an order to submit to a physical or mental examination.

Fed. R. Civ. P. 37(b)(2)(A).  With respect to monetary sanctions, Rule 37(b)(2)(C) provides:

> Payment of Expenses.  Instead of or in addition to the orders above, the court must order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust.

Fed. R. Civ. P. 37(b)(2)(C).

In addition, Federal Rule of Civil Procedure 41(b) provides: "If the plaintiff fails to prosecute or to comply with these rules or a court order, a defendant may move to dismiss the action or any claim against it."  Fed. R. Civ. P. 41(b).

### C.  Motions to Compel

Federal Rule of Civil Procedure 26 provides that:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.  Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1).  Rule 26(b)(2)(C) provides:

> On motion or on its own, the court must limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that:

> > (i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive;

> > (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or

> > (iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1).

Fed. R. Civ. P. 26(b)(2)(C).

After a party "has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action," that party may, "on notice to other parties and all affected persons," move for an order compelling disclosure or discovery.  Fed. R. Civ. P. 37(a)(1).  If a motion to compel is granted, subject to certain exceptions, "the court must, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees."  Fed. R. Civ. P. 37(a)(5)(A).  If the motion is denied, the court may "issue any protective order authorized under Rule 26(c) and must, after giving an opportunity to be heard, require the movant, the attorney filing the motion, or both to pay the party or deponent who opposed the motion its reasonable expenses incurred in opposing the motion, including attorney's fees."  Fed. R. Civ. P. 37(a)(5)(B).  "If the motion is granted in part and denied in part, the court may issue any protective order authorized under Rule 26(c) and may, after giving an opportunity to be heard, apportion the reasonable expenses for the motion."  Fed. R. Civ. P. 37(a)(5)(C).

## III.    Discussion

### A.  Motion to Dismiss

Plaintiffs seek dismissal without prejudice of 450 opt-ins in this case pursuant to Fed. R. Civ. P. 41(a)(2).[2]  Plaintiffs candidly acknowledge that these 450 opt-ins cannot maintain a claim

---

[2] The Court will consider all of the opt-in Plaintiffs discussed in Plaintiffs' Motion to Dismiss except Keith Strege, whose claims will be dismissed with prejudice based upon a failure to comply with discovery orders, as discussed further below.  To the extent that the 450 opt-in Plaintiffs at issue in Plaintiffs' Motion to Dismiss cross over with the 500 opt-in Plaintiffs at issue in FedEx's Motion to Dismiss at ECF No. 356, which seeks dismissal for failure to comply with discovery orders, the parties are directed to confer and may seek any relief they believe might be necessary given the holding in this Memorandum Opinion and the holding in the Memorandum Opinion addressing FedEx's Motion to Dismiss.  Both Memorandum Opinions provide for dismissal with prejudice, and the Court is not inclined to stray from its holding in this Memorandum Opinion that any discovery provided by a dismissed opt-in Plaintiff may be proffered and considered at the final certification/decertification stage.

for unpaid overtime compensation under the FLSA because they did not drive trucks weighing less than 10,000 pounds during the relevant timeframe on a level above de minimis work, and that they thus are not eligible to receive overtime compensation under the Small Vehicle Exception to the Motor Carrier Act Exemption.  Br. in Supp. 6, ECF No. 398.  With respect to the Motor Carrier Act Exemption, the United States Court of Appeals for the Third Circuit has explained:

> Section 7 of the Fair Labor Standards Act provides that employers must pay hourly employees 150% their typical wages on hours they work in a week over 40.  *See* 29 U.S.C. § 207; *Packard v. Pittsburgh Transp. Co.*, 418 F.3d 246, 250 (3d Cir.2005). One exemption to this general rule is Section 13(b)(1) of the Act.  Known as the Motor Carrier Act Exemption, the provision provides that overtime pay is not required for "any employee with respect to whom the Secretary of Transportation has power to establish qualifications and maximum hours of service."  *See* 29 U.S.C. § 213(b)(1); *see also* 49 U.S.C. §§ 31502(b), 13102 (defining scope of Secretary of Transportation's regulatory authority).
>
> Congress elaborated upon the Motor Carrier Act Exemption with the enactment of the Corrections Act of 2008.  Section 306(a) of the Corrections Act provides that "Section 7 of the Fair Labor Standards Act . . . shall apply to a covered employee notwithstanding section 13(b)(1) of that Act."  *See* Corrections Act, § 306(a). Section 306(c) of the Corrections Act defines the term "covered employee."  In short, a "covered employee" is an employee of a motor carrier whose job, "in whole or in part," affects the safe operation of vehicles lighter than 10,000 pounds, except vehicles designed to transport hazardous materials or large numbers of passengers. Corrections Act § 306(c).

*McMaster v. E. Armored Servs., Inc.*, 780 F.3d 167, 169 (3d Cir. 2015) (footnote omitted).

Employees who are subject to the Motor Carrier Act Exemption may be entitled to overtime pay under the Small Vehicle Exception. "There seems to be general consensus [among district courts] that 'in order [for the Small Vehicle Exception to apply], an employee must (1) perform some work that affects the safety of operation of small vehicles, and (2) it must be part of the employee's duties to [do] so, where 'some work' must at least rise above the level of de minimis work . . . ." *Oddo v. Bimbo Bakeries U.S.A., Inc.*, 391 F. Supp. 3d 466, 471 (E.D. Pa.

2019) (quoting *Morgan v. Rig Power, Inc.*, No. 15-073, 2017 WL 11017230, at *15 (W.D. Tex. Sept. 1, 2017)).

While Plaintiffs request dismissal *without prejudice* of the litigants at issue in its Motion to Dismiss, the Court finds that Plaintiffs provide no basis for the same.  Plaintiffs have conceded that the discovery provided by FedEx is true and accurate as to the vehicles driven by the 449 opt-ins at issue in Plaintiffs' Motion to Dismiss, and, in so doing, acknowledge that they cannot, as a matter of law and fact, maintain an FLSA claim against FedEx.  Even if Plaintiffs are correct that each of the five factors[3] they cite support dismissal of their claims without prejudice, the Court cannot disregard Plaintiffs' own admission that the 449 opt-in Plaintiffs at issue in the Motion to Dismiss *cannot* maintain a claim against FedEx.  While Plaintiffs continually reference the possibility that these individuals may maintain individual suits in the future, Plaintiffs also candidly acknowledge:

> As mentioned above, Plaintiffs' counsel have concluded that FedEx's Scanner Data contains objective and reliable GVWR information concerning the GVWR of vehicles driven by opt-in Plaintiffs, and Plaintiffs agree with FedEx's position that opt-ins must have driven a light vehicle during at least 1% of all workdays during the relevant time period to fall within the small vehicle exception.

Br. in Supp. 6, ECF No. 398 (citations omitted).

The Small Vehicle Exception is essential to Plaintiffs' claims in this matter, and the failure of certain opt-in Plaintiffs to qualify for potential overtime compensation under this Exception was the basis for Plaintiffs' lack of opposition to, and this Court's decision to grant, a recent summary judgment motion in this case.  *See* MSJ Mem. Op. at 5 ("The Court need not, and will not, expend

---

[3] *See* Br. in Supp. 8, ECF No. 398 ("Within the Third Circuit, Courts often consider the following factors in deciding whether to grant voluntary dismissal under Rule 41(a)(2): 1) the excessive and duplicative expense of a second litigation; 2) the effort and expense incurred by the defendant in preparing for trial; 3) the extent to which the current suit has progressed; 4) the plaintiff's diligence in bringing the motion to dismiss and explanation thereof; and 5) the pendency of a dispositive motion by the nonmoving party.").

significant resources or time in resolving the MSJ with respect to Russell and Burton, where each has admitted and acknowledged that judgment should be entered against them on the basis that they cannot invoke the Small Vehicle Exception and are thus exempt from receiving overtime compensation.").  Quite simply, Plaintiffs have conceded that the individuals at issue in their Motion to Dismiss cannot maintain a claim against FedEx because they are exempt from the FLSA's overtime requirement.  Further, they do so late in this case, which has been pending since December of 2018.  Moreover, Plaintiffs have moved to dismiss these opt-in Plaintiffs while a summary judgment motion was pending.  To be clear, the opt-in Plaintiffs at issue in the Motion to Dismiss were not the subject of that motion.  However, it bears noting that Plaintiffs' basis for seeking dismissal of these opt-in Plaintiffs, the inapplicability of the Small Vehicle Exception, is identical to the basis for the Court granting FedEx's summary judgment motion.  Plaintiffs were clearly on notice of the likelihood of dispositive motion practice with respect to the individuals it now seeks to dismiss.  *See* Br. in Supp. 12, ECF No. 398 ("The remaining opt-ins are not currently subject to any such similar motion, although it is anticipated that FedEx will continue to file summary judgment motions for any opt-ins that, according to Scanner Data, did not drive light vehicles.  Granting this motion now will save the parties and the Court from incurring unnecessary time and expenses on individuals that are not properly part of the collective.").  In light of the above, the Court believes that dismissal with prejudice of these individuals is warranted.

FedEx also implies that Plaintiffs' request to dismiss these individuals, at this juncture, is a strategical maneuver designed to undermine any attempt at decertification by FedEx.  FedEx argues that Plaintiffs' request to dismiss these individuals shines a light on the individualized inquiries that will be necessary to guide this case to an ultimate resolution, in that discovery will be necessary as to each of the 30,000 opt-in Plaintiffs to determine how often they drove a

lightweight vehicle. FedEx thus opposes unconditional dismissal of these opt-in Plaintiffs, and the Court tends to agree that their existence should not be ignored for purposes of decertification and/or final certification. These individuals will be dismissed with prejudice, and the representative discovery provided to date by these individuals may be proffered, utilized, and referenced, if appropriate, in motion practice moving forward with respect to whether this case should proceed as a collective action.[4] Given that these opt-in Plaintiffs will be dismissed from this action, the Court will not order that they be required to provide any further discovery by way of this Memorandum Opinion. The Court finds that these terms are proper for purposes of Rule 41(a)(2) dismissal in this matter.

The Court declines FedEx's request, by way of a brief in opposition, for a sua sponte decertification of the collective in this matter. The Court will entertain a motion regarding the same when appropriately filed, but would not encourage either party to file a motion regarding final certification or decertification before sufficient discovery has taken place to allow for all relevant arguments to be presented in a single motion. The Court strongly discourages inefficient, successive motion practice. That said, if either party believes the same will greatly streamline resolution of this case, the parties are hereby granted leave to file such a motion.

### B. Motion for Sanctions

FedEx seeks monetary sanctions under Fed. R. Civ. P. 37 against opt-in Plaintiff Keith Strege ("Strege") based upon Strege's failure to adhere to Court orders, and specifically his failure to attend a deposition on two separate occasions. FedEx seeks reasonable fees and costs under Rule 37 for the time and costs associated with discovery as to Strege, as well as his failure to

---

[4] The use of representative discovery at the decertification stage was anticipated in this action. *See* Mem. Op. 18, ECF No. 293 ("Further, the scope of such representative discovery should be reasonable, balancing the burden of such discovery on Plaintiffs and the needs of FedEx, and specifically the amount of discovery FedEx believes it requires to argue against final certification.").

appear for his deposition.  Mot. 1, ECF No. 400.  FedEx requests that Plaintiffs' counsel, rather than Strege, be responsible for at least two-thirds of any fees and costs that are awarded associated with the discovery for Strege, and 100 percent of the fees and costs for FedEx's preparation of the Motion for Sanctions.  FedEx also requests that Strege be dismissed with prejudice from this action, and Plaintiffs do not oppose this request.  Br. in Opp'n 1, ECF No. 404.

As this Court has previously explained, opt-in plaintiffs can be, and have been in this matter, subject to discovery in a collective action, *see Bonds v. GMS Mine Repair & Maint., Inc.*, No. 2:13-CV-1217, 2014 WL 6682475, at *2 (W.D. Pa. Nov. 25, 2014), and can further be subject to dismissal with prejudice for their failure to participate in discovery after being Court-ordered to do so, *Camesi v. Univ. of Pittsburgh Med. Ctr.*, No. CIV.A.09-85J, 2010 WL 2104639, at *11 n.14.  By way of its August 12, 2021 Memorandum Opinion (ECF No. 293), this Court provided the parties with "clear guidance" as to how individuals who failed to comply with Court orders directing them to comply with discovery requests would be viewed by the Court.  Mem. Op. 27, ECF No. 293 (quoting *Camesi*, 2010 WL 2104639, at *11).  The Court explained that opt-ins who failed to comply with such Court orders would be subject to dismissal with prejudice for the reasons articulated in that Memorandum Opinion.  *Id.* at 26.  Strege failed to appear for his deposition in violation of this Court's March 29, 2022 Order, which advised him that his dismissal from this matter was a potential, if not likely consequence of such action.  Moreover, Strege does not oppose dismissal with prejudice.  He will be dismissed from this action with prejudice.[5]

---

[5] FedEx also requests that the Court enter an order providing that Strege is not "similarly situated" to the collective Plaintiffs seek to have finally certified.  Br. in Supp. 2, ECF No. 401.  However, FedEx filed a Motion for Sanctions pursuant to Rule 37, not a motion for summary judgment (as it did with other opt-in Plaintiffs it believed were outside of the collective that had been conditionally certified in this case).  Strege will be dismissed as a result of his failure to comply with a discovery order, as FedEx has requested.  The Court will not make a final determination as to the merits of his claim, as the Court believes the same would not be appropriate in response to FedEx's Motion for Sanctions.

With respect to FedEx's request for monetary sanctions against Strege, and as this Court has already explained, "attorneys' fees and cost[s] are neither appropriate nor likely to be effective in a case involving comparatively low wage employees serving in a representative capacity." *Ludwig v. Speedway LLC*, No. CV 20-0824, 2021 WL 2223833, (E.D. Pa. June 2, 2021). Strege's claims will be dismissed with prejudice based upon his failure to comply with this Court's March 29, 2022 Order, and this is a sufficient sanction against an individual. In this Court's estimation, the addition of attorney's fees and costs on top of dismissal with prejudice would tend to make an award of expenses unjust. The Court cautions that this holding may not be extended to future non-compliant opt-ins should repeated non-compliance become the norm among Plaintiffs chosen for depositions in this case.

"Under Rule 37, an attorney may only be sanctioned for personally violating a discovery order or for advising a client to do so." *Naviant Mktg. Sols., Inc. v. Larry Tucker, Inc.*, 339 F.3d 180, 185 (3d Cir. 2003). Counsel for Plaintiffs canceled Strege's deposition unilaterally, and at the last minute, because Plaintiffs intended to move to dismiss Strege's claims without prejudice. As this Court explained during the April 25, 2022 Status Conference in this matter:

> Regarding the Strege deposition, look, you are all operating under current court orders, not aspirational or hopeful court orders. You all proceed at your own peril. If you shut down a deposition or don't produce, you are subject to any appropriate request and response. That will require a motion as well. You all know what the options are.

Tr. 23:6-12, ECF No. 393. While this statement was made after Plaintiffs' counsel had canceled Strege's deposition, the message rings true. Any attorney who disregards a Court order and unilaterally cancels a deposition compelled by Court order proceeds at their own peril. While Plaintiffs' counsel might have believed that they had good reason to cancel the deposition, specifically that a lengthy deposition would have been a waste of everyone's time, unilateral

cancelation on the eve of the deposition warrants some form of sanction against counsel.  The Court will not award sanctions in the form of all costs associated with discovery as to Strege, as FedEx requests, but rather will award fees and costs associated only with the preparation of the Motion for Sanctions.  FedEx will be directed to confer with Plaintiffs' counsel regarding FedEx's *reasonable* costs and fees associated with the filing of the Motion for Sanctions.  If the parties are unable to reach agreement on the amount of costs and fees, FedEx may file, within 14 days of the Court's Order, its bill of purported reasonable costs and fees.  Plaintiffs may then submit an appropriate response within 10 days.

### C.  Motion to Compel Documents

Plaintiffs' Motion to Compel Documents requests that the Court enter an order compelling FedEx to provide three categories of documents in discovery: (1) documents pertaining to First Advantage, which is purportedly a third-party vendor that FedEx utilizes to screen drivers desiring to work for FedEx and its Service Providers, Mot. 1, ECF No. 402; (2) "driver disqualification documents" for a larger sampling of drivers, *id.* at 1-2; and (3) certain "compliance documents" regarding wage and hour audits for a larger sampling of Service Providers, *id.* at 2.  Plaintiffs assert that each of these categories of documents will prove relevant to the Court's eventual consideration of the issue of whether FedEx was a "joint employer" during the timeframe relevant herein.  *Id.* at 1-2.

The Third Circuit has explained that "the Supreme Court has . . . gone so far as to acknowledge that the FLSA's definition of an employer is 'the broadest definition that has ever been included in any one act.'"  *In re Enter. Rent-A-Car Wage & Hour Emp. Pracs. Litig.*, 683 F.3d 462, 467–68 (3d Cir. 2012) (quoting *United States v. Rosenwasser*, 323 U.S. 360, 363 n. 3,

65 S.Ct. 295, 89 L.Ed. 301 (1945)).  Courts in the Third Circuit utilize the *Enterprise* test in determining whether a joint employer situation exists:

> When faced with a question requiring examination of a potential joint employment relationship under the FLSA, we conclude that courts should consider: 1) the alleged employer's authority to hire and fire the relevant employees; 2) the alleged employer's authority to promulgate work rules and assignments and to set the employees' conditions of employment: compensation, benefits, and work schedules, including the rate and method of payment; 3) the alleged employer's involvement in day-to-day employee supervision, including employee discipline; and 4) the alleged employer's actual control of employee records, such as payroll, insurance, or taxes.  As we have noted, however, this list is not exhaustive, and cannot be "blindly applied" as the sole considerations necessary to determine joint employment.  If a court concludes that other indicia of "significant control" are present to suggest that a given employer was a joint employer of an employee, that determination may be persuasive, when incorporated with the individual factors we have set forth.

*In re Enterprise Rent-A-Car Wage & Hour Employment Practices Litig.*, 683 F.3d 462, 469–70 (3d Cir. 2012) (citation omitted).

With respect to the First Advantage documents, Plaintiffs provide "[a]s explained by a FedEx Station Manager, First Advantage has a process that determines whether drivers are qualified to work for FedEx, using criteria provided by FedEx . . . ."  Mot. 4, ECF No. 402. Plaintiffs seek the following production of purportedly relevant documents:

- all contracts between FedEx and First Advantage concerning the services that First Advantage has provided to FedEx and/or [Service Providers] since November 27, 2015; and

- a sampling of emails to and from six FedEx email addresses that receive emails relating to driver qualifications during four randomly-selected weeks in each calendar year from 2016 through 2021.

*Id*.  FedEx objects to production of the FedEx/First Advantage contracts on relevance and redundancy grounds, and objects to the email sampling requests on the basis of relevance, burden, and overbreadth.

The Court agrees with Plaintiffs that the contracts between FedEx and First Advantage could possibly lead to the discovery of evidence relevant to the question of whether common evidence can be used to prove the *Enterprise* factors, and specifically with respect to FedEx's purported authority to hire.  FedEx's relevance objections are noted, and FedEx can argue that these contracts are irrelevant at the final certification/decertification stage.  The Court will determine the documents' ultimate relevance at the appropriate time, if necessary.  The Motion to Compel Documents will be granted as to Plaintiffs' request for FedEx/First Advantage contracts.

The Court agrees with FedEx that Plaintiffs fail to sufficiently inform the Court as to why the First Advantage emails are sought and how they might ultimately be relevant to the Court's inquiry into whether the collective is similarly situated.  As currently constructed, the request is overbroad and asks FedEx to undertake a burdensome ESI inquiry.  The Motion to Compel Documents will be denied with respect to Plaintiffs' email sampling request.

Turning to the "driver disqualification documents," these documents include: "(i) letters notifying a driver/[Service Provider] that the driver has been disqualified; (ii) Disqualification Event Forms; (iii) Business Discussion Records; and (iv) documents concerning FedEx's RESOLVE process."  Mot. 5, ECF No. 402.  Plaintiffs explain that, once a driver has been disqualified by FedEx, the driver is prohibited from driving for FedEx anywhere throughout the nation.  *Id*.  The first set of letters sought by Plaintiffs are purportedly those that are sent to drivers and Service Providers notifying them that FedEx has made a determination that a particular driver has been disqualified from driving for FedEx.  *Id*.  "Disqualification Event Forms are standardized forms that FedEx issues pursuant to FedEx procedure reflecting why a driver's employment is being terminated."  *Id*.  The business discussion records purportedly involve conversations between FedEx and Service Providers respecting the failure of Service Providers to follow FedEx's

policies and procedures, *id.*, and the RESOLVE process is purportedly utilized by FedEx to allow Service Providers to dispute FedEx's disqualification of a driver, *id.* at 6. Plaintiffs argue that these documents are relevant to FedEx's authority to fire drivers, as well as its control over driver supervision (including discipline), drivers' work rules and assignments, drivers' compensation, and employee records. *Id.* at 6. Plaintiffs aver that "[a]lthough Plaintiffs are seeking policy and standardized contracts from FedEx pertaining to its disqualification of drivers," which this Court will address below, "Plaintiffs are also entitled to obtain documents from a sample of drivers demonstrating how FedEx's policies are actually implemented." *Id.* at 7.

Plaintiffs seek to compel FedEx to provide such driver disqualification documents for a larger sampling of opt-ins than has already been provided. Specifically, Plaintiffs seek such discovery from the following individuals:

> (i) any individual who has returned a questionnaire and is not the subject of FedEx's February 14, 2022 motion to dismiss;
>
> (ii) any individual who is the subject of the February 14, 2022 motion to dismiss and is not dismissed by the Court;
>
> (iii) any individual who in the future signs and returns a complete questionnaire; and
>
> (iv) 200 of the 1,000 individuals selected by Plaintiffs' counsel for whom FedEx has gathered GVWR information.

Mot. 7, ECF No. 402. The Court notes that category (ii) is ultimately moot, as the Court has, contemporaneously herewith, granted FedEx's February 14, 2022 Motion to Dismiss, and has dismissed each of the individuals identified in that Motion with prejudice.

FedEx objects to these requests, and asserts that they are "overbroad, disproportionate, impermissible, and seeking information that cannot support Plaintiffs' joint-employment allegations or similarly-situated theory." Br in Opp'n 6, ECF No. 406. FedEx again objects on

relevance grounds as well.  FedEx further asserts that "Plaintiffs have already obtained these documents related to 57 pre-notice opt[-]ins and Plaintiffs call these documents 'standardized letters,' underscoring that Plaintiffs have no 'actual need' for more redundant documents."  *Id*.  FedEx also argues that Plaintiffs seek individualized discovery regarding thousands of opt-in Plaintiffs, and that the same cannot be used to prove that the collective is similarly situated.

As FedEx correctly notes, discovery is limited by proportionality, and representative discovery is the standard by which collective actions proceed at this stage.  That said, the Court acknowledges that the "driver disqualification documents" may lead to the discovery of relevant evidence respecting the joint employer inquiry, and FedEx has already produced such information with respect to 57 pre-notice opt-ins.  While the Court notes FedEx's relevance objection, and the same is preserved, the Court overrules that objection at this juncture.  The Court will compel FedEx to produce "driver disqualification documents," as defined in the Motion to Compel Documents, for 100 individuals selected by Plaintiffs that meet the definition of "(i)" above, i.e. individuals who, at the time of the filing of the Motion to Compel Documents, had participated in discovery, had returned a completed questionnaire, and who were not the subject of FedEx's February 14, 2022 Motion to Dismiss.  Absent a more particularized showing of the necessity for the same, the Court is not inclined, at this time, to order that FedEx be required to produce such documents for "any individual who in the future signs and returns a complete questionnaire."

Finally, Plaintiffs seek to compel certain "compliance documents" regarding FedEx's wage and hour audits for a larger sampling of Service Providers.  These documents include: "(i) Compliance Investigation Reports/Compliance Analyses; (ii) Notices of Compliance Concern; (iii) Notices of Opportunity to Cure; and (iv) Letters, memoranda, and other documents informing [Service Providers] of the termination of their contract."  Mot.. 7-8, ECF No. 402. "Compliance

Investigation Reports/Compliance Analyses are documents reflecting FedEx's wage and hour audits of [Service Providers] wherein FedEx summarizes its investigation into whether [Service Providers] are paying drivers proper overtime compensation and are properly maintaining timekeeping and payroll information." *Id.* at 8. "Notices of Compliance Concern are letters that FedEx sends to [Service Providers] informing them as to the findings of it[s] wage and hour audits." *Id*. "Notices of Opportunity to Cure consists of correspondence that FedEx sends to [Service Providers] informing them that they must remedy by a certain date their failure to pay overtime pay to drivers and/or to maintain proper payroll records." *Id.* at 9. The letters informing Service Providers of termination of their contract set forth the reason for termination. *Id*. Plaintiffs argue that these categories of documents are relevant because they tend to show that FedEx maintained: (1) the authority to fire drivers, (2) supervision over drivers, and (3) control over driver compensation, records, and work rules and assignments. *Id.* at 9-10.

FedEx again objects on relevance grounds, and argues that "[c]ontrary to Plaintiffs' contention, the audits actually show that FedEx Ground does not control, direct, or determine the method by which Service Providers pay drivers." Br. in Opp'n 10, ECF No. 406. Again, the Court finds that the documents sought by Plaintiffs may lead to the discovery of some relevant evidence as to the relationship between FedEx, Service Providers, and drivers that may ultimately be relevant as to whether the Plaintiffs can prove that they are similarly situated and that FedEx is their joint employer. Again, the Court also agrees with FedEx that this discovery should be limited to an extent in the interest of proportionality. The Court will compel FedEx to produce "compliance documents," as defined in the Motion to Compel Documents, pertaining to the Service Providers who paid the 100 individuals selected by Plaintiffs for the "driver disqualification documents." To the extent that FedEx claims that any of these documents is

privileged, FedEx may provide a privilege log identifying the purportedly privileged document and setting forth the basis for its assertion of privilege.

### D.  Motion to Compel Policies

Plaintiffs also request that the Court enter an order compelling FedEx to provide what Plaintiffs characterize as a "large number of additional relevant policies and procedures referenced but not yet produced by FedEx."  Mot. 2, ECF No. 416.  FedEx again objects on the basis of relevance, and further asserts that the documents sought by way of the Motion to Compel Policies are cumulative because "extensive discovery into the nature of the relationship between FedEx Ground and Service Providers has been done."  Br. in Opp'n 8, ECF No. 423.  For reasons consistent with the Court's discussion above, the Court finds that the internal FedEx documents sought by way of the Motion to Compel Policies may lead to the discovery of evidence relevant to the question of whether common evidence can be used to prove the *Enterprise* factors.  FedEx has offered minimal argument as to the burden that would be imposed by being required to produce its own internal policies.  While the information sought may be cumulative to an extent, the Court is inclined to require the production of the internal FedEx documents at this juncture, subject to any privilege objections raised by FedEx, and properly identified and described in a privilege log. Should any legitimate disagreement arise regarding what documents are publicly available, what documents do not exist, and/or what documents have already been produced to date, the parties are directed to first confer in an effort to resolve such disputes without Court involvement.

To the extent that the documents sought by way of the discovery requests at issue in the Motion to Compel Policies exist, are not publicly available, and/or have not already been provided, this Court will enter an order compelling FedEx to provide the same within thirty days of this Court's Order.  To the extent that FedEx claims that any of these documents is privileged, FedEx

may provide a privilege log identifying the purportedly privileged document and setting forth the basis for its assertion of privilege.  The Court will award no fees or expenses associated with either Motion to Compel.

## IV.     Conclusion

For the reasons discussed above, the Court will enter an Order disposing of the Motions at issue in this Memorandum Opinion consistent with the Court's analysis above.  An appropriate Order of Court follows.

BY THE COURT:

s/*Robert J. Colville*
Robert J. Colville
United States District Judge

DATED: September 28, 2022

cc/ecf: All counsel of record