IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| HORACE CLAIBORNE, SONJIA MONIQUE BOWLIN, TYSHAWN WALKER, WILLIE SEALS, FREDERICK EPPICH, JEROME SCHOOLFIELD, KRISTINA TRAVIS, JEREMY WINKELS, DANIEL FORRESTER, MARK DAVID GRIFFETH, DOUGLAS RUSSELL, KENNETH BURTON, GERALD GENSOLI, and THOMAS DEPPIESSE, on behalf of themselves and others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>FEDEX GROUND PACKAGE SYSTEMS, INC.,<br><br>Defendant. | 2:18-cv-01698-RJC |

**MEMORANDUM ORDER**

Robert J. Colville, United States District Judge

      Before the Court are the following Motions filed by the parties in the above-captioned matter: (1) Plaintiffs' Motion to Compel FedEx to Produce the Electronic Compliance Assessment Overview Without Redactions ("Plaintiffs' Motion to Compel") (ECF No. 448); (2) FedEx's Motion to Compel In-Person Depositions for Opt-In Plaintiffs Ashcraft, Antoine, Adams, Banks, Ankeney, Ahmed, and Akers ("FedEx's Motion to Compel") (ECF No. 470); and (3) Plaintiffs' Cross-Motion for a Protective Order and/or for an Order Pursuant to Fed. R. Civ. P. 30(b)(4)

1

("Plaintiffs' Cross-Motion") (ECF No. 473).  The present case is a hybrid collective action under the Fair Labor Standards Act ("FLSA") and Rule 23 class action brought under the laws of certain states by the named Plaintiffs on behalf of themselves and other similarly situated individuals (collectively, "Plaintiffs") against FedEx for FedEx's alleged failure to pay requisite overtime compensation to Plaintiffs.  The Court has jurisdiction in this matter pursuant to 28 U.S.C. § 1331.  The Motions at issue have been fully briefed and are ripe for disposition.

## I. Factual Background & Procedural History

As this Court has noted in previous opinions in this case, Plaintiffs assert that they were employed by FedEx through intermediary employers[1] to perform delivery services on FedEx's behalf.  First Am. Compl. ¶ 35, ECF No. 297.  Plaintiffs further assert that FedEx has violated the FLSA by not paying overtime compensation to Plaintiffs for all hours worked over forty each week.  *Id*.  Because the Court writes primarily for the benefit of the parties and has set forth the factual background and procedural history of this matter at length in its previous opinions, the Court foregoes a detailed recitation of the factual background and procedural history in this Memorandum Order.

## II. Legal Standard

Federal Rule of Civil Procedure 26 provides that:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.  Information within this scope of discovery need not be admissible in evidence to be discoverable.

---

[1] These intermediary employers are companies that entered into contracts with FedEx to provide delivery and pickup services on FedEx's behalf and are referred to as Independent Service Providers (ISPs) and Contracted Service Providers (CSPs) in the record.  The distinction between ISPs and CSPs is not relevant to this Court's consideration of the present Motions, and the Court will refer to ISPs and CSPs collectively as "Service Providers."

Fed. R. Civ. P. 26(b)(1).  Rule 26(b)(2)(C) provides:

> On motion or on its own, the court must limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that:
>
> (i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive;
>
> (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or
>
> (iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1).

Fed. R. Civ. P. 26(b)(2)(C).  A court may issue a protective order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense.  Fed. R. Civ. P. 26(c)(1).

After a party "has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action," that party may, "on notice to other parties and all affected persons," move for an order compelling disclosure or discovery.  Fed. R. Civ. P. 37(a)(1).  If a motion to compel is granted, subject to certain exceptions, "the court must, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees."  Fed. R. Civ. P. 37(a)(5)(A).  If the motion is denied, the court may "issue any protective order authorized under Rule 26(c) and must, after giving an opportunity to be heard, require the movant, the attorney filing the motion, or both to pay the party or deponent who opposed the motion its reasonable expenses incurred in opposing the motion, including attorney's fees."  Fed. R. Civ. P. 37(a)(5)(B).  "If the motion is granted in part and denied in part, the court may issue any protective order authorized under Rule 26(c) and may, after giving an opportunity to be heard, apportion the reasonable expenses for the motion."  Fed. R. Civ. P. 37(a)(5)(C).

3

### III. Discussion

#### A. Plaintiffs' Motion to Compel (ECF No. 448)

By way of their Motion to Compel, Plaintiffs seek the production of an unredacted copy of a FedEx document titled the "Electronic Compliance Assessment Overview" (the "Overview"). The Court previously ordered the Overview's production, subject to any privilege objections raised by FedEx and identified and described in a privilege log. ECF No. 431 at 18-19. FedEx subsequently produced a redacted copy of the Overview, along with a privilege log, to Plaintiffs. Plaintiffs argue that the Court should overrule FedEx's privilege objections and require FedEx to produce the Overview in unredacted form. The Court has been provided with an unredacted copy of the Overview, and has performed an in-camera review of that document to address FedEx's assertions of privilege.

The Overview speaks to compliance assessments performed by FedEx of their Service Providers. The Introduction to the Overview provides as follows:

> Compliance assessments are one of the ways in which the FedEx Ground Legal Department determines compliance with certain relevant state and federal laws, in addition to specific obligations presented in Section 6 of the Independent Service Provider (ISP) and Transportation Service Provider Agreements. The Legal Compliance Group (LCG) conducts these assessments by reviewing documentation submitted by the Service Providers (SP) and conducting telephonic interviews with Authorized Officers (AO) and other witnesses. After the assessment is completed, a determination is made on the appropriate course of action. Results can range from no action, to a Business Discussion (BD) closing the assessment, to a Notice of Compliance Concern (NCC), to an Opportunity to Cure (OTC), to a recommendation of contract termination review. The assessments can be initiated as part of the LCG's Random Entity Compliance Assessment Program (RECAP), or as the result of a specific allegation or complaint (targeted).

ECF No. 451 at 1. In conducting these assessments, "FedEx gathers, reviews, and analyzes information and confidential tax and employment records from [Service Providers] in order for FedEx to determine, inter alia, whether drivers are being properly paid according to federal and

state wage and hour laws." Mot. 1, ECF No. 448 (citing ECF No. 451 at FXG_SB_356489-500; FXG_SB_356541-46; Bacon Dep, ECF No. 448-2 at 14:12-15:24; 17:19- 19:7; 66:6-14; 67:21-68:3).

Plaintiffs aver that these assessments permit FedEx to delve into the most intimate aspects of its Service Providers' business structures and to review confidential business and employment documents, including, among other things, "quarterly federal and state tax forms, IRS W-2 forms and federal E-Verify confirmations for all employees, quarterly state unemployment insurance/wage reports, detailed payroll and timekeeping records for all employees, and paystubs for all employees." Mot. 2, ECF No. 448 (citing ECF No. 451 at FXG_SB_356463). Under the Overview and pursuant to their agreements with FedEx, Service Providers are subject to certain consequences should FedEx's compliance assessments reveal a failure to adhere to federal and state wage and hour laws, including a requirement that Service Providers submit a plan for future compliance, as well as possible termination of Service Provider Agreements. ECF No. 451 at FXG_SB_356407-13; FXG_SB_356542-46. Plaintiffs assert that the Overview "constitutes common evidence that is highly relevant to whether FedEx is a joint employer because [the Overview] is an indicia of [the] significant control that FedEx exerts over [Service Providers] and is otherwise relevant to several of the non-exhaustive *Enterprise* factors." *Id*.

As noted, FedEx has redacted certain portions of the Overview, arguing that the redacted portions are subject to the attorney-client privilege and the work-product doctrine. FedEx asserts that the Overview was made available only to FedEx's Legal Compliance Group and an outside law firm,[2] that it was not distributed to some larger group of FedEx employees, and that access to

---

[2] The Declaration attached to FedEx's Response also states that the Overview was provided to a small number of unidentified employees at an unidentified accounting firm. ECF No. 453-1 at ¶ 17.

the Overview has always been restricted. Resp. 3, ECF No. 453. FedEx provides that, "[o]ut of the 172 pages produced, only about 20 pages of legal advice, conclusions, and analyses were redacted." *Id*. FedEx further asserts that the redacted portions of the Overview were prepared by outside counsel, in-house counsel, and lawyers in the Legal Compliance Group, and that they contain legal analysis, conclusions, and advice on various issues, including wage and hour laws, that the drafting lawyers expected would remain in confidence, as reflected by the heading above the redacted portions that states: "Privileged & Confidential Prepared at the Request of Counsel in Connection with Litigation."[3] *Id.* at 3-4.

"The attorney-client privilege protects communications between attorneys and clients from compelled disclosure[,]" and "[i]t applies to any communication that satisfies the following elements: it must be '(1) a communication (2) made between privileged persons (3) in confidence (4) for the purpose of obtaining or providing legal assistance for the client.'" *In re Teleglobe Commc'ns Corp.*, 493 F.3d 345, 359 (3d Cir. 2007), *as amended* (Oct. 12, 2007) (quoting Restatement (Third) of the Law Governing Lawyers § 68 (2000)). "'Privileged persons include the client, the attorney(s), and any of their agents that help facilitate attorney-client communications or the legal representation.'" *Id*. The attorney-client privilege "protects only those disclosures necessary to obtain informed legal advice which might not have been made absent the privilege." *In re Domestic Drywall Antitrust Litig.*, No. 13-MD-2437, 2014 WL 5090032, at *2 (E.D. Pa. Oct. 9, 2014) (quoting *Fisher v. United States*, 425 U.S. 391, 403 (1976)). The privilege protects only legal advice, not situations where the lawyer provides non-legal

---

[3] While the Court notes that most of the pages of the Overview, including those that do not feature redactions, contain a heading of "Privileged & Confidential," the Court has been unable to locate the "Prepared at the Request of Counsel in Connection with Litigation" language referenced by FedEx anywhere in the Overview. This fact would not materially impact the Court's determination herein, but the Court notes the same because it further supports the Court's determination.

6

business advice. *Id*. The party asserting the privilege bears the burden of proving that the privilege applies. *Id*.

The work-product doctrine "shelters the mental processes of the attorney, providing a privileged area within which he can analyze and prepare his client's case." *Holmes v. Pension Plan of Bethlehem Steel Corp.*, 213 F.3d 124, 138 (3d Cir. 2000) (quoting *In re Grand Jury (Impounded)*, 138 F.3d 978, 981 (3d Cir. 1998)). Courts in the Third Circuit apply a two-part test in determining whether the work-product doctrine applies: (1) whether litigation could reasonably have been anticipated; and (2) whether the documents were prepared primarily for the purpose of litigation. *Crawford v. Corizon Health, Inc.*, No. CV 17-113, 2018 WL 3361147, at *2 (W.D. Pa. July 10, 2018) (citing *In re Gabapentin Patent Litig.*, 214 F.R.D. 178, 183 (D.N.J. 2003); *Louisiana Mun. Police Employees Ret. Sys. v. Sealed Air Corp.*, 253 F.R.D. 300, 306–07 (D.N.J. 2008)). "Documents created in the ordinary course of business, even if useful in subsequent litigation, are not protected by the work-product doctrine." *Id.* (quoting *United States v. Rockwell Int'l*, 897 F.2d 1255, 1265-66 (3d Cir. 1990)).

Courts faced with similar situations to that presented herein have compelled the production of compliance policies. *See Vilkofsky v. Specialized Loan Servicing, LLC*, No. CV 16-1291, 2018 WL 10215696, at *2 (W.D. Pa. Jan. 10, 2018) ("Finally, the Court rejects Rushmore's contention that the above-mentioned Policy and Procedures, which are essentially employee instructional guides for complying with various federal laws, are privileged attorney-client communications or work-product."); *In re Domestic Drywall*, 2014 WL 5090032, at *4 ("There is no disputing that communications between CertainTeed's lawyers and its executives leading up to the adoption of its compliance policy are privileged. But as the policy at issue in *Sulfuric Acid*, CertainTeed's antitrust compliance policy is more akin to a reference or instructional guide. Although it is based

7

on legal advice, the policy is primarily a business policy."); *In re Avandia Mktg., Sales Pracs. & Prod. Liab. Litig.*, No. 07-MD-01871, 2009 WL 4641707, at *3 (E.D. Pa. Dec. 7, 2009) ("For example, documents prepared by a corporation as part of efforts to ensure compliance with federal regulatory agencies or maintain a positive public image for its products, and not because of possible litigation, are not protected by work-product doctrine."); *Sherwood v. BNSF Ry. Co.*, 325 F.R.D. 652, 661 (D. Idaho 2018) ("A corporation's legal compliance policy that serves as a reference or instructional guide to corporate employees is primarily a 'business' policy rather than a 'legal' policy, even if based on the advice of counsel."); *Logsdon v. BNSF Ry. Co.*, 2017 U.S. Dist. LEXIS 6806, *2 (D. Neb. Jan. 18, 2017) ("General policy statements and instructional guides, the purpose of which is to notify employees of legal requirements, is not specific legal advice. 'No court has yet held that a corporate policy of lawfulness is protected from discovery as privileged.'" (citation omitted)).

FedEx asserts that the redacted "information was prepared to instruct employees on the law and how it applies in a particular industry[,][4] as well as to assist with procedures to avoid potential litigation, including with service providers," and that the redacted information is thus protected under the attorney-client privilege. Resp. 5-6, ECF No. 453; *see also id.* at 7 ("The primary purpose of the legal analyses in the redacted sections of the [Overview] is to advise FedEx Ground employees within the LCG, so that they can make informed legal conclusions that have the potential to impact wage and hour litigation, like this case, as well as anticipated litigation involving service providers."). In this Court's estimation, FedEx's description of the redacted portions of the Overview falls directly in line with the types of compliance documents that were considered by the courts in the cases cited above. *See In re Domestic Drywall*, 2014 WL 5090032,

---

[4] It bears noting that some of the redacted recitations of applicable laws speak to industries entirely unrelated to this litigation, undermining FedEx's argument that the redacted portions speak only to a particular industry.

at *4 ("CertainTeed's policy, by contrast, is general and does not contain any specific advice.  Its purpose is to help insure that its employees do not violate the antitrust laws.  No court has yet held that a corporate policy of lawfulness is protected from discovery as privileged.").  Nearly all of the redacted portions of the Overview provide general legal information apparently designed to assist FedEx employees in monitoring Service Providers' compliance with wage and hour laws.  With the exception of one of the redactions, they do not provide, in any manner, specific legal advice, and for the most part simply set forth various state and federal laws and requirements.

While the Court acknowledges that the Overview was shared with fewer employees than in certain of the cases cited above, and that it featured a heading stating: "Privileged & Confidential,"[5] the Court notes again that the Overview is materially similar to the documents discussed in those cases.  The Overview is, in this Court's estimation, a general compliance document designed to ensure compliance with state and federal laws.  While FedEx asserts that the Overview was created to assist with past, current, and future litigation, the redacted portions contain no specific legal advice for any particular situation or lawsuit, and, contrary to FedEx's assertion, do not even set forth legal analysis, conclusions, or advice.  Rather, they are, for the most part, general and plain recitations of relevant federal and state laws.  Otherwise, the redacted portions of the Voerview include: (1) a redaction of a statement apparently made by the U.S. Department of Labor in a document found at Tab 2 of the Overview, which the Court notes is not marked with the "Privileged & Confidential" heading;[6] (2) an example of a "Compliance

---

[5] The Court again notes that nearly every page of the Overview, including those that are not redacted, includes the same heading.  Some of the redacted portions do not contain such a heading.

[6] The Court sees no reason why a statement of the Department of Labor should be redacted.

Investigation Report" that redacts the identity of a particular service provider;[7] (3) a prior email correspondence between an attorney and a FedEx employee wherein the attorney responds to the employee's request for legal advice associated with a compliance assessment;[8] and (4) a template termination review document that FedEx employees might send to a service provider.[9]

The Declaration attached to FedEx's Response indicates that FedEx conducts random compliance assessments utilizing the Overview "[t]o confirm that independent service providers comply with the terms of the [Service Provider] Agreements." ECF No. 453-1 at ¶ 6; *See also* ECF No. 451 at 1 ("The assessments can be initiated as part of the LCG's Random Entity Compliance Assessment Program (RECAP), or as the result of a specific allegation or complaint (targeted)."). In light of these representations, Plaintiffs' argument that the Declaration tends to indicate that FedEx conducts compliance assessments in the normal course of business in determining whether Service Provides are meeting a wide range of contractual obligations, and that the Overview was not prepared primarily in preparation for litigation, is well-taken. The Court finds that the Overview is also not protected by the work-product doctrine.

In sum, FedEx's objections are sustained as to the redactions found at Tabs 22 and 26 of the Overview, and FedEx need not update its redactions at Tabs 22 and Tab 26. FedEx's objections are otherwise overruled. FedEx shall update its production to remove all other redactions from the

---

[7] The Court hereby sustains FedEx's relevance objection to the redacted identity of the Service Provider in the document at Tab 22 of the Overview, and FedEx need not provide an unredacted copy of the document attached at Tab 22.
    The Court also notes that the document at Tab 22 contains, in unredacted form, a detailed recitation of Colorado wage and hour laws, and thus undermines FedEx's assertion that the other shorter and more general statements of various federal and state laws that FedEx redacted should be protected by the attorney-client privilege.

[8] This email correspondence contains specific legal advice provided by an attorney to a FedEx employee as to a particular situation. The Court hereby sustains FedEx's attorney-client privilege objection to this document, and FedEx need not provide an unredacted copy of the document attached at Tab 26 of the Overview.

[9] This template contains spaces that indicate where the employee should list the Service Provider's name, the date, and the employee's signature. Nothing about this document suggests to the Court that it contains or involves legal analysis, conclusions, or advice.

Overview. Because the Motion will be granted in part and denied in part, the Court will award no fees or expenses associated with Plaintiff's Motion to Compel.

### B. FedEx's Motion to Compel (ECF No. 470) and Plaintiff's Cross-Motion (ECF No. 473)

"A party may, by oral questions, depose any person, including a party, without leave of court except as provided in Rule 30(a)(2)." Fed. R. Civ. P. 30(a)(1). Pursuant to Rule 30(b)(4), "[t]he parties may stipulate -- or the court may on motion order -- that a deposition be taken by telephone or other remote means." Fed. R. Civ. P. 30(b)(4). "[T]he default rule under Federal Rule of Civil Procedure 30 'is that the examining party may set the place for the deposition of another party wherever he or she wishes[.]'" *Filgueiras v. Midland Funding, LLC*, No. 16-3037 (ES) (JAD), 2019 WL 13271077, at *1 (D.N.J. Nov. 14, 2019) (quoting *Campbell v. Sedgwick Detert, Moran & Arnold*, No. 11-642 (ES), 2013 WL 1314429, at *12 (D.N.J. Mar. 28, 2013)). This default rule is subject to the Court's power to grant a protective order under Federal Rule of Civil Procedure 26(c)(1). In determining whether to depart from the default rule, courts have considered whether the party requesting such a departure has set forth an unreasonable hardship or special circumstances warranting the departure. *Gallagher v. Pelletier*, No. CIV. A. 97-4890, 1997 WL 793591, at *1 (E.D. Pa. Dec. 8, 1997).

FedEx has requested that the ten opt-in depositions at issue in its Motion take place in-person, and avers that Plaintiffs have provided availability for in-person depositions for only three of the ten depositions requested by FedEx. Mot. 1, ECF No. 470. FedEx requests that the Court enter an order compelling Plaintiffs to provide in-person deposition dates for the remaining seven opt-ins. Plaintiffs have proposed a compromise whereby five of the opt-in depositions would take place in-person, and five would take place remotely. Resp. 3, ECF No. 473. With respect to burden and cost, Plaintiffs' counsel argues that it would be costly and burdensome for counsel to

travel across the country for the depositions. *Id.* at 8. Plaintiff also requests that the depositions be limited to three hours. *Id.* at 12.

Plaintiffs have not met their burden of establishing that the Court should depart from the default rule that the deposing party sets the location and manner of a deposition. The Court notes that it is clear that FedEx intends to conduct the depositions at issue in the opt-ins' respective cities, *see* Reply 10, ECF No. 474, and that FedEx will pay for the costs of the location of the deposition and food and beverage accommodations, *see* Tr. 11:17-12:1, ECF No. 469. The imposition on the deponents themselves is thus quite limited. Further, while the Court is not unsympathetic to Plaintiffs' counsels' desire to lower their litigation and travel expenses, the Court does not find the same to constitute an unreasonable hardship or special circumstance justifying a departure from the default procedure.

While Plaintiffs do advance specific argument as to inconvenience that may be experienced by Mr. Ashcraft, and only Mr. Ashcraft, FedEx has offered reasonable accommodations with respect to Mr. Ashcraft's schedule. In short, Plaintiffs have come up well short of establishing an unreasonable hardship or special circumstances, and the Court will grant FedEx's Motion to Compel and will deny Plaintiffs' Cross-Motion. The Court will not limit the depositions to three hours, as Plaintiffs fail to offer substantive support for that request. Given the impending holiday season, the Court will allow for 60 days for the depositions to take place. In light of the fact that Rule 30 allows for remote depositions in certain circumstances, the Court will not require Plaintiffs to pay the costs associated with the filing of FedEx's Motion to Compel.

### IV.    Conclusion and Order

For the reasons discussed above, it is hereby ORDERED as follows:

1) Plaintiffs' Motion to Compel (ECF No. 448) is granted in part and denied in part. FedEx need not update its redactions at Tabs 22 and Tab 26 of the Overview. FedEx shall update its production to remove all other redactions from the Overview

2) FedEx's Motion to Compel (ECF No. 470) is granted, and Plaintiffs' Cross-Motion (ECF No. 473) is denied. Plaintiffs shall provide FedEx with dates for the in-person depositions of Opt-In Plaintiffs Ashcraft, Antoine, Adams, Banks, Ankeney, Ahmed, and Akers. The depositions shall occur no later than February 6, 2024.

BY THE COURT:

s/*Robert J. Colville*
Robert J. Colville
United States District Judge

DATED: December 8, 2023
cc/ecf: All counsel of record